# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

|  |  |  |
|---|---|---|
| STATE OF OHIO, *ex rel.* | ) | Case No. 1:11-cv-02474 |
| DAVID P. JOYCE, | ) |  |
| PROSECUTING ATTORNEY OF | ) | Judge James S. Gwin |
| GEAUGA COUNTY, OHIO, on behalf of | ) |  |
| Geauga County and all other Ohio counties, | ) | Amended Class Action Complaint |
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) |  |
| v. | ) |  |
|  | ) |  |
| MERSCORP, INC., *et al.*, | ) |  |
|  | ) |  |
| Defendants. | ) |  |

Plaintiff State of Ohio, *ex rel*. David P. Joyce, Prosecuting Attorney for the County of

Geauga, on behalf of Geauga County and all other Ohio counties, for its amended class action

complaint against Defendants MERSCORP, Inc., Mortgage Electronic Registration Systems,

Inc., JPMorgan Chase Bank, N.A., Home Savings & Loan of Youngstown, Bank of America

Corporation, Bank of America, N.A., CCO Mortgage Corporation, RBS Citizens, N.A., RBS

Securities, Inc., Citigroup Inc., CitiMortgage, Inc., Citibank, N.A., CoreLogic Real Estate

Solutions, LLC, Corinthian Mortgage Corporation, Deutsche Bank National Trust Company,

EverBank, Fifth Third Bank, GMAC Mortgage LLC, Goldman Sachs Mortgage Company, GS

Mortgage Securities Corp., HSBC Bank, U.S.A., N.A., Huntington National Bank, N.A.,

KeyBank National Association, MGIC Investor Services Corporation, Nationwide Advantage

Mortgage Corporation, PMI Mortgage Services Company, SunTrust Mortgage, Inc., United

Guaranty Corporation, U.S. Bank National Association, Wells Fargo Bank, N.A., and

Defendants Doe Corporations I – MMM  (collectively, "Defendants") alleges and states upon information and belief as follows:[1]

## NATURE OF THE ACTION

1.      This is a class action commenced by Plaintiff State of Ohio, *ex rel*. David P. Joyce as Prosecuting Attorney for the County of Geauga, on behalf of Geauga County and all other Ohio counties, arising out of Defendants' failure to record all mortgage assignments in county recording offices, and pay the attendant recording fees, as required by Ohio law.  Plaintiff brings this action for unjust enrichment, civil conspiracy, and declaratory and injunctive relief.

2.      Codified for nearly 200 years, Ohio's recording statutes provide that all mortgage assignments *shall be recorded* in the county recorder's office of the county in which the premises are situated.  Ohio law also provides that county recorders, who are elected officials responsible for maintaining their county's public land records, shall charge and collect fees for each land instrument (e.g., a mortgage assignment) recorded.

3.      To facilitate rapid securitization of mortgage loans, and avoid paying county recording fees, Defendants and others in the mortgage industry purposely failed to record mortgage assignments.

4.      To accomplish this goal, Defendants and others began to record land instruments in the name of a private corporate entity that they contended could act as their placeholder in county public records should they want to use public records to alter or foreclose on the mortgage.

5.      In other instances, Defendants and others simply failed to record mortgage assignments in county recording offices at all.

_____

[1] All of the factual allegations in this amended complaint are derived from publicly-available sources.

6.      Defendants, therefore, violated (and continue to violate) Ohio's statutory recording requirements by (1) purposely failing to record all mortgage assignments, thereby systematically clouding title in Ohio county land records, and (2) purposely avoiding the payment of attendant county recording fees.

## JURISDICTION

7.      Plaintiff filed this action on October 13, 2011 in the Court of Common Pleas, Geauga County, Ohio.  The case was removed by Defendants to this Court on November 14, 2011 on the ground of diversity jurisdiction, pursuant to 28 U.S.C. § 1332.

8.      Plaintiff contends that this Court lacks subject matter jurisdiction and must remand this action to the Court of Common Pleas, Geauga County, Ohio.

9.      This Court has personal jurisdiction over Defendants because each Defendant has sufficient minimum contacts with Ohio so as to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

## PARTIES

10.     Plaintiff is the State of Ohio, *ex rel*, David P. Joyce as Prosecuting Attorney for the County of Geauga, on behalf of Geauga County and all other Ohio counties.  Pursuant to §§ 305.14, 309.12 of the Ohio Revised Code, David P. Joyce, in his capacity as the Prosecuting Attorney for the County of Geauga, brings this action on behalf of Geauga County and all other Ohio counties.

11.     Defendant MERSCORP, Inc. ("MERSCORP") is a Delaware corporation with its principal place of business in Vienna, Virginia.  MERSCORP owns and operates the MERS System, which is a national registry that tracks ownership and servicing rights in residential mortgage loans, including residential mortgage loans secured by real property located in the state of Ohio.

12.     Defendant Mortgage Electronic Registration Systems, Inc. ("MERS") (mistakenly named as Mortgage Electronic Registration System, Inc. in the original complaint, dated October 13, 2011) is a Delaware corporation with its principal place of business in Reston, Virginia. MERS is a wholly owned subsidiary of MERSCORP, Inc., and regularly conducts business in the state of Ohio.

13.     Defendant JPMorgan Chase Bank, N.A. ("Chase") (mistakenly named as Chase Home Mortgage Corporation f/k/a Chase Home Finance in the original complaint, dated October 13, 2011), individually, and as successor by merger to Chase Home Finance, LLC, is a national banking association with its principal place of business in Columbus, Ohio.  As described below, Chase, either directly and/or indirectly through its agents, employees, subsidiaries and/or related companies, including without limitation Chase Home Finance LLC, Chase Home Finance Inc., Chase Home Mortgage Corp, Chase Manhattan Mortgage Corporation, Chase Mortgage Services Inc., WaMu Bank, WaMu Capital, WaMu Securities, WaMu Acceptance, Bank One Corporation, EMC Mortgage LLC, and EMC Mortgage Corporation, engaged in transactions related to the securitization of mortgage loans of real property located within the state of Ohio.

14.     Defendant Home Savings & Loan of Youngstown ("Youngstown"), a subsidiary of United Community Financial Corporation, is an Ohio corporation with its principal place of business in Youngstown, Ohio.  As described below, Youngstown either directly and/or indirectly through its agents, employees, subsidiaries and/or related companies, engaged in transactions related to the securitization of mortgage loans of real property located within the state of Ohio.

15.     Defendant Bank of America Corporation ("Bank of America Corp."), individually, and as successor by merger to CWALT, Inc., Countrywide Home Loans, Inc.,

Countrywide Financial Corporation is a Delaware corporation with its principal place of business in Charlotte, North Carolina. As described below, Bank of America Corp., either directly and/or indirectly through its agents, employees, subsidiaries and/or related companies, including without limitation CWALT, Inc., Countrywide Home Loans, Inc., Countrywide Financial Corporation BAC Home Loans Servicing LP (f/k/a Countrywide Home Loans Servicing, LP), BAC GP, LLC (f/k/a Countrywide GP, Inc., and Countywide GP LLC.), engaged in transactions related to the securitization of mortgage loans of real property located within the state of Ohio.

16.     Defendant Bank of America, N.A. ("Bank of America"), individually, and as successor by merger to LaSalle Bank National Association, is a national banking association with its principal place of business in Charlotte, North Carolina.  As described below, Bank of America, either directly and/or indirectly through its agents, employees, subsidiaries and/or related companies, including without limitation BAC Home Loans Servicing LP (f/k/a Countrywide Home Loans Servicing, LP), BAC GP, LLC (f/k/a Countrywide GP, Inc., and Countywide GP LLC.), engaged in transactions related to the securitization of mortgage loans of real property located within the state of Ohio.

17.     Defendant CCO Mortgage Corporation ("CCO") is a division of RBS Citizens, N.A., which is a national banking association with its principal place of business in Providence, Rhode Island.  As described below, CCO, either directly and/or indirectly through its agents, employees, subsidiaries and/or related companies, including without limitation American Home Funding, Inc., Charter One Mortgage Corporation, Charter One Mortgage Servicing, Charter One Bank, and Equity One Credit Corporation, engaged in transactions related to the securitization of mortgage loans of real property located within the state of Ohio.

18.     Defendant RBS Citizens, N.A. is a national banking association with its principal place of business in Providence, Rhode Island.  As described below, CCO, either directly and/or indirectly through its agents, employees, subsidiaries and/or related companies, including without limitation American Home Funding, Inc., Charter One Mortgage Corporation, Charter One Mortgage Servicing, Charter One Bank, Greenwich Capital Financial Products, Inc., Greenwich Capital Acceptance Inc., and RBS Securities Inc., engaged in transactions related to the securitization of mortgage loans of real property located within the state of Ohio.

19.     Defendant RBS Securities, Inc., ("RBS Securities") is a wholly owned subsidiary of The Royal Bank of Scotland Plc., with its principal place of business in Stamford, Connecticut.  As described below, RBS Securities, either directly and/or indirectly through its agents, employees, subsidiaries and/or related companies, including without limitation American Home Funding, Inc., Charter One Mortgage Corporation, Charter One Mortgage Servicing, Charter One Bank, Greenwich Capital Financial Products, Inc., Greenwich Capital Acceptance Inc., and RBS Securities Inc., engaged in transactions related to the securitization of mortgage loans of real property located within the state of Ohio.

20.     Defendant Citigroup Inc. ("Citigroup") is a New York corporation with its principal place of business in New York, New York.  As described below, Citigroup, either directly and/or indirectly through its agents, employees, subsidiaries and/or related companies, including without limitation Citigroup Financial Products, Inc., Citigroup Global Markets Realty Corp., Citigroup Mortgage Loan Trust Inc., Citibank, N.A., CitiMortgage, Inc., Citi Residential Lending, Inc., Citicorp Acceptance Company, Inc., CitiFinancial, Inc., CitiFinancial Mortgage Company, Inc., Citigroup Mortgage Loan Trust, Inc., Principal Residential Mortgage, Inc., and

Wholesale Mortgage, Inc., engaged in transactions related to the securitization of mortgage loans of real property located within the state of Ohio.

21.     Defendant Citibank N.A. ("Citibank") is a national banking association with its principal place of business in New York, New York.  As described below, Citibank, either directly and/or indirectly through its agents, employees, subsidiaries and/or related companies, including without limitation CitiMortgage, Inc., Citi Residential Lending, Inc., Citicorp Acceptance Company, Inc., CitiFinancial, Inc., CitiFinancial Mortgage Company, Inc., Citigroup Mortgage Loan Trust, Inc., Principal Residential Mortgage, Inc., and Wholesale Mortgage, Inc., engaged in transactions related to the securitization of mortgage loans of real property located within the state of Ohio.

22.     Defendant CitiMortgage, Inc. ("CitiMortgage") is a New York corporation with its principal place of business in O'Fallon, Missouri.  As described below, CitiMortgage, either directly and/or indirectly through its agents, employees, subsidiaries and/or related companies, including without limitation Citibank, N.A., Citi Residential Lending, Inc., Citicorp Acceptance Company, Inc., CitiFinancial, Inc., CitiFinancial Mortgage Company, Inc., Citigroup Mortgage Loan Trust, Inc., Principal Residential Mortgage, Inc., and Wholesale Mortgage, Inc., engaged in transactions related to the securitization of mortgage loans of real property located within the state of Ohio.

23.     Defendant CoreLogic Real Estate Solutions, LLC ("CoreLogic") is a limited liability company whose sole member is CoreLogic Real Estate Information Services, LLC. The sole member of Corelogic Real Estate Information Services LLC, is CoreLogic Inc., a Delaware corporation with its principal place of business in Santa Ana, California. As described below, CoreLogic, either directly and/or indirectly through its agents, employees, subsidiaries and/or

related companies, engaged in transactions related to the securitization of mortgage loans of real property located within the state of Ohio.

24.     Defendant Corinthian Mortgage Corporation ("Corinthian"), a wholly owned subsidiary of SouthBanc, FSB, is a Missouri corporation with its principal place of business in Huntsville, Alabama. As described below, Corinthian, either directly and/or indirectly through its agents, employees, subsidiaries and/or related companies, including without limitation SouthBanc Mortgage, engaged in transactions related to the securitization of mortgage loans of real property located within the state of Ohio.

25.     Defendant Deutsche Bank National Trust Company ("Deutsche Bank") is a federally chartered non-depository trust company with its principal place of business in Santa Ana, California. As described below, Deutsche Bank, either directly and/or indirectly through its agents, employees, subsidiaries and/or related companies, engaged in transactions related to the securitization of mortgage loans of real property located within the state of Ohio.

26.     Defendant EverBank (f/k/a EverHome Mortgage Company, d/b/a EverHome Mortgage) (mistakenly named as EverHome Mortgage Company in the original complaint, dated October 13, 2011) (to avoid confusion, all of the above listed entities will be referred to herein as "EverHome"), is a federal savings association, wholly owned by EverBank Financial Corporation, a privately held Florida corporation. As described below, EverHome, either directly and/or indirectly through its agents, employees, subsidiaries and/or related companies, including without limitation EverHome Mortgage Corporation, Everbank Mortgage Company, and EverBank Mortgage Company, LLC, engaged in transactions related to the securitization of mortgage loans of real property located within the state of Ohio.

27.     Defendant Fifth Third Bank ("Fifth Third") is an Ohio corporation with its principal place of business in Cincinnati, Ohio.  As described below, Fifth Third, either directly and/or indirectly through its agents, employees, subsidiaries and/or related companies, engaged in transactions related to the securitization of mortgage loans of real property located within the state of Ohio.

28.     Defendant Goldman Sachs Mortgage Company ("Goldman Sachs") is a New York limited partnership with its principal place of business in New York, New York. Goldman Sachs Mortgage Company is the parent of GS Mortgage Securities Corp., and a subsidiary of Goldman Sachs Group, Inc.  As described below, Goldman Sachs Mortgage Company, either directly and/or indirectly through its agents, employees, subsidiaries and/or related companies, including without limitation GS Mortgage Securities Corp., engaged in transactions related to the securitization of mortgage loans of real property located within the state of Ohio.

29.     Defendant GS Mortgage Securities Corp. ("GS Mortgage") is a Delaware corporation with its principal place of business in New York, New York, and is a subsidiary of Goldman Sachs Mortgage Company.  As described below, GS Mortgage Securities Corp., either directly and/or indirectly through its agents, employees, subsidiaries and/or related companies, including without limitation Goldman Sachs Mortgage Company, engaged in transactions related to the securitization of mortgage loans of real property located within the state of Ohio.

30.     Defendant GMAC Mortgage LLC (mistakenly named as GMAC Residential Funding Corporation in the original complaint, dated October 13, 2011) ("GMAC"), a limited liability company whose sole ultimate member is Ally Financial, Inc., is a Delaware corporation with its principal place of business in Detroit, Michigan. As described below, GMAC, either directly and/or indirectly through its agents, employees, subsidiaries and/or related companies,

including without limitation GMAC Bank, GMAC Commercial Mortgage Corporation, GMAC

Relocation Services, Inc., GMAC LLC, and GMAC Mortgage Corporation, engaged in

transactions related to the securitization of mortgage loans of real property located within the

state of Ohio.

31.     Defendant HSBC Bank, U.S.A., N.A. ("HSBC") is a national banking association

with its principal place of business in McLean, Virginia.  As described below, HSBC, either

directly and/or indirectly through its agents, employees, subsidiaries and/or related companies,

including without limitation HSBC Mortgage Corp., U.S.A, HSBC Bank U.S.A Trust, and

HSBC Mortgage Services, Inc., engaged in transactions related to the securitization of mortgage

loans of real property located within the state of Ohio.

32.     Defendant Huntington National Bank, N.A. ("Huntington") is a national banking

association with its principal place of business in Columbus, Ohio.  As described below,

Huntington, either directly and/or indirectly through its agents, employees, subsidiaries and/or

related companies including without limitation The Huntington National Bank, N.A., and The

Huntington National Mortgage Company, engaged in transactions related to the securitization of

mortgage loans of real property located within the state of Ohio.

33.     Defendant KeyBank National Association ("KeyBank") is a national banking

association with its principal place of business in Cleveland, Ohio.  As described below,

KeyBank, either directly and/or indirectly through its agents, employees, subsidiaries and/or

related companies, engaged in transactions related to the securitization of mortgage loans of real

property located within the state of Ohio.

34.     Defendant MGIC Investor Services Corporation ("MGIC") is a Wisconsin

corporation with its principal place of business in Milwaukee, Wisconsin.  As described below,

MGIC, either directly and/or indirectly through its agents, employees, subsidiaries and/or related companies, including without limitation MGIC Credit Assurance Corporation, engaged in transactions related to the securitization of mortgage loans of real property located within the state of Ohio.

35.    Defendant Nationwide Advantage Mortgage Corporation ("Nationwide") is an Iowa Corporation with its principal place of business in Des Moines, Iowa.  As described below, Nationwide, either directly and/or indirectly through its agents, employees, subsidiaries and/or related companies, including without limitation Nationwide Bank, Nationwide Home Mortgage Corporation, Nationwide Mortgage Concepts, Nationwide Mortgage Services, Inc., and Nationwide Title Clearing, engaged in transactions related to the securitization of mortgage loans of real property located within the state of Ohio.

36.    Defendant PMI Mortgage Services Company ("PMI") is a California corporation with its principal place of business in Walnut Creek, California. As described below, PMI, either directly and/or indirectly through its agents, employees, subsidiaries and/or related companies, engaged in transactions related to the securitization of mortgage loans of real property located within the state of Ohio.

37.    Defendant SunTrust Mortgage, Inc. ("SunTrust") is a Virginia corporation with its principal place of business in Richmond, Virginia. As described below, SunTrust, either directly and/or indirectly through its agents, employees, subsidiaries and/or related companies, including without limitation SunTrust Bank and SunTrust Financial Corporation, engaged in transactions related to the securitization of mortgage loans of real property located within the state of Ohio.

38.    Defendant United Guaranty Corporation ("United Guaranty") is a North Carolina corporation with its principal place of business in Greensboro, North Carolina. As described

below, United Guaranty, either directly and/or indirectly through its agents, employees, subsidiaries and/or related companies, including without limitation United Guaranty Residential Insurance Company, engaged in transactions related to the securitization of mortgage loans of real property located within the state of Ohio.

39.     Defendant U.S. Bank National Association ("US Bank") is a national banking association with its principal place of business in Minneapolis, Minnesota. As described below, US Bank, either directly and/or indirectly through its agents, employees, subsidiaries and/or related companies, engaged in transactions related to the securitization of mortgage loans of real property located within the state of Ohio.

40.     Defendant Wells Fargo Bank, N.A. ("Wells Fargo"), individually, and as successor by merger to Norwest Bank, N.A., and Wells Fargo Bank of Minnesota, N.A. is a national banking association with its principal place of business in Sioux Falls, South Dakota. As described below, Wells Fargo, either directly and/or indirectly through its agents, employees, subsidiaries and/or related companies, including without limitation Wells Fargo Funding Home Equity, Wells Fargo Home Mortgage, Inc., Wells Fargo America, Inc., America's Outsource Mortgage Program, and Wells Fargo Bank Ohio, engaged in transactions related to the securitization of mortgage loans of real property located within the state of Ohio.

41.     The true names and capacities of Defendants Doe Corporations I – MMM are unknown to Plaintiff.  Plaintiff believes that through discovery, the identity of Defendants Doe Corporations I – MMM will become known to Plaintiff.

## FACTUAL STATEMENT

### A.     Ohio Recording Statutes

#### 1.      Ohio Law Requires that Certain Land Instruments Be Recorded in County Recording Offices

42.     To finance the purchase of real property, a borrower typically receives a "mortgage loan" from an originating lender.  A "mortgage loan" is composed of two separate land instruments:  (1) a promissory note ("mortgage note" or "note"), which evidences the borrower's obligation to repay the loan, and (2) the security instrument ("mortgage" or "deed of trust") , which evidences the originating lender's security interest in the borrower's property in order to secure repayment of the loan.

43.     Land instruments, such as mortgages and mortgage assignments, must be recorded in proper county recording offices, which are operated by county recorders.  Ohio Rev. Code Ann. § 5301.25 ("[I]nstruments of writing properly executed for the conveyance or encumbrance of lands . . . shall be recorded in the office of the county recorder of the county in which the premises are situated."); Ohio Rev. Code Ann. § 5301.32 ("The separate instrument of [a mortgage] assignment or partial release shall be recorded.").

44.     County recorders are required to collect nominal fees for each mortgage-related land instrument presented and entitled to be recorded.  Ohio Rev. Code Ann. § 317.32 ("The county recorder shall charge and collect the following fees, to include base fees for the recorder's services . . .").

### 2.      The Public Land Recording System

45.     In Ohio, county recorders' offices are run by county recorders who systematically record land documents to develop a public record of ownership over each parcel of land, as well as the debt attached to that land ("land ownership interest").  Each time an interest in the land is

assigned (i.e., transferred or sold) to a new owner, a written document – such as a mortgage assignment– evidencing the transaction is recorded.

46.     Ohio recording laws ensure that county recorders' offices maintain accurate chains of title and reliable public records that are used, for instance, to allow prospective purchasers to investigate the land ownership interests tied to a specific parcel of land, or to resolve land ownership disputes.

47.     The order in which land ownership interests, such as mortgages, are recorded determines the priority of the interest.  Ohio Rev. Code Ann. § 5301.23 ("the first mortgage recorded shall have preference").  Thus, those who record their interests in the county land records first enjoy the protections provided by Ohio statute in the form of a preference.

    **B.     The Securitization of Ohio Mortgage Loans**

48.     Beginning in the 1990s, mortgage-backed securitizations became increasingly popular investments.  The process of securitizing mortgage loans begins with lender banks, who originate residential mortgage loans for sale to various commercial and investments banks. Those financial institutions, in turn, sell the mortgage loans amongst themselves and then pool them into trusts to be issued to investors as mortgage-backed securities ("MBS").  Each "sale" requires an assignment of the mortgage loan.

49.     The securitization process involves mortgage loan sales that are evidenced in multiple contracts between the securitizing parties.  The securitization contracts explicitly state that the mortgage loans, which include the mortgage notes and mortgages, are sold, transferred, assigned, set over, deposited with and otherwise conveyed between the relevant parties.

50.     The process of securitizing mortgage loans is illustrated in the following diagram.

### The Securitization Process



51.     To securitize, banks such as Defendants must sell the mortgage loan (collectively, the mortgage and the note) a minimum of three times.  A mortgage loan is generally securitized by:



**Mortgage Loan
Sales**

a.      First, mortgage originators sell mortgage loans to warehouse lenders ("Sellers"), who compile an inventory of varying types of mortgage loans.

b.      Second, the Seller sells their portfolio of mortgage loans to "Sponsors," who are entities, often affiliated with a large financial institution or investment bank, that initiate the securitization of their portfolio of mortgage loans.  (Sellers may also be the Sponsor.)

c.      Third, the Sponsor initiates securitization by selling (i.e., assigning or transferring) its mortgage loans to the "Depositor" pursuant to a Mortgage Loan Purchase Agreement.[2]

d.      Fourth, the Depositor, acting as an intermediate entity between the Sponsor and the trust, sells pools of mortgage loans to a trustee ("Trustee"), on behalf of a trust, or issuing entity, pursuant to a Pooling and Servicing Agreement ("PSA").[3]  Formed by the PSA, a trust is typically a "special purpose vehicle" that holds many pools of mortgage loans ("trust assets") for the eventual

---

[2] Parties to the Mortgage Loan Purchase Agreement are generally:  (i) the Seller/Sponsor; (ii) Purchaser/Depositor; and (iii) the Guarantor.

[3] Parties to the Pooling and Servicing Agreement are generally:  (i) the Seller/Sponsor; (ii) the Depositor; (iii) the Trustee; and (iv) the varying groups of Servicers.

issuance of MBS for sale to investors.  The MBS represent partial beneficial interests in the trust

assets, which are mostly comprised of the mortgage loans.

> e.  And, a "Trustee" also enters into contracts on behalf of the trust and
> administers the trust's funds, and is considered by courts to be the legal owner of the
> "Trust Estate," which includes in part all mortgage loans.

52.  When a trust is created, the Depositor, pursuant to the PSA, transfers all of its

rights and interests in each mortgage loan and mortgage note into the trust.  For example, a

JPMorgan prospectus states that, "the Depositor will transfer to the trust all of its right, title and

interest in and to each Mortgage Loan, the related mortgage note, mortgage, assignment of

mortgage in recordable form to the Trustee…The assignments of mortgage are generally

required to be recorded by or on behalf of the Depositor in the appropriate officers for real

property records."

53.  Thus, the typical life of a securitized mortgage entails *three or more assignments*

– all of which are statutorily required to be recorded in the Ohio county recording office in which

the underlying property is located.  Securitization of a mortgage does not vitiate the legal

requirement to record each assignment of a mortgage.

## C.  Defendants Benefitted by Recording <u>Only</u> One Mortgage Assignment

54.  Financial institutions, including Defendants, profited during the housing boom of

the last decade by purchasing mortgages from loan originators and, as described above,

securitizing the mortgage loans for sale to investors, thereby generating fees for the banks

while moving the mortgage loans—and their inherent risk of default—off their books.  The risk

that the borrowers would default on the underlying mortgage loans was passed on to investors

in the MBS.

55.    Investors in MBS relied in part on offering documents that contained representations about the characteristics of the underlying mortgage loans.

56.    When selling a portfolio of mortgage loans to a Depositor, the Sponsor typically represents that each mortgage loan is a "first lien" on the underlying property.  For example, the Loan Purchase Agreement for New York Mortgage Trust 2006-1Mortgage-Backed Pass-Through Certificates ("NYMT 2006-1") states that, "each Mortgage evidences a valid, subsisting, enforceable and perfected first lien on the related Mortgaged Property."  A "first lien" is the first mortgage loan recorded with the county recorder's office for a given property and takes priority over later-recorded liens, including second mortgages.

57.    Similarly, Depositors typically represent in the PSAs that each mortgage loan is subject to no prior liens.  For example, the NYMT 2006-1 PSA states that, "Immediately prior to the transfer by the Depositor to the Trust Estate of each Mortgage Loan, the Depositor had good and equitable title to each Initial Mortgage Loan (insofar as such title was conveyed to it by the Seller) subject to no prior lien, claim, participation interest, mortgage, security interest, pledge, charge or other encumbrance or other interest of any nature."

58.    Defendants were able to represent that the mortgage loans being sold to the trusts for purposes of securitization were first lien mortgages because the initial land instruments were recorded in county recording offices designating MERS as an "assignee" or "nominee," as described in detail below.

**D.    The MERS Scheme**

59.    MERS maintains a private computer system that allows its users to, among other things, register and track changes in ownership interests in mortgages.

60.    Since 1997, over 65 million mortgages have been registered on MERS's system – three out of every five on the market.  Currently, nearly 5,600 participating MERS members

("MERS Members" or "Members") track roughly 31 million active residential mortgage loans on the MERS system.  MERS Members include a collection of banking and mortgage entities that ranges from local banks and investments banks to mortgage lenders and title insurers to approximately 3,000 mortgage servicers.

61.     Members pay MERS membership fees to register and track mortgage ownership interests and servicing rights on MERS's system.

62.     Members also pay MERS fees for each transaction conducted, such as assigning a mortgage to itself or to another MERS Member, identifying the mortgage's servicer, or using the MERS corporate seal.

63.     MERS does not itself originate, assign, service or invest in mortgages.

64.     Instead, MERS Members used (and continue to use) the "MERS" name to avoid recording in county recording offices each time a mortgage ownership interest was assigned – thereby avoiding the payment of attendant county recording fees.

### 1.     How MERS Members Place MERS in Land Instruments

65.     MERS Members typically record the initial land instrument, on which "MERS" is named, in county recording offices in one of two ways:

a.     One way occurs when Members record an original mortgage on which "MERS" is designated in a myriad of ways:  "MERS as mortgagee of record," "MERS as nominee," "MERS as beneficiary," and even "MERS (solely as nominee for Lender) as beneficiary."  MERS and its Members use the term "MERS as Original Mortgagee (MOM)" to describe this type of mortgage.

b.     The second way occurs when Members record a mortgage assignment on which "MERS" is named.  On such mortgage assignments, Members often purport to

assign the mortgage and underlying debt either to:  (i) MERS itself; or (ii) MERS on
behalf of another Member.

66.    MERS, however, admits that it does not draft or execute land instruments on
behalf of itself or its Members.  Rather, MERS instructs its Members to self-certify their
employees (e.g., employees of the lending banks and mortgage servicers) as MERS "assistant
secretaries" and/or MERS "vice-presidents" so the Members' staff can appear as though they
work for MERS, even though they do not.  To self-certify, Members' staff download
certification forms directly off of MERS's website.

67.    Once they self-certify, Members' staff draft and execute land instruments
purporting to be "MERS assistant secretaries" and "MERS vice-presidents."  County recorders,
therefore, accept and record what facially appear to be land instruments signed by "MERS"
employees, even though the documents were actually prepared by Members' staff.

68.    Further, MERS Members contend that, as long as mortgage ownership interests
are assigned to other MERS Members, they are not required to record each mortgage assignment
in county recording offices because MERS acts on behalf of both the assignor and assignee
(representing both MERS Members simultaneously).

**2.    How MERS Members Failed to Record Mortgage Assignments**

69.    MERS was intended to improve its Members' profitability in the primary and
secondary mortgage markets, and facilitate securitization of mortgages, through the rapid
assignment of mortgages between financial institutions – while avoiding:  (i) recording each time
the mortgages are assigned in county recording offices, and (ii) paying the attendant county
recording fees.

70.    While admitting they do not record assignments in county recording offices,
MERS Members often fail to register mortgage assignments on MERS's private system as well.

71.     Thus, MERS Members often only record a mortgage assignment (regardless of how many times the mortgage had been assigned prior) in county recording offices when they are attempting to assign the mortgage from MERS.  This generally occurs when MERS Members seek to initiate a terminating event (e.g., to foreclose when the mortgage is in default, or to release when the mortgage is refinanced or satisfied).

72.     By failing to record all mortgage assignments, MERS Members break a mortgage's chain of title, creating a "gap" in county public land records.

**E.     Defendants Failed to Record All MERS <u>and</u> Non-MERS Mortgage Assignments**

73.     As MERS Members, Defendants would often assign mortgage loans between one another by recording an assignment to MERS once, as a placeholder in land records, in order to receive priority of their ownership interests in that mortgage loan despite failing to record multiple subsequent assignments.

74.     However, Defendants also securitized non-MERS mortgage loans (i.e., non-MERS land instruments recorded in county land records) – and still failed to record the multiple subsequent mortgage assignments in the county land recorders' offices.

75.     Where the typical life of a securitized mortgage entails at least three assignments, Defendants violated Ohio law by failing to record each mortgage assignment in the proper Ohio county land records.  Defendants' failure to record such mortgage assignments not only deprived Ohio counties of statutory recording fees, but created "gaps" in the property's chain of title making it difficult if not impossible to determine the financial institution that actually held the interest in the mortgage loan.

**F.      Specific Examples of Unrecorded Assignments**

76.      The following are examples of the types of assignments that are required to be, but were not, recorded by Defendants – thereby creating "gaps" in the chains of title in Ohio counties' land records.

**Defendant EverHome**
**Defendant U.S. Bank**

77.      <u>Recorded Land Instruments in Geauga Land Records</u>

a.      On August 9, 2005, a Geauga County homeowner executed a note to Defendant EverHome, the originating lender, in the amount of $439,000.  To secure the note, the homeowner executed a mortgage on his real property located at 18165 Moss Point, Chagrin Falls, Ohio 44023.  The Mortgage identifies "MERS [a]s the mortgagee", but also provides that the ". . . Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, the following described property. . . ."

b.      On September 2, 2005, the Mortgage was recorded in the Geauga County Recorder's Office.  Without explanation, a "MERS MIN #" and an unaffiliated "Loan No." appear on the Recorded Mortgage.

i.      To track mortgage loans, MERS land instruments typically contain an 18-digit "MERS MIN #" – which is an identifier assigned to the mortgage by MERS.  Since neither the homeowner's name nor address is used, a correct and legible "MERS MIN #" is often the only way a mortgage loan can be tracked through securitization.

c.      On May 31, 2006, Pat Charles, purporting to be a "Vice President" of MERS, executed a Satisfaction of Mortgage on behalf of MERS, certifying that the

22

mortgage loan was fully paid and warranting that MERS had "full right and authority to release said mortgage as successor in interest to the original mortgage . . . ."  On June 5, 2006, the MERS Satisfaction was recorded in the Geauga County Recorder's Office.  An identical "MERS MIN #" and different, unaffiliated "Loan No." appear on the Recorded Mortgage Satisfaction.

78.  <u>Unrecorded Mortgage Assignments Made During Securitization</u>

a.  The Geauga County land records, however, do not include all the mortgage assignments made by certain Defendants during securitization of the mortgage loan (collectively, the mortgage and the note).

b.  On March 30, 2006, the mortgage loan was securitized.  In order to securitize the homeowner's mortgage loan, certain Defendants and other financial institutions entered into a PSA, which formed the trust (or "issuing entity"), New York Mortgage Trust 2006-1, that held pools of mortgage loans as collateral.  The Trust eventually issued mortgage-backed securities, Mortgage-Backed Pass-Through Certificates, Series 2006-1, for sale to investors.

c.  Therefore, between its origination and its placement in the trust, the homeowner's mortgage loan (i.e., note and mortgage) was assigned at least five times:

i.  First, Defendant EverHome sold the mortgage loan to another lender or directly to the warehouse lender, ABN AMRO Mortgage Group, Inc.

ii.  Second, Warehouse Lender ABN AMRO Mortgage Group, Inc. then sold the mortgage loan to the seller, The New York Mortgage Company, LLC, pursuant to a loan sale agreement.

iii.     Third, Seller The New York Mortgage Company, LLC sold the mortgage loan to a sponsor, New York Mortgage Trust, Inc., pursuant to the Master Mortgage Loan Sale and Servicing Agreement.[1]

iv.     Fourth, Sponsor New York Mortgage Trust, Inc. sold the mortgage loan to the depositor NYMT Securities Corporation, pursuant to the PSA.

v.     Fifth, Depositor NYMT Securities Corporation sold the mortgage loan to the trustee, Defendant U.S. Bank, on behalf of the Trust, New York Mortgage Trust 2006-1, pursuant to the PSA.

d.     Thus, Geauga County land records reveal that:

i.     There is no recorded assignment of the mortgage loan from Defendant EverHome, or any agent acting on its behalf, to Warehouse Lender ABN AMRO Mortgage Group, Inc.

ii.     There is no recorded assignment of the mortgage loan from Warehouse Lender ABN AMRO Mortgage Group, Inc., or any agent acting on its behalf, to Seller, The New York Mortgage Company, LLC.

iii.     There is no recorded assignment of the mortgage loan from Seller, The New York Mortgage Company, LLC., or any agent acting on its behalf, to sponsor, New York Mortgage Trust, Inc.

iv.     There is no recorded assignment of the mortgage loan from sponsor, New York Mortgage Trust, Inc., or any agent acting on its behalf to, Depositor NYMT Securities Corporation.

v.      And lastly, there is no recorded assignment of the mortgage loan

from Depositor NYMT, LLC, or any agent acting on its behalf, to the Trustee, on

behalf of the Trust.

e.      In contravention of Ohio's recording statutes, only one assignment was

ever recorded despite the mortgage loan being assigned at least five times.

**Defendant Goldman Sachs Mortgage Company**
**Defendant GS Mortgage Securities Corp.**
**Defendant Deutsche Bank National Trust Company**

79.     On December 6, 2004, a Geauga County resident executed a note to NationPoint,

the originating lender, in the amount of $575,000.  To secure the note, the resident executed a

mortgage on his real property located at 8264 Summit Drive, Chagrin Falls, Ohio 44023.   On

January 25, 2006, the Mortgage was recorded in the Geauga County Recorder's Office.  Without

explanation, a "MERS MIN #" appears on the Recorded Mortgage.

80.     On or about February 23, 2006, the mortgage loan was securitized.  Defendant

Goldman Sachs Mortgage Company and other financial institutions entered into a PSA, which

formed a trust – FFMLT Trust 2006-FF3 – that eventually issued mortgage-backed securities,

Mortgage Pass-Through Certificates, Series 2006-FF3, for sale to investors.

a.      Between its origination and its placement in the trust, the mortgage loan

(i.e., note and mortgage) was assigned at least four times:

i.      First, the mortgage loan was sold to the seller, First Franklin

Financial Corporation.

ii.     Second, Seller First Franklin Financial Corporation sold the

mortgage loan to the sponsor, Defendant Goldman Sachs Mortgage Company.

iii.    Third, Sponsor Defendant Goldman Sachs Mortgage Company

sold the mortgage loan to the depositor, GS Mortgage Securities Corp.

25

iv.     Finally, Depositor GS Mortgage Securities Corp. sold the

mortgage loan to the trustee, Defendant Deutsche Bank, on behalf of the trust,

FFMLT Trust 2006-FF3.

81.     On June 2, 2006, M.L. Marcum, purporting to be a "Vice President" of

NationPoint, executed a Mortgage Assignment to "First Franklin Corporation."  The Mortgage

Assignment was recorded in the Geauga County Recorder's Office on June 16, 2006.

82.     On April 7, 2010, Krystal Hall, purporting to be an "Assistant Secretary for Lien

Releases" at First Franklin, executed a Mortgage Release, certifying that First Franklin was "the

present legal owner and holder of the indebtedness" secured by the Deed of Trust and thereby

released First Franklin's "right, title, and interest in and to the real estate described in said Deed

of Trust, forever discharging the lien . . ."  The Mortgage Release was recorded in the Geauga

County Recorder's Office on April 12, 2010.

a.     At the time the Mortgage Release was recorded, First Franklin had already

sold the mortgage loan to Goldman Sachs Mortgage Company, who had sold it to GS

Mortgage Securities Corp., who then sold it to Defendant Deutsche Bank, on behalf of

the trust, FFMLT Trust 2006-FF3.

b.     Accordingly, Defendant Deutsche Bank is the last known holder of the

mortgage loan secured by the homeowner's property.

83.     Despite the mortgage loan having been assigned at least three times, **only <u>one</u>**

**assignment was ever recorded**.

<u>**Defendant JPMorgan Chase N.A.**</u>

84.     On September 29, 2004, a Geauga County resident executed a note to First

Franklin Financial Corporation, the originating lender, in the amount of $185,600.  To secure the

note, the resident executed a mortgage on his real property located at 10550 Kile Road, Chardon,

Ohio 44024.  On September 30, 2004, the Mortgage was recorded in the Geauga County Recorder's Office.  Without explanation, a "MERS MIN #" appears on the Recorded Mortgage.

85.     On or about February 24, 2005, the mortgage loan was securitized.  Defendant JPMorgan Chase and other financial institutions entered into a PSA, which formed a trust – First Franklin Mortgage Loan Trust 2005-FF1 – that eventually issued mortgage-backed securities, Mortgage Pass-Through Certificates, Series 2005-FF1, for sale to investors.

      a.     Between its origination and its placement in the trust, the mortgage loan (i.e., note and mortgage) *was assigned at least three times*:

           i.     First, Originator First Franklin Financial Corporation sold the mortgage loan to the sponsor, Barclays Bank PLC.

           ii.     Second, Sponsor Barclays Bank PLC sold the mortgage loan to the depositor, Securitized Asset Backed Receivables LLC.

           iii.     Finally, Depositor Securitized Asset Backed Receivables LLC sold the mortgage loan to the trustee, Defendant JPMorgan Chase Bank, N.A., on behalf of the Trust.

86.     On September 1, 2005, Sheri Doza, purporting to act on behalf of Defendant JPMorgan Chase as Trustee, executed a Certificate of Satisfaction in which she certified that Defendant JPMorgan was the holder of the mortgage and had received full payment..  On September 16, 2005, the Mortgage Satisfaction was recorded in the Geauga County Recorder's Office.

87.     Despite the mortgage loan having been assigned at least three times, **none of the assignments was ever recorded**.

**Defendant The Huntington Bank National Association**
**Defendant JPMorgan Chase Bank, N.A.**

88.     On April 20, 2005, a Geauga County resident executed a note to Defendant Huntington Bank, the originating lender, in the amount of $207,000.  To secure the note, the resident executed a mortgage on his real property located at 14453 Burton-Windsor Road, Burton, OH 44021.  On April 25, 2005, the Mortgage was recorded in the Geauga County Recorder's Office.

89.     On July 29, 2005, the mortgage loan was securitized.  Defendant Huntington Bank and other financial institutions entered into a PSA, which formed a trust – Bear Stearns ALT-A Trust 2005-7 – that eventually issued mortgage-backed securities, Bear Stearns ALT-A Mortgage Pass-Through Certificates, Series 2005-7, for sale to investors.

        a.     Between its origination and its placement in the trust, the mortgage loan (i.e., note and mortgage) **was assigned at least three times**:

                i.     First, the mortgage loan was sold to the sponsor, EMC Mortgage Corporation.

                ii.     Second, Sponsor EMC Mortgage Corporation sold the mortgage loan to the depositor, Structured Asset Mortgage Investments II Inc.

                iii.     Finally, Depositor Structured Asset Mortgage Investments II Inc. sold the mortgage loan to the trustee, Defendant JPMorgan Chase on behalf of the Trust.

90.     On February 24, 2009, Julie Yates, purporting to be "Authorized Signer" of MERS as nominee for Defendant Huntington Bank, executed a Satisfaction of Mortgage in which she certified that Defendant Huntington Bank was the holder of the mortgage and had received full payment.  On February 27, 2009, the Mortgage Satisfaction was recorded in the

28

Geauga County Recorder's Office.  Without explanation, a "MERS MIN #" appears on the Recorded Satisfaction.

91.     Despite the mortgage loan having been assigned at least three times, **none of those assignments were recorded**.

**Defendant CCO Mortgage Corporation**
**Defendant JPMorgan Chase Bank, N.A.**

92.     On April 22, 1998, a Cuyahoga County resident executed a note to the originating lender, Equity One Credit Corporation (predecessor by merger to Defendant CCO), in the amount of $70, 315.82.  To secure the note, the resident executed a mortgage on his real property located at 1913 Brookfield Lane, Warrensville Heights, Ohio 44122.  On April 23, 1998, the Mortgage was recorded in the Cuyahoga County Recorder's Office.

93.     On or about March 8, 2006, the mortgage loan was securitized.  Defendant JPMorgan Chase and other financial institutions entered into a PSA, which formed a trust that eventually issued mortgage-backed securities for sale to investors.

     a.     Between its origination and its placement in the trust, the mortgage loan (i.e., note and mortgage) *was assigned at least three times*:

          i.     First, the mortgage loan was sold to an unknown sponsor.

          ii.     Second, Unknown Sponsor sold the mortgage loan to an unknown depositor.

          iii.     Finally, Unknown Depositor Structured Asset Mortgage Investments II Inc. sold the mortgage loan to Defendant JPMorgan Chase, as Trustee on behalf of the Trust.

94.     On November 23, 2004, Michael J. Stank, purporting to be "Senior Vice President" of Charter One Mortgage Corp. (predecessor by merger to Defendant CCO), executed

29

an Assignment of Mortgage in which he certified that Charter One Mortgage Corp. was the holder of the mortgage.  On March 10, 2011, the Mortgage Satisfaction was recorded in the Cuyahoga County Recorder's Office.

95.     Despite the mortgage loan having been assigned at least three times, **only <u>one</u> assignment was ever recorded**.

### Defendant HSBC Bank USA, N.A.

1.     On September 7, 2006, a Geauga County resident executed a note to Fremont Investment & Loan, the originating lender, in the amount of $179,100.  To secure the note, the resident executed a mortgage on his real property located at 16350 Messenger Road, Burton, Ohio 44021.  The Mortgage identifies "*MERS [a]s the mortgagee*", but also provides that the ". . . Borrower does hereby mortgage, grant and convey to *MERS (solely as nominee for Lender* and Lender's successors and assigns) and to the successors and assigns of MERS, the following described property. . . ."  On September 14, 2006, the Mortgage was recorded in the Geauga County Recorder's Office.  Without explanation, a "MERS MIN #" appears on the Recorded Mortgage.

2.     On or about November 1, 2006, the mortgage loan was securitized.  Defendant HSBC and other financial institutions entered into a PSA, which formed a trust – Fremont Home Loan Trust 2006-D – that eventually issued mortgage-backed securities, Mortgage-Backed Certificates, Series 2006-D, for sale to investors.

a.     Between its origination and its placement in the trust, the mortgage loan (i.e., note and mortgage) **was assigned at least two times**:

i.     First, Originator and Sponsor Fremont Investment & Loan sold the mortgage loan to the depositor, Fremont Mortgage Securities Corporation.

ii.     Finally, Depositor Fremont Mortgage Securities Corporation sold the mortgage loan to the trustee, Defendant HSBC on behalf of the Trust.

3.     On August 14, 2008, Stan C. Cwalinski, purporting to act on behalf of MERS as nominee for Fremont Investment & Loan, executed a Mortgage Assignment to Defendant HSBC "as Trustee under the Pooling and Servicing Agreement dated as of November 1, 2006, for Fremont Home Loan Trust 2006-D." On August 26, 2008, the Mortgage Satisfaction was recorded in the Geauga County Recorder's Office.

4.     Despite the mortgage loan having been assigned at least three times, **only <u>one</u> assignment was ever recorded**.

### <u>Defendant Citigroup Inc.</u>

5.     On June 19, 2006, a Geauga County homeowner executed a note to MORTGAGECLOSE.COM, Inc., the originating lender, in the amount of $395,250. To secure the note, the homeowner executed a mortgage on his real property located at 13820 Hale Road, Burton, Ohio 440211. The Mortgage identifies "*MERS [a]s the mortgagee*", but also provides that the ". . . Borrower does hereby mortgage, grant and convey to *MERS (solely as nominee for Lender* and Lender's successors and assigns) and to the successors and assigns of MERS, the following described property. . . ." On July 10, 2006, the Mortgage was recorded in the Geauga County Recorder's Office. Without explanation, a "MERS MIN #" and an unaffiliated "LRS #" appear on the Recorded Mortgage.

6.     On or about September 28, 2006, the mortgage loan was securitized. Defendants Citigroup Global Markets Realty Corp. and Citigroup Mortgage Loan Trust Inc., and other financial institutions entered into a PSA, which formed a trust – Citigroup Mortgage Loan Trust 2006-NC2 – that eventually issued mortgage-backed securities, Asset-Backed Pass-Through Certificates, Series 2006-NC2, for sale to investors.

a.      Between its origination and its placement in the trust, the mortgage loan (i.e., note and mortgage) **was assigned at least three times**:

i.      First, the mortgage loan was sold to the sponsor, Citigroup Global Markets Realty Corp.

ii.      Second, Sponsor Citigroup Global Markets Realty Corp. sold the loan to the depositor, Citigroup Mortgage Loan Trust Inc.

iii.      Finally, Depositor Citigroup Mortgage Loan Trust Inc. sold the mortgage loan to the trustee, Defendant U.S. Bank, on behalf of the trust.

7.      On December 4, 2008, Kizzy Randolph, purporting to be an "Assistant Secretary" of MERS, executed a Certificate of Satisfaction on behalf of MERS on which she certified that MERS "holder of a certain Mortgage . . . does hereby acknowledge that it has received full payment and satisfaction of the same."  On December 8, 2008, the Mortgage Satisfaction was recorded in the Geauga County Recorder's Office.

8.      Despite the mortgage loan having been assigned at least three times, **only <u>one</u> assignment was ever recorded**.

**Defendant Citibank, N.A.**
**<u>Defendant SunTrust Mortgage Inc.</u>**

9.      On January 31, 2006, a Geauga County homeowner executed a note to SunTrust Mortgage Inc., the originating lender, in the amount of $143,000.  To secure the note, the homeowner executed a mortgage on his real property located at 5981 Clay Street, Thompson, Ohio 44057.  The Mortgage identifies "*MERS [a]s the mortgagee*", but also provides that the ". . . Borrower does hereby mortgage, grant and convey to *MERS (solely as nominee for Lender* and Lender's successors and assigns) and to the successors and assigns of MERS, the following

described property. . . ."  On February 8, 2006, the Mortgage was recorded in the Geauga County Recorder's Office.  Without explanation, a "MERS MIN #" appears on the Recorded Mortgage.

10.    On or about March 15, 2007, the mortgage loan was securitized.  Defendant Citibank and other financial institutions entered into a PSA, which formed a trust that eventually issued mortgage-backed securities, Bear Stearns Asset Backed Certificates, Series 2007-SD2, for sale to investors.

      a.    Between its origination and its placement in the trust, the mortgage loan (i.e., note and mortgage) **was assigned at least three times**:

           i.    First, the mortgage loan was sold to the sponsor, EMC Mortgage Corporation.

           ii.    Second, Sponsor EMC Mortgage Corporation sold the mortgage loan to the depositor, Bear Stearns Asset Backed Securities I LLC.

           iii.    Finally, Depositor Bear Stearns Asset Backed Securities I LLC sold the mortgage loan to the trustee, Citibank, N.A., on behalf of the trust.

11.    On April 22, 2009, Carolyn Brown purporting to be an "Assistant Secretary" of MERS acting solely on behalf of SunTrust Mortgage Inc., executed an "Assignment of Note and Mortgage" to Citibank, N.A., as trustee.  On April 24, 2009, the Note and Mortgage Assignment was recorded in the Geauga County Recorder's Office.

12.    Despite the mortgage loan having been assigned at least three times, **only <u>one</u> assignment was ever recorded**.

### Defendant CitiMortgage, Inc.

13.    On May 3, 2006, a Geauga County homeowner executed a note to Credit Suisse Financial Corporation, the originating lender, in the amount of $178,475.  To secure the note, the homeowner executed a mortgage on his real property located at 13860 Ravena Road, Newbury,

Ohio 44065.  The Mortgage identifies "*MERS [a]s the mortgagee*", but also provides that the ". . . Borrower does hereby mortgage, grant and convey to *MERS (solely as nominee for Lender* and Lender's successors and assigns) and to the successors and assigns of MERS, the following described property. . . ."  On May 18, 2008, the Mortgage was recorded in the Geauga County Recorder's Office.  Without explanation, a "MERS MIN #" appears on the Recorded Mortgage.

14.    On or about June 30, 2006, the mortgage loan was securitized.  Defendant CitiMortgage and other financial institutions entered into a PSA, which formed a trust – Home Equity Mortgage Trust 2006-3 – that eventually issued mortgage-backed securities, Home Equity Mortgage Pass-Through Certificates, Series 2006-3, for sale to investors.

a.    Between its origination and its placement in the trust, the mortgage loan (i.e., note and mortgage) **was assigned at least three times**:

i.    First, the mortgage loan was sold to the sponsor, DLJ Mortgage Capital, Inc.

ii.    Second, Sponsor DLJ Mortgage Capital, Inc. sold the mortgage loan to the depositor, Credit Suisse First Boston Mortgage Securities Corp.

iii.    Finally, Depositor Credit Suisse First Boston Mortgage Securities Corp. sold the mortgage loan to the trustee, U.S. Bank, on behalf of the trust.

15.    On April 30, 2007, M.E. Wileman, purporting to be a "Vice President" of MERS as nominee for Credit Suisse Financial Corporation, executed an "Assignment of Note and Mortgage" to CitiMortgage, Inc. as success in interest by merger to CitiFinancial Mortgage Company, Inc.  On May 14, 2007, the Note and Mortgage Assignment was recorded in the Geauga County Recorder's Office.

16.     On November 5, 2008, a Deed on Decree or Order of Sale in favor of CitiMortgage, Inc. as successor by merger to CitiFinancial Mortgage Company, Inc. was recorded in the Geauga County Recorder's Office.

17.     Despite the mortgage loan having been assigned at least three times, **only <u>one</u> of those assignments were recorded**.

### Defendant Wells Fargo Bank, N.A.

18.     On April 19, 2000, a Geauga County homeowner executed a note to Fidelity Mortgage Inc., the originating lender, in the amount of $53,500.  To secure the note, the homeowner executed a mortgage on his real property located at 17796 Clairdon Troy Road, Hiram, Ohio, 44021.

19.     On or about June 30, 2006, the mortgage loan was securitized.  Defendant Wells Fargo and other financial institutions entered into a PSA, which formed a trust – Delta Funding Home Equity Loan Trust 2000-2 – that eventually issued mortgage-backed securities, Home Equity Loan Asset-Backed Certificates, Series 2000-2B, for sale to investors.

     a.     Between its origination and its placement in the trust, the mortgage loan (i.e., note and mortgage) **was assigned at least three times**:

          i.     First, the mortgage loan was sold to from Originator Fidelity to the sponsor Delta Funding Corporation.

          ii.     Second, Sponsor Delta Funding Corporation then sold the loan to an unidentified Depositor.

          iii.     Finally, the unidentified Depositor sold the mortgage loan to the trustee, Norwest Minnesota, National Association (predecessor by merger to Defendant Wells Fargo Bank, N.A.), on behalf of the trust.

20.     On April 18, 2000, Kirk Doskocil, purporting to be a "Branch Manager" of Fidelity Mtg., executed an Assignment of Mortgage to Delta Funding.  On April 24, 2000, the Mortgage Assignment was recorded in the Geauga County Recorder's Office.

21.     On December 13 2002, Wells Fargo Bank, Minnesota N.A. f/k/a Norwest Bank Minnesota N.A. (predecessor by merger to Wells Fargo Bank, N.A.) executed a Satisfaction of Mortgage.  On January 3, 2002, the Note and Mortgage Assignment was recorded in the Geauga County Recorder's Office.

22.     Despite the mortgage loan having been assigned at least three times, **only <u>one</u> assignment was ever recorded**.

**Defendant Wells Fargo Bank, N.A.**
**Defendant RBS Securities Inc.**
**<u>Defendant Deutsche Bank National Trust Company</u>**

23.     On November 9, 2006, Defendant Wells Fargo, N.A. originated a mortgage loan that was comprised of a note for the amount of $128,000 and a mortgage that secured the note with property located at 9843 Pekin Road, Novelty, Ohio 44057.  The mortgage was recorded on November 16, 2006 in the Geauga County Recorder's Office.

24.     Months later, the mortgage loan was securitized.  Defendants and other financial institutions entered into a PSA, which formed a trust that eventually issued mortgage-backed securities, RBSGC Mortgage Loan Pass-Through Certificates, Series 2007-B, for sale to investors.

      a.     Between being originated and made a trust asset, the mortgage loan (i.e., note and mortgage) **was assigned at least three times**:

            i.     First, the mortgage loan was sold to the sponsor, Greenwich Capital Financial Products, Inc. (predecessor by merger to RBS Securities Inc.).

       ii.      Second, Sponsor Greenwich Capital Financial Products Inc. sold the loan to the depositor, Greenwich Capital Acceptance, Inc.

       iii.     Finally, Depositor Greenwich Capital Acceptance Inc. sold the mortgage loan to the trustee, Deutsche Bank National Trust Company, on behalf of the trust, RBSGC 2007-B.

25.     On May 17, 2011, Wells Fargo Bank, N.A. executed an Assignment of Mortgage to Trustee Deutsche Bank National Trust Company, on behalf of the trust.  The Mortgage Assignment was recorded in the Geauga County Recorder's Office on May 19, 2011.

26.     Despite the mortgage loan having been assigned at least three times, **only <u>one</u> of those assignments were recorded**.

### Defendant Fifth Third Bank
### <u>Defendant Deutsche Bank National Trust Company</u>

27.     On August 9, 2003, a Geauga County resident executed a note to Defendant Fifth Third Bank, the originating lender, in the amount of $50,000.  To secure the note, the resident executed a mortgage on his real property located at 12275 Caves Road, Chesterland, Ohio 44026.  On August 21, 2003, the Mortgage was recorded in the Geauga County Recorder's Office.

28.     On May 28, 2004 the mortgage loan was securitized.  Defendant Fifth Third Bank and other financial institutions entered into a PSA, which formed a trust – Morgan Stanley Mortgage Loan Trust 2004-3 – that eventually issued mortgage-backed securities, Mortgage Pass-Through Certificates, Series 2004-3, for sale to investors.

       a.     Between its origination and its placement in the trust, the mortgage loan (i.e., note and mortgage) **was assigned at least three times**:

       i.       First, the mortgage loan was sold to the sponsor, Morgan Stanley Mortgage Capital Inc.

       ii.       Second, Sponsor Morgan Stanley Mortgage Capital Inc. sold the mortgage loan to the depositor, Morgan Stanley Capital I Inc.

       iii.       Finally, Depositor. Morgan Stanley Capital I Inc. sold the mortgage loan to the trustee, Defendant Deutsche Bank on behalf of the Trust.

29.      On June 29, 2011, the mortgage loan was modified and the modification was recorded in the Geauga County Recorder's Office.

30.      Despite the mortgage loan having been assigned at least three times, **none of those assignments were recorded**.

### Defendant GMAC Mortgage, LLC
### Defendant Deutsche Bank National Trust Company

31.      On August 25, 2003, a Geauga County resident executed a note to Defendant GMAC Mortgage Corp., the originating lender, in the amount of $201,650.  To secure the note, the resident executed a mortgage on his real property located at 416 Downing Dr., Chardon, Ohio 44024.  On August 29, 2003, the Mortgage was recorded in the Geauga County Recorder's Office.

32.      On November 29, 2005, the mortgage loan was securitized.  Defendant GMAC Mortgage Corporation (as predecessor by merger to Defendant GMAC Mortgage LLC) and other financial institutions entered into a PSA, which formed a trust – GMACM Mortgage Loan Trust 2005-AF2 – that eventually issued mortgage-backed securities, GMACM Mortgage Pass-Through Certificates, Series 2005-AF2, for sale to investors.

a.     Between its origination and its placement in the trust, the mortgage loan (i.e., note and mortgage) **was assigned at least two times**:

i.     First, GMAC Mortgage Corporation, as the seller/sponsor, sold the loan to the depositor, Residential Asset Mortgage Products, Inc.

ii.     Second, Depositor Residential Asset Mortgage Products Inc. sold the loan to the trustee, Defendant Deutsche Bank National Trust Company, on behalf of the trust.

33.     On October 10, 2008 purporting to as act as an "Assistant Vice President" of MERS, Shellie Hill as nominee for GMAC Mortgage Corporation executed a Mortgage Assignment, transferring the underlying mortgage loan to Defendant GMAC Mortgage, LLC. The Mortgage Assignment was then recorded in the Geauga County Recorder's Office.

34.     Despite the mortgage loan having been assigned at least two times, **none of those assignments were recorded**.

**Defendant KeyBank National Association**
**<u>Defendant Bank of America</u>**

35.     On December 6, 2004, Defendant KeyBank originated a mortgage loan that was comprised of a note for the amount of $132,000 and a mortgage that secured the note with property located in Novelty, Ohio.  The mortgage lists MERS as a "mortgagee under th[e] Security Instrument" and, while MERS is not mentioned anywhere on the note, the mortgage provides that the ". . . Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigned of MERS, the following [] property. . . ."  The mortgage was recorded on December 7, 2004 in the Geauga County Recorder's Office.  A "MERS MIN #" appears on the Recorded Mortgage.

36.     Months later, the mortgage loan was securitized.  Defendant KeyBank and other financial institutions entered into a PSA, which formed a trust that eventually issued mortgage-backed securities, CWALT, Inc. Alternative Loan Trust 2005-1CB, for sale to investors.

      a.     Between its origination and its placement in the trust, the mortgage loan (i.e., note and mortgage) **was assigned at least three times**:

            i.     First, the mortgage loan was sold to the sponsor, Countrywide Home Loans, Inc.

            ii.     Second, Sponsor Countrywide Home Loans Inc. sold the loan to the depositor, CWALT, Inc.

            iii.     Finally, Depositor CWALT, Inc. sold the mortgage loan to the trustee, The Bank of New York, on behalf of the trust.

37.     Despite the mortgage loan having been assigned at least three times, **none of those assignments were recorded**.

### Defendant Bank of America, National Association

38.     On November 22, 2002, BNC Mortgage, Inc. originated a mortgage loan that was comprised of a note for the amount of $175,500 and a mortgage that secured the note with property located at 18780 Quinn Road, Chagrin Falls, Ohio 44023.  The mortgage was recorded at the Geauga County Recorder's Office on November 26, 2002.

39.     Months later, the mortgage loan was securitized.  LaSalle Bank National Association (as predecessor in interest to Defendant Bank of America) and other financial institutions entered into a PSA, which formed a trust that eventually issued mortgage-backed securities, Structured Asset Investment Mortgage Pass-Through Certificates, Series 2003-BC2, for sale to investors.

      a.      Between its origination to its placement in the trust, the mortgage loan (i.e., note and mortgage) **was assigned at least three times**:

      i.      First, the mortgage loan was sold to the sponsor, Lehman Capital, a division of Lehman Brothers Holdings Inc.

      ii.      Second, Sponsor Lehman Capital then sold the mortgage loan to the depositor, Structured Asset Securities Corporation.

      iii.      Finally, Depositor Structured Asset Securities Corporation sold the mortgage loan to the trustee, LaSalle Bank National Association, on behalf of the trust.

40.      On March 19, 2009, purporting to be as an "Assistant Secretary" of MERS, Justin Rauh executed a Corporate Assignment of a Mortgage to "Bank of America, as successor by merger to LaSalle Bank National Association as Trustee for Structured Asset Investment Loan Trust 2003-BC" and recorded the Mortgage Assignment in the Geauga County Recorder's Office.

41.      Despite the mortgage loan having been assigned at least three times, **only <u>one</u> of those assignments were recorded**.

### Defendant Nationwide Advantage Mortgage Company<br>Defendant Bank of America, N.A.

42.      On February 4, 2003, Nationwide Advantage Mortgage Company originated a mortgage loan that was comprised of a note for the amount of $60,000 and a mortgage that secured the note with property located at 328 Bonniewood Drive, Cleveland, Ohio 44110.  The mortgage listed MERS as a "mortgagee under th[e] Security Instrument" and "a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns."

The mortgage was recorded on February 18, 2003 in the Cuyahoga County Recorder's Office.  A "MERS MIN #" also appeared on the Recorded Mortgage.

43.     On or about September 12, 2006, the mortgage loan was securitized.  Defendants and other financial institutions entered into a PSA, which formed the Merrill Lynch Mortgage Investors Trust that eventually issued Mortgage Loan Asset-Backed Certificates, Series 2006-SD1, mortgage-backed securities, for sale to investors.

>      a.     Between being originated and made a trust asset, the mortgage loan (i.e., note and mortgage) was assigned at least three times:
>
> >     i.     First, the mortgage loan was sold to the sponsor Merrill Lynch Mortgage Lending Inc.
> >
> >     ii.     Second, Sponsor Merrill Lynch Mortgage Lending Inc. then sold the loan to the depositor Merrill Lynch Mortgage Investors, Inc.
> >
> >     iii.     Finally, Depositor Merrill Lynch Mortgage Investors Inc. sold the mortgage loan to the trustee, LaSalle Bank, N.A. (predecessor by merger to Defendant Bank of America N.A.) on behalf of the trust.

44.     On May 12, 2011, Lorena Malaquia, purporting to be an "Assistant Secretary" MERS and purporting to act as nominee for Defendant Nationwide Advantage Mortgage Company, executed an Assignment of Note and Mortgage "Bank of America, N.A., as successor by merger to LaSalle Bank, NA, as Trustee for the Certificateholders of the MLMI Trust, Mortgage Loan Asset-backed Certificates, Series 2006-S2."  The Mortgage Assignment was recorded in the Cuyahoga County Recorder's Office on September 7, 2011.

45.     Despite the mortgage loan having been assigned at least three times, **only <u>one</u> of those assignments were recorded**.

**Defendant SunTrust Mortgage**

46.     On February 21, 2006, Defendant SunTrust Mortgage originated a mortgage loan that was secured by property located 10818 Henning Dr., Chardon, Ohio 44024, for the amount of $113,600.  The mortgage was recorded at the Geauga County Recorder's Office on February 24, 2006.  A "MERS MIN #" also appears on the recorded mortgage.

47.     On or about May 30, 2006, the mortgage loan was securitized.  Defendant SunTrust Mortgage and other financial institutions entered into a PSA, which formed a trust – SunTrust Alternative Loan Trust 2006-1F – that eventually issued mortgage-backed securities, Mortgage Pass-Through Certificates, Series 2006-1F, for sale to investors.

48.     Since Defendant SunTrust Mortgage was the originator as well as the Seller/Sponsor, the mortgage loan (i.e., note and mortgage) **was assigned at least two times**:

        a.      First, as the sponsor/seller, Defendant SunTrust LLC originated the mortgage loan and sold it to the depositor, Bear Stearns Asset Backed Securities I.

        b.      Second, Depositor Bear Stearns Asset Backed Securities I LLC, in turn, sold the mortgage loan to the trustee, HSBC Bank USA, N.A., on behalf of the trust.

49.     Then, MERS, purporting to as act as a nominee for Defendant SunTrust executed a Mortgage Assignment, executed a Mortgage assignment the mortgage loan to HSBC Bank USA, National Association as Trustee.  The Mortgage Assignment was recorded in the Geauga County Recorder's Office on January 10, 2011.

50.     Despite the mortgage loan having been assigned at least two times, **none of those assignments were recorded**.

**Defendant Youngstown**

43

51.     On February 13, 2008, a Geauga County, Ohio resident executed a promissory note to Defendant Youngstown, as the Lender, in the amount of $340,000.  To secure the note, the resident executed a mortgage on his real property located at 7410 Faraway Trail, Chagrin Falls, Ohio 44023, listing MERS as a "mortgagee under th[e] Security Instrument[.]"  While MERS is not mentioned anywhere on the note, the mortgage provided that the ". . . Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigned of MERS, the following [] property. . . ."  The mortgage was recorded the same day in the Geauga County Recorder's Office, as Instrument No. 200800775490.  A "MERS MIN #" also appears on the recorded mortgage.

52.     On November 30, 2011, Terri Sheffler, purporting to act as an "Assistant Secretary" of MERS, executed and recorded a Satisfaction of Mortgage on behalf of MERS in the Geauga County Recorder's Office, as Instrument No. 201100833257.  The recorded Satisfaction certifies MERS, as "holder of a certain Mortgage[,] . . . does hereby does acknowledge that it has received full payment and satisfaction of the same. . . ."  MERS did not, however, purport to act "as nominee for" any entity.  Appearing on the recorded Satisfaction is a MERS MIN #, identical to the one appearing on the recorded mortgage loan.  Without explanation, the recorded Satisfaction also bears the identifier "CitiMortgage, Inc. # 2005093054."

53.     Despite the mortgage loan having been assigned at least three times, **only <u>one</u> of those assignments were recorded**.

### Defendant Chase Home Finance, LLC

54.     On January 10, 2008, a Geauga County, Ohio resident executed a promissory note to American Home Mortgage Company, as the Lender, in the amount of $112,000.  To secure the note, the resident executed a mortgage on his real property located at 11720 Stonegate Drive,

Chardon, Ohio 44024.  The mortgage was recorded on February 7, 2008 in the Geauga County Recorder's Office, as Instrument No. 200800775044.

55.     On May 31, 2009, a Court Certificate of Release of Mortgage in favor of Chase Home Finance, LLC (predecessor by merger to Defendant JPMorgan Chase Bank, N.A.) was recorded in the Geauga County Recorder's Office.

56.     Although the mortgage appears to have been assigned to Chase Home Finance LLC (predecessor by merger to Defendant JPMorgan Chase Bank, N.A.), **only one assignment was ever recorded**.

## Defendant Corinthian Mortgage Corporation

57.     On March 25, 2003, a Geauga County resident executed a note to Defendant Corinthian Mortgage (d/b/a Southbanc Mortgage), the originating lender, in the amount of $47,500.  To secure the note, the resident executed a mortgage on his real property located at 15510 Punderson Road, Burton, OH 44021.  On April 11, 2003, the Mortgage was recorded in the Geauga County Recorder's Office.

58.     On June 26, 2003, the mortgage loan was securitized.  Defendant Hunt Bank and other financial institutions entered into a PSA, which formed a trust – Home Equity Loan Trust 2003-HS2– that eventually issued mortgage-backed securities, Home Equity Loan-Backed Term Notes, Series 2003-HS2, for sale to investors.

   a.     Between its origination and its placement in the trust, the mortgage loan (i.e., note and mortgage) **was assigned at least three times**:

   b.     First, the mortgage loan was sold to the sponsor, Residential Funding Corporation.

   c.     Second, Sponsor Residential Funding Corporation sold the mortgage loan to the depositor, Residential Funding Mortgage Securities II, Inc.

d.      Finally, Depositor, Residential Funding Mortgage Securities II, Inc. sold the mortgage loan to the trustee, Defendant JPMorgan Chase on behalf of the Trust.

59.      On March 25, 2003, Linda S. Chick, purporting to be "Assistant Secretary" of Defendant Corinthian Mortgage, executed a Corporate Assignment of Mortgage in which she certified that Defendant Corinthian Mortgage was the holder of the mortgage and had received full payment.  On November 6, 2009, the Mortgage Satisfaction was recorded in the Geauga County Recorder's Office.

a.      Despite the mortgage loan having been assigned at least three times, **only one of those assignments were recorded.**

## CLASS ALLEGATIONS

60.      Plaintiff brings this class action on behalf of Geauga County and, pursuant to Rule 23 of the Federal Rules of Civil Procedure, on behalf of all other Ohio counties (collectively referred to herein as the "Class").

61.      The Class is comprised of each of the 88 counties in the State of Ohio (the "Class Members"), thus joinder of all Class members in one action would be impracticable.

62.      The Class claims present common questions of law and fact that predominate over questions that may affect particular putative class members individually, including without limitation the following:

a.      Whether Class Members are irreparably harmed by Defendants' conduct in violation of Ohio Rev. Code Ann. §§ 5301.25, 5301.32 as alleged herein and are thus entitled to injunctive relief;

b.      Whether Defendants failed to record every mortgage and mortgage assignment on real property located in Ohio with the county recorder of the proper Class

Member's county recording office, in accordance with Ohio Rev. Code Ann. §§ 5301.25, 5301.32;

      c.      Whether Defendants should be enjoined from continuing to assign Ohio mortgages without recording every mortgage and mortgage assignment in the proper Class Member's county recording office; and

      d.      Whether Defendants should be ordered to correct the failure to record every mortgage and mortgage assignment with the county recorder of the proper Class Member's county recording office, and thereby pay attendant recording fees, as required by Ohio law.

63.      The claims asserted by Plaintiff are typical of claims asserted for the Class in that all claims are based on the same legal and remedial theories:

      a.      Ohio state law is applicable to all claims asserted by the Class;

      b.      Ohio recording laws create identical requirements for the recording of every mortgage and mortgage assignment on real property located in Ohio with the county recorder of the proper county recording office in each of Ohio's 88 counties; and

      c.      Each Ohio county is required by Ohio state law to collect fees for the recording of every entitled mortgage and mortgage assignment presented to the county recorder for recording at the county recording office.

64.      Plaintiff is an adequate representative of the Class that will fairly and adequately represent the interests of the Class.

65.      Plaintiff has retained competent class counsel with experience in prosecuting class action litigations of this nature, and will vigorously prosecute the putative class claims alleged herein.

66.     This action is maintainable as a class action where Defendants have acted on grounds generally applicable to the Class thereby making final, injunctive, and declaratory relief, and a damage award appropriate with respect to the Class as a whole.

67.     Class action treatment is superior to other methods for resolution of this controversy where:

a.     Separate actions by individual Class Members could lead to inconsistent adjudications for individual Class Members, which would impose varying conduct requirements for each Defendant;

b.     Separate actions by individual Class Members could injure Class Members' ability to adequately protect their interests;

c.     The financial burden on individual Class Members would make it impractical for them to pursue their claims against Defendants individually; and

d.     Judicial economy would be served by maintenance of this action as a class action to avoid numerous individual lawsuits filed by Class Members.

## CLAIMS FOR RELIEF

### FIRST COUNT

**Declaratory Judgment and Injunction For Failure to Record Mortgages and Mortgage Assignments in Violation of Ohio Rev. Code Ann. §§ 5301.25 and 5301.32 (Against All Defendants)**

68.     Defendants' failure to record every mortgage assignment on real property in Ohio in county recording offices constitutes an actual existing justiciable controversy between the parties, having opposing interest, which can and should be resolved by this Court through declaratory relief.

69.     Plaintiff requests a judgment declaring that Defendants are required to record every mortgage and mortgage assignment on real property located in Ohio pursuant to Ohio Rev.

Code Ann. §§ 5301.25, 5301.32, and (ii) pay the attendant statutory recording fees to the county recording office in which the real property is located pursuant to Ohio Rev. Code Ann. § 317.32.

70.     Plaintiff requests that this Court enter an injunction compelling Defendants to record every mortgage and mortgage assignment on real property located in Ohio that was not recorded in the proper county recording office, and to immediately cease the practice of non-recording of mortgages and mortgage assignments on real property located in Ohio counties.

## SECOND COUNT

### Unjust Enrichment (Against All Defendants)

71.     Recording the initial assignments in MERS' name conferred at least two distinct benefits upon Defendants.  First, by recording this initial assignment, MERS Members took advantage of the benefit of priority conferred by Ohio Rev. Code Ann. § 5301.23.  Second, recording it allowed Defendants to represent to MBS investors that the underlying mortgage loans were first lien mortgages, which made the MBS appear safer and more attractive to investors, which was the ultimate end-game for Defendants—to quickly and cheaply securitize mortgage loans and sell the MBS to investors.  In doing so, Defendants adhered to the recording statutes when it suited them (i.e. recording the initial land instrument) and violated them when it was inconvenient for them (i.e. failing to record mortgage assignments leading to securitization).

72.      By their wrongful and improper conduct, Defendants were, and are, unjustly enriched at the expense of and to the detriment of Plaintiff and the Class.

73.     As a direct and proximate result of Defendants' unjust enrichment, Plaintiff, on behalf of Geauga County and the Class, seeks restitution from Defendants and respectfully requests that this Court disgorge all profits, benefits, and other compensation Defendants obtained by their wrongful and improper conduct.

### THIRD COUNT

## Civil Conspiracy (Against All Defendants)

74.     Defendants are shareholders of MERS and/or MERS Members.  By creating and/or using MERS to track sales and assignments of mortgage loans among MERS Members, Defendants acted in concert with each other for the express purpose of circumventing Ohio's county recording statutes, Ohio Rev. Code Ann. §§ 5301.25, 5301.32 .

75.     Without MERS, Defendants would not have been able to accomplish their goal of quickly and cheaply selling and assigning mortgage loans for the purpose of securitizing the loans for sale to investors.

76.     By creating and/or using MERS, Defendants acted together to purposefully and unlawfully violate Ohio's statutory recording requirements.

77.     As a direct and proximate result of Defendants' actions, Ohio counties have been denied recording fees for every assignment of a mortgage loan that Defendants were required to, but failed to, record in county recording offices.

## PRAYER FOR RELIEF

WHEREFORE, on behalf of Geauga County and all other Ohio counties, by and through its undersigned counsel, Plaintiff prays for judgment declaring and determining that:

B.     This action is properly maintainable as a class action under Fed. R. Civ. P. 23(b)(1)(A) and/or (b)(1)(B), Fed. R. Civ. P. 23(b)(2), and Fed. R. Civ. P. 23(b)(3);

C.     Plaintiff is an adequate representative of the Class, and Plaintiff's counsel is designated lead counsel for the Class;

D.     Every mortgage and mortgage assignment on real property located in Ohio shall be recorded by Defendants with the proper Class Members' county recorder in the county recording office in which the property is located, thereby paying Plaintiff and the Class attendant recording fees;

E.      Defendants are permanently enjoined from non-recordation of mortgages and mortgage assignments on real property located in Ohio with the county recorder in the recording office in the county in which the property is located;

F.      Plaintiff and the Class are entitled to restitution and disgorgement of Defendants' profits, benefits, and other compensation Defendants obtained by their wrongful and improper conduct;

G.      Plaintiff and the Class are entitled to an award of damages as set forth above;

H.      Plaintiff and the Class are entitled to an award of reasonable attorneys' fees and costs of bringing this action; and

I.      Plaintiff and the Class are entitled to such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Respectfully submitted,

/s/ David P. Joyce
David P. Joyce (#0022437)
Prosecuting Attorney
Mary Brigid "Bridey" Matheney (#0070998)
Assistant Prosecuting Attorney
Geauga County Prosecutor's Office
Courthouse Annex
231 Main Street, Ste. 3A
Chardon, Ohio 44024
(440) 279-2100

and

Stanley D. Bernstein (#1703503) (NY)*
Christian Siebott (#4004255) (NY)*
Sara P. Goodman (#4868923) (NY)*
BERNSTEIN LIEBHARD LLP

10 East 40th Street
New York, NY 10016
(212) 779-1414
(212) 779-3218 fax

*For Plaintiff State of Ohio, ex rel. David P. Joyce, Prosecuting Attorney for the County of Geauga*

\*Admitted pro hac vice.