**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

|  |  |  |
|---|---|---|
| STATE OF OHIO, ex rel. | ) | CASE NO. 1:11-cv-02474 |
| DAVID P. JOYCE | ) | |
| PROSECUTING ATTORNEY OF | ) | |
| GEAUGA COUNTY, OHIO, | ) | JUDGE JAMES S. GWIN |
|  | ) | |
| Plaintiff, | ) | |
|  | ) | |
| v. | ) | |
|  | ) | |
| MERSCORP, INC., et al., | ) | |
|  | ) | |
| Defendants. | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS'[1] JOINT MOTION TO DISMISS
PLAINTIFF'S AMENDED COMPLAINT**

---

[1]  The Defendants that are parties and signatories to this Memorandum of Law are defined in *Defendants' Joint Motion to Dismiss Plaintiff's Amended Complaint* filed contemporaneously herewith.

# TABLE OF CONTENTS

PAGE

I.  INTRODUCTION ................................................................................................ 1

    A.  SUMMARY OF THE ARGUMENT ................................................................ 1

    B.  PLAINTIFF'S LEGAL THEORY ALLEGED IN THE COMPLAINT ............... 2

II.  LAW AND ARGUMENT ................................................................................... 4

    A.  STATEMENT OF ISSUES TO BE DECIDED .................................................. 4

    B.  MOTION TO DISMISS STANDARD—A VIABLE LEGAL THEORY ............ 4

    C.  THE COMPLAINT SHOULD BE DISMISSED BECAUSE OHIO LAW
        DOES NOT IMPOSE A DUTY TO RECORD MORTGAGE
        CONTRACTS OR ASSIGNMENTS OF MORTGAGE CONTRACTS ............. 5

        1.  The "shall be recorded" language relied on by Plaintiff does not
            create a duty to record mortgages or assignments of mortgages ............... 6

        2.  The plain language of Ohio's recording statutes dictates the
            conclusion reached by the Ohio Supreme Court that the statues do
            not require recording of a mortgage or mortgage assignment ................... 8

        3.  The history and purpose of the recording statutes demonstrates
            why there is no duty to record mortgages or mortgage assignments ....... 10

        4.  Plaintiff fails to allege that any mortgages have been assigned that
            were not recorded ................................................................................... 13

        5.  Defendants' use of MERS as mortgagee of record has repeatedly
            been approved by courts in Ohio and elsewhere .................................... 14

    D.  THE COURT SHOULD DISMISS THE COMPLAINT BECAUSE
        PLAINTIFF SEEKS TO RECOVER MONEY DAMAGES FOR
        SERVICES IT NEVER PERFORMED .......................................................... 18

    E.  THE COURT SHOULD DISMISS THE COMPLAINT BECAUSE THE
        STATUTES PLAINTIFF INVOKES DO NOT AUTHORIZE THIS SUIT ...... 19

        1.  The Recording Statutes Contain No Express Right Of Action For
            A County To Sue For An Alleged Violation .......................................... 20

        2.  No Basis Exists To Imply A Right Of Action ........................................ 21

        3.  Other Statutes Cited By Plaintiff Do Not Authorize This Lawsuit ......... 23

    F.  THE COMPLAINT FAILS TO STATE COGNIZABLE CLAIMS FOR
        RELIEF ...................................................................................................... 24

        1.  The Complaint Fails To State A Claim For Declaratory Or
            Injunctive Relief ................................................................................... 24

        2.  The Complaint Fails To State a Claim For Unjust Enrichment ............... 25

i

## <u>TABLE OF CONTENTS</u>
(continued)

PAGE

3.  The Complaint Fails To State a Claim For Conspiracy ........................... 28

III.  CONCLUSION ............................................................................................................. 30

# TABLE OF AUTHORITIES

**CASES**                                                    **PAGE(S)**

*Adams v. Niemann*,
    8 N.W. 719 (Mich. 1881)..............................................................................18

*Allen v. Chase Home Fin., LLC*,
    No. 4:11–cv–223, 2011 WL 2683192 (E.D. Tex. June 10, 2011)...........................16

*Ashcroft v. Iqbal*,
    556 U.S. 662, 129 S. Ct. 1937 (2009)..........................................................4

*Bates v. MERS, Inc.*,
    No. 3:10-cv-407, 2011 WL 1304486 (D. Nev. Mar. 30, 2011)...........................12, 13

*Bates v. MERS, Inc.*,
    No. 3:10-cv-407, ECF No. 57, appeal pending, No. 11-16310
    (9th Cir. filed May 24, 2011)......................................................................13

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007).....................................................................................4

*Bishop v. Lucent Techs.*,
    520 F.3d 516 (6th Cir. 2008) .......................................................................5

*Boley v. Goodyear Tire & Rubber Co.*,
    929 N.E.2d 448 (Ohio 2010)........................................................................9

*Boruchoff v. Ayvasian*,
    323 Mass. 1 (1948) ....................................................................................18

*Bridge v. Aames Capital Corp.*,
    No. 1:09 CV 2947, 2010 WL 3834059 (N.D. Ohio Sept. 29, 2010) ......................17

*Campbell v. Storer*,
    368 N.E.2d 301 (Ohio Ct. App. 1975)..........................................................11

*Cannon v. Univ. of Chicago*,
    441 U.S. 677 (1979)...................................................................................20

*Cervantes v. Countrywide Home Loans, Inc.*,
    656 F.3d 1034 (9th Cir.) ...........................................................................16

*Chase Home Fin., LLC v. Banker*,
    913 N.E.2d 1016 (Ohio Ct. App. 2009)........................................................22

*Chesner v. Stewart Title Guar.*,
 No. 06-cv-476, 2006 WL 2252542 (N.D. Ohio Aug. 4, 2006)................................25

*Cmtys. for Equity v. Mich. High Sch. Athletic Ass'n,*
 459 F.3d 676 (6th Cir. 2006) ................................................................................20

*Commerce Benefits Grp., Inc. v. McKesson Corp.*,
 No. 1:07-cv-2036, 2008 WL 788560 (N.D. Ohio Mar. 20, 2008)....................26, 27

*Commercial Germania Trust & Sav. Bank v. White*,
 81 So. 753 (La. 1919) ............................................................................................18

*Commonwealth Property Advocates, LLC v. Mortg. Elec. Regis. Sys., Inc.*,
 Nos. 10-4182, 10-4193 10-4215, 2011 WL 6739431 (10th Cir. Dec. 23, 2011) ...................16

*Coomes v. Allstate Ins.*,
 No. 10-cv-905, 2011 WL 4005325 (S.D. Ohio Aug. 9, 2011) ............................27

*Countrywide Home Loans Servicing v. Shifflet*,
 No. 9-09-31, 2010 WL 1175235 (Ohio Ct. App. Mar. 29, 2010).........................16

*Dennis v. Husqvarna Forest & Garden Co.*,
 No. 94–309–M, 1994 WL 759187 (D.N.H. Dec. 27, 1994) ................................21

*Deutsche Bank Nat'l Trust Co. v. Traxler*,
 No. 09CA009739, 2010 WL 3294292 (Ohio Ct. App. 2010)...............................16

*Dow v. Union Nat'l Bank*,
 100 N.E. 328 (Ohio 1912)................................................................................6, 8

*Elwert v. Pilot Life Ins. Co.*,
 602 N.E.2d 1219 (Ohio Ct. App. 1991)...............................................................21

*Executors of Swartz v. Leist*,
 13 Ohio St. 419 (1862)...........................................................................14, 16, 18

*First Nat'l Bank v. Nat'l Grain Corp.*,
 131 A. 404 (Conn. 1925) .....................................................................................17

*Gatts v. EGTG, GmbH*,
 470 N.E.2d 425 (Ohio Ct. App. 1983).................................................................11

*Gemini Servs. v. MERS (In re Gemini Servs.)*,
 350 B.R. 74 (Bankr. S.D. Ohio 2006)..................................................................17

*GMAC Mortg. Corp. v. McElroy*,
 2005 WL 1364580 (Ohio Ct. App. June 6, 2005).................................................22

iv

*Govane Bldg. Co. v. Sun Mortg.*,
    144 A. 486 (Md. 1929) ................................................................................18

*Grey v. Walgreen Co.*,
    No. 96846, 2011 WL 5999029 (Ohio Ct. App. Dec. 1, 2011).................................23

*Gulfstream Aerospace Corp. v. Mayacamas Corp.*,
    485 U.S. 271 (1988)................................................................................24

*Haley v. Currin*,
    8 Ohio N.P. 337 (Ohio Super. Ct. 1901).........................................................7, 11

*Holliger v. Bates*,
    43 Ohio St. 437, 2 N.E. 841 (Ohio 1885) ................................................11, 12, 13

*HSBC Mortg. Servs. v. McGuire*,
    No. 07CO44, 2008 WL 5233547 (Ohio Ct. App. Dec. 9, 2008) .............................10

*In re Guardianship of Spangler*,
    933 N.E.2d 1067 (Ohio 2010)....................................................................24

*In re Whirlpool Cor. Front-Loading Washer Prods. Liability Litig.*,
    684 F. Supp. 2d 942 (N.D. Ohio 2009) ........................................................25

*Jackson v. MERS, Inc.*,
    770 N.W.2d 487 (Minn. 2009)...................................................................17

*Johnson v. Microsoft Corp.*,
    834 N.E.2d 791 (Ohio 2005)........................................................25, 26, 27

*Kiah v. Aurora Loan Servs.*,
    No. 10-40161-FDS, 2011 WL 841282 (D. Mass. Mar. 4, 2011), *aff'd*, No. 11-1010
    (1st Cir. Dec. 14, 2012).....................................................................13, 17

*Lawrenceville Cement Co. v. Parker*,
    15 N.Y.S. 577 (Sup. Ct. 1891)..................................................................18

*Long v. Mortg. Elec. Reg. Sys., Inc.*,
    No. 1:10-cv-02854, 2011 WL 304826 (N. D. Ohio Jan. 28, 2011) ...............14, 15, 16

*Maverick Cnty. Water Control & Improvement Dist. v. State*,
    456 S.W.2d 204 (Tex. App. 1970)...............................................................19

*McClain v. Nw. Cmty. Corr. Ctr.*,
    440 F.3d 320 (6th Cir. 2006) ...................................................................21

*MERS, Inc. v. Revoredo*,
    955 So. 2d 33 (Fla. 3d DCA 2007) ..............................................................17

*Meyer v. Chieffo*,
950 N.E.2d 1027 (Ohio Ct. App. 2011)...........................................................................25, 27

*Nat'l City Bank v. Fruchtman*,
782 N.E.2d 695 (Ohio Com. Pl. 2002) ..................................................................................22

*Nielsen v. Ford Motor Co.*,
681 N.E.2d 470 (Ohio Ct. App. 1996)...........................................................................19, 21

*Noland v. Wells Fargo Bank, N.A.* (*In re Williams*),
395 B.R. 33 (Bankr. S.D. Ohio 2008)............................................................................ passim

*Ogden State Bank v. Barker*,
40 P. 769 (Utah 1895)...........................................................................................................18

*Ohio ex rel. Shetzer v. Harshaw Chem. Co.*,
No. 34281, 1975 WL 174545 (Ohio Ct. App. Dec. 18, 1975)...............................................24

*Patterson v. Rite Aid Corp.*,
752 F. Supp. 2d 811 (N.D. Ohio 2010)...........................................................................19, 23

*Perry v. Se. Boll Weevil Eradication Found.*,
154 F. App'x 467 (6th Cir. 2005) ........................................................................................29

*Pinney v. Merchants' Nat'l Bank*,
72 N.E. 884 (Ohio 1904)......................................................................................................22

*PNC Mortg. v. Innis*,
2011 WL 5146044 (Ohio Ct. App. Oct. 31, 2011) ...............................................................22

*Police & Firemen's Disability & Pension Fund v. Akron*,
778 N.E.2d 68 (Ohio. Ct. App. 2002)...................................................................................21

*Price v. EquiFirst Corp.*,
No. 08-cv-1860, 2009 WL 917950 (N.D. Ohio Apr. 1, 2009) ...............................................28

*Residential Funding Co. v. Saurman*,
No. 143178, 2011 WL 5588929 (Mich. Nov. 16, 2011) .......................................................17

*RFC Capital Corp. v. EarthLink, Inc.*,
No. 03AP-735, 2004 WL 2980402 (Ohio Ct. App. Dec. 23, 2004) .......................................29

*RMS Residential Props., LLC v. Miller*,
No. 18746, 2011 WL 6033011 (Conn. Dec. 13, 2011).........................................................17

*Sanderson v. HCA—The Healthcare Co.*,
447 F.3d 873 (6th Cir. 2006) ...............................................................................................29

*Saraf v. Maronda Homes, Inc. of Ohio*,
  No. 02AP-461, 2002 WL 31750249 (Ohio Ct. App. Dec. 10, 2002) .....................................28

*Shump v. First Continental-Robinwood Assocs.*,
  741 N.E.2d 232 (Ohio 2000)......................................................................................9

*Sidle v. Maxwell*,
  4 Ohio St. 236 (1854)..........................................................................................11, 22

*Stark v. Gov't Accounting Solutions, Inc.*,
  No. 2:07-cv-755, 2008 WL 2796499 (S.D. Ohio, Jul. 17, 2008) .............................................4

*State ex rel. Thompson v. Spon*,
  700 N.E.2d 1281 (Ohio 1998) (per curiam).............................................................................9

*Stewart v. Hopkins*,
  30 Ohio St. 502 (1876), *aff'd sub nom. Libby v. Hopkins*, 104 U.S. 303 (1881)..................5, 7

*Stiles v. Chrysler Motors Corp.*,
  624 N.E.2d 238 (Ohio Ct. App. 1993) ....................................................................................28

*Swartz v. KPMG LLP*,
  476 F.3d 756 (9th Cir. 2007) ..................................................................................................29

*Tele. Mgmt. Corp. v. Goodyear Tire & Rubber Co.*,
  32 F. Supp. 2d 960 (N.D. Ohio 1998)...............................................................................26, 27

*Trent v. MERS, Inc.*,
  288 F. App'x 571 (11th Cir. 2008) ........................................................................................16

*Trustees of Boston Univ. v. ASM Comm'ns, Inc.*,
  33 F. Supp. 2d 66 (D. Mass. 1998) ........................................................................................21

*Vance v. Bank of Columbus*,
  2-Ohio-214, 1825 WL 38 (Ohio 1825) ..................................................................................19

*Vawter v. Quality Loan Servicing*,
  707 F. Supp. 2d 1115 (W.D. Wash 2010)..............................................................................17

*Wade v. Comstock ex rel. Comstock*,
  11 Ohio St. 71 (1860).............................................................................................................11

*Wagoner v. Leach Co.*,
  No. 17580, 1999 WL 961166 (Ohio Ct. App. July 2, 1999) ................................................28

*Warnecke v. Chaney*,
  956 N.E.2d 908 (Ohio Ct. App. 2011) ..................................................................................25

*Watson v. City of New York*,
   92 F.3d 31 (2d Cir. 1996) ................................................................................21

*Wead v. Lutz*,
   831 N.E.2d 482 (Ohio Ct. App. 2005) ....................................................10, 11, 12

*Webster Cnty. v. Vaughn*,
   365 S.W.2d 109 (Ky. App. 1962) .......................................................................19

*Weiner v. Klais & Co.*,
   108 F.3d 86 (6th Cir. 1997) ...............................................................................25

*Williams v. Queen City Homestead Co.*,
   21 Ohio Cir. Dec. 438 (Cir. Ct. 1907) ................................................................7

## STATUTES AND ADDITIONAL AUTHORITIES

Fed. R. Civ. P. 9(b) ..............................................................................2, 29, 30

Fed. R. Civ. P. 12(b)(6) .................................................................................4

Ohio Gen. Code § 8543 (1910) .....................................................................8

Ohio Rev. Code § 317.32 ..............................................................................18

Ohio Rev. Code § 5301.25 ...............................................................3, 4, 5, 20, 21

Ohio Rev. Code § 5301.32 .......................................................................*passim*

Ohio Rev. Code § 305.14 ..............................................................................23

Ohio Rev. Code § 309.12 ..............................................................................23

Ohio Rev. Statute § 4133 (1880) ..................................................................7

66 AM. JUR. 2D *Records & Recording Laws* § 40 (1998) ............................10

66 AM. JUR. 2D *Records & Recording Laws* § 117 (1998) ..........................11

69 OHIO JUR. 3d *Mortgages* § 129 ..............................................................10

OHIO PRACTICE REAL ESTATE LAW § 34:2 (2011) ......................................11

# I.     INTRODUCTION

## A.     SUMMARY OF THE ARGUMENT

Plaintiff's entire Amended Complaint (ECF No. 112, "Complaint" or "Am. Compl."), is based on the flawed legal theory that every mortgage contract and mortgage assignment must be recorded with the county recorder and, if they are not, that the county can sue to recover the recording fees for documents that were never recorded. Plaintiff's legal theory that mortgages and assignments *must be* recorded is contrary to well-settled law in Ohio, and is contrary to fundamental principles relating to the transfer of real property. The Ohio Supreme Court held as early as 1876 that the recording of mortgages is purely an optional means for mortgagees to place subsequent bona fide purchasers and creditors on notice of a lien. No court in any state, including Ohio, has ever held that a county recorder is entitled to collect recording fees from a mortgagee who chooses not to record a mortgage or mortgage assignment. The two statutes cited by Plaintiff deal only with the *place* in which documents are to be recorded; neither statute mandates recording. In fact, the only court to address Plaintiff's legal theory described it as "legally frivolous" and dismissed the case *sua sponte* and with prejudice. Plaintiff's Complaint lacks any merit and should be dismissed in its entirety with prejudice.

Plaintiff's lawsuit is also contrary to Ohio law because it seeks fees for services that have not been performed. Under Ohio law, recording fees are not payable (and thus not owed) until a document is presented for recording. Fees, unlike taxes, are not general revenue raising devices, but are charged only to persons upon whom the government has conferred a benefit. Yet, the Complaint seeks recording fees for mortgages and mortgage assignments that were never presented for recording and, therefore were never recorded by the county. As such, Plaintiff cannot sue to recover recording fees relating to mortgages and assignments that were never recorded or never presented for recording.

1

Plaintiff also lacks standing and authority to bring this lawsuit.  The land recording statutes cited and relied on by Plaintiff to bring this action do not create any right of action for alleged violations.  Nor can any such cause of action be implied, because the Ohio General Assembly did not pass the recording statutes to create a revenue stream for counties.  Rather, Ohio case law makes clear that the recording system was enacted and created to benefit and protect mortgagees, bona fide purchasers, and creditors by providing them a recording system that allows for public notice of prior liens.  The Court can and should dismiss the Complaint for this additional reason.

Finally, dismissal is required because no cognizable claims are stated.  Declaratory and injunctive relief are remedies, and where Plaintiff has not alleged any wrongdoing and cannot state a cause of action, the claims should be dismissed.  Plaintiff's unjust enrichment claim should be dismissed because it fails to allege any transaction whereby Plaintiff conferred a benefit on any of the Defendants for which they did not pay.  Plaintiff's civil conspiracy claim also fails because under Ohio law, a conspiracy claim does not exist as an independent tort but, rather, must arise from an underlying tort.  Here, Plaintiff has failed to plead any underlying tort or wrongdoing of any kind, or otherwise state any claims for which he is entitled to relief. Plaintiff, moreover, failed to allege a conspiracy with the specificity required to meet Rule 9(b)'s heightened-pleading standard.  For all of these reasons, Plaintiff's Complaint should be dismissed in its entirety.

**B.      PLAINTIFF'S LEGAL THEORY ALLEGED IN THE COMPLAINT**

The allegations in the Complaint continue to rest on the flawed legal theory that every mortgage contract and every assignment of a mortgage contract must be recorded, and that a recording fee must be paid even if these documents are never recorded.  Am. Compl. ¶ 1, at 2,

¶6, at 3, ¶¶ 43-44, at 13, ¶ 69, at 48-49, ¶ 71, at 49, ¶ 74, at 50.[2]  Plaintiff alleges that the

supposed obligation to record every mortgage and mortgage assignment arises under Ohio's

recording statutes, §§ 5301.25, and 5301.32.  *Id.* ¶ 43, at 13, ¶ 62, at 46, ¶ 69, at 48-49, ¶ 74, at

50.  And Plaintiff emphasizes in his class allegations that each claim is based on this same legal

theory: "all claims are based on the same legal and remedial theories. . . . *Ohio recording laws*

*create identical requirements for the recording of every mortgage and mortgage assignment* on

real property located in Ohio with the county recorder of the proper county recording office . . .

."  *Id.* ¶63, at 47 (emphasis added).  Plaintiff's sole alleged harm also arises from the same

alleged "failure to record all mortgage assignment . . . and pay the attendant recording fees, as

required by Ohio law."  *Id.* ¶ 1, at 2; *see id.* ¶ 69, at 48, ¶ 72, at 49, ¶ 76, at 50.

In his amended pleading, Plaintiff also attempts to allege "Specific Examples of

Unrecorded Assignments," by asserting that an initial mortgage was recorded and that the

"mortgage loan" was assigned without being recorded prior to the ultimate recording of a release

or satisfaction of the mortgage.  *Id.* ¶¶ 77-95, at 22-30 and ¶¶ 1-59, at 30-46.  But these alleged

"specific examples of unrecorded assignments" (*id.*), are examples of the transfer or sale of

promissory notes, not examples of assignment of mortgages.  And as there is no requirement

under Ohio law to record any documents, there is certainly no requirement that promissory notes

must be recorded, or that recording fees be paid for unrecorded notes.  Indeed, the Complaint

does not claim or allege that Ohio law requires notes, as debt instruments, to also be recorded.

---

[2]  The numbered paragraphs in the Complaint begin again at ¶ 1 on page 30, and therefore page numbers are
included in citations to the Complaint.

## II.     <u>LAW AND ARGUMENT</u>

### A.     STATEMENT OF ISSUES TO BE DECIDED

1.     Do Ohio Revised Code sections 5301.25 and 5301.32 mandate the recording of mortgages and mortgage assignments, such that a mortgagee that decides not to record a mortgage or assignment is liable to the county recorder for the recording fees for mortgages and mortgage assignments that are not recorded?

2.     Does Ohio law permit counties to sue in order to seek fees for services that were not performed, where Plaintiff alleges that mortgages and mortgage assignments were not recorded, but seeks payment of recording fees for such unrecorded documents?

3.     Do Ohio Revised Code sections 5301.25 and 5301.32 create private rights of action allowing Plaintiff to sue Defendants for compliance therewith?

4.     Has Plaintiff stated a plausible legal theory and viable claim for which he is entitled to relief for an injunction, declaratory relief, unjust enrichment, or conspiracy?

### B.     MOTION TO DISMISS STANDARD—A VIABLE LEGAL THEORY

To survive a motion to dismiss, a complaint must plead sufficient facts to state a claim for relief that is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The plausibility standard is not "akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009). A plaintiff is obligated to provide factual allegations that "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

Additionally, "a plaintiff's obligation to provide the ground of his entitlement to relief requires more than labels and conclusions." *Id.* The dismissal of a complaint, pursuant to Fed. R. Civ. P. 12(b)(6), is appropriate *if there is no law* to support the claims. *Stark v. Gov't Accounting Solutions, Inc.*, No. 2:07-cv-755, 2008 WL 2796499, at *1 (S.D. Ohio, Jul. 17, 2008)

4

(citing *Rauch v. Day & Night Mfg. Corp.*, 576 F. 2d 697, 702 (6th Cir. 1976)).  In other words, to survive a motion to dismiss, a complaint must allege sufficient facts "to sustain recovery under some viable legal theory."  *Bishop v. Lucent Techs.*, 520 F. 3d 516, 519 (6th Cir. 2008).  No such plausible or viable legal theory is alleged in the Complaint, and it should be dismissed with prejudice.

### C.  THE COMPLAINT SHOULD BE DISMISSED BECAUSE OHIO LAW DOES NOT IMPOSE A DUTY TO RECORD MORTGAGE CONTRACTS OR ASSIGNMENTS OF MORTGAGE CONTRACTS

First, the Court should dismiss the Complaint because it is based on a fundamental misperception of Ohio law.  Plaintiff alleges that recording mortgages and mortgage assignments is mandatory as a matter of law.  Plaintiff is wrong; recording is optional.  This misunderstanding of Ohio law is fatal to the Complaint.

Plaintiff relies on Ohio Revised Code sections 5301.25 and 5301.32 as the basis for his allegations that all "mortgages and mortgage assignments [] must be recorded."  Am. Compl. ¶ 43, at 13.  Plaintiff alleges that Defendants failed to record mortgages and mortgage assignments in violation of these statutes, and as a result are now liable to the county for the recording fees due for any unrecorded mortgages or assignments.  *E.g.*, Am. Compl. ¶ 69, at 48, ¶ 72, at 49, ¶ 76, at 50.  But these statutes simply do not require the recording of mortgages or mortgage assignments.  Rather, the Ohio Supreme Court has long noted that, consistent with the express language, history, and purpose of the recording statutes, recording is only "required" *if the mortgagee* desires to obtain the protections provided by the statutes against subsequent bona fide purchasers lacking knowledge of the interest.  *Stewart v. Hopkins*, 30 Ohio St. 502, 526-27 (1876), *aff'd sub nom. Libby v. Hopkins*, 104 U.S. 303 (1881) ("If the mortgagees were satisfied with the security afforded by the mortgages unrecorded," the court held, "*there was no necessity for recording them*.  The record was only necessary to give them effect against those not parties

thereto.") (emphasis added).  And consistent with the holding in *Stewart*, Ohio law is clear that the *only consequence* of failing to record an interest is to potentially lose the priority of the interest with respect to subsequent bona fide purchasers without knowledge of the interest.  *See Dow v. Union Nat'l Bank*, 100 N.E. 328, 329 (Ohio 1912).  As a result, the entire foundation on which the Complaint is built is contrary to well-established Ohio law.

> **1.     The "shall be recorded" language relied on by Plaintiff does not create a duty to record mortgages or assignments of mortgages.**

Plaintiff relies on two statutes to support his claim that mortgages and mortgage assignments must be recorded.  The Ohio courts have construed these statutes as permissive, however, and as shown below the statutes actually concern *the place* where mortgages and mortgages assignments are to be record—*if* a lender chooses to record them.

Section 5301.25(A), on which Plaintiff principally relies to allege that mortgages and assignments of mortgages *must* be recorded, provides in relevant part,

> All deeds, land contracts referred to in division (A)(2)(b) of section 317.08 of the Revised Code, and instruments of writing properly executed for the conveyance or encumbrance of lands, tenements, or hereditaments . . . shall be recorded *in the office of the county recorder of the county in which the premises are situated*.  Until so recorded or filed for record, they are fraudulent insofar as they relate to a subsequent bona fide purchaser having, at the time of purchase, no knowledge of the existence of that former deed, land contract, or instrument.

(Emphasis added).  The second statute on which Plaintiff relies states in relevant part,

> A mortgage may be assigned or partially released by a separate instrument of assignment or partial release, acknowledged as provided by section 5301.01 of the Revised Code.  The separate instrument of assignment or partial release shall be recorded *in the book* provided by section 5301.34 of the Revised Code for the recording of satisfactions of mortgages.

Ohio Rev. Code § 5301.32(emphasis added).

The "shall be recorded" language in these statutes, however, which has remained the same in every material respect since at least 1876,[3] has never been interpreted to impose a duty of recording, *except at the election of the mortgagee* who wishes to obtain the protections against subsequent bona fide purchasers provided by giving notice in accordance with the statutes. *Stewart*, 30 Ohio St. at 526-27 ("If the mortgagees were satisfied with the security afforded by the mortgages unrecorded . . . *there was no necessity for recording them*.  The record was only necessary to give them effect against those not parties thereto." (Emphasis added)).  The same holds true regarding the recording of assignments of mortgages:

> [I]t is not true that when a mortgage is recorded its assignment is not valid as to third persons unless recorded; for . . . the Supreme Court has said: "Conceding that a written assignment of the mortgage may, under the statute, be recorded and thus be notice to others, *yet the statute does not require it*, and a failure to have it done cannot divest the assignee of his rights and equities."

*Haley v. Currin*, 8 Ohio N.P. 337, 337 (Ohio Super. Ct. 1901) (emphasis added) (quoting *Holliger v. Bates*, 43 Ohio St. 437, 446, 2 N.E. 841, 845 (Ohio 1885)); *see also Williams v. Queen City Homestead Co.*, 21 Ohio Cir. Dec. 438, 438 (Cir. Ct. 1907) ("Section 4135 Rev. Stat. [the predecessor to section 5301.32] does not require a record of an assignment of a mortgage in order to give priority of same over subsequent liens."); *Noland v. Wells Fargo Bank, N.A.* (*In re Williams*), 395 B.R. 33, 47 (Bankr. S.D. Ohio 2008) ("[T]he failure of Wells Fargo—or any other holder of the Note—to record an assignment of the Mortgage does not affect the validity of the Mortgage . . . . ").

---

[3]  In 1876, Ohio Revised Statute section 4133 tracked the language of current section 5301.25(A), stating, "All mortgages, executed agreeably to the provision of this chapter, *shall be recorded* in the office of the recorder of the county in which the mortgaged premises are situated . . . ."  Ohio Rev. Stat. § 4133 (1880) (emphasis added).

In 1912, the Ohio Supreme Court again emphasized that there is no independent duty to record, holding that the sole consequence of an unrecorded document is that it is fraudulent as to subsequent bona fide purchasers:

> Our recording act itself makes the requirement that deeds shall be recorded, and it defines the consequence of a failure to comply with that requirement.  That consequence in the language of the section referred to is: "Until so recorded and filed for record, they (deeds) shall be deemed fraudulent, so far as relates to a subsequent bona fide purchaser having at the time of purchase no knowledge of the existence of such former deed or instrument." *This provision of the statute must be accepted as exclusively defining the consequences which follow a failure to file a deed for record . . . .*

*Dow*, 100 N.E. at 329 (emphasis added).[4]

Thus, under Ohio law, there is no stand-alone obligation to record mortgages or mortgage assignments.  A decision not to record a mortgage or assignment of a mortgage may deprive the mortgagee of whatever benefits recording provides.  But such decision not to record certainly does not violate Ohio law, and it does not provide county recorders with a claim for any unpaid recording fees.

> **2.      The plain language of Ohio's recording statutes dictates the conclusion reached by the Ohio Supreme Court that the statues do not require recording of a mortgage or mortgage assignment.**

Plaintiff supports his contention that all mortgages and mortgage assignments must be recorded by focusing only on the words "shall be recorded" in both statutes.  Am. Compl. ¶ 43, at 13.  In addition to the interpretation being inconsistent with the purpose of the statutes and contrary to binding Ohio law, a fair reading of the sentences demonstrates that Plaintiff

---

[4]  The language of the recording statutes in 1912 is again the same in every relevant and material respect to the current version.  *See* Ohio Gen. Code § 8543 (1910) ("All other deeds and instruments of writing for the conveyance or [e]ncumbrance of lands, tenements, or hereditaments, executed agreeably to the provision this chapter, shall be recorded in the office of the recorder of the county in which the premises are situated, and until so recorded or filed for record, they shall be deemed fraudulent, so far as relates to a subsequent bona fide purchaser . . . .").

misconstrues their meaning. In interpreting statutes, a court must read the entire statute rather than focusing on isolated portions. *State ex rel. Thompson v. Spon*, 700 N.E. 2d 1281, 1283 (Ohio 1998) (per curiam).

A plain reading of section 5301.32 shows that the phrase "shall be recorded" directs *where* the assignment shall be recorded, rather than mandating *that* it be recorded. *Id.* § 5301.32 ("The separate instrument of assignment or partial release shall be recorded *in the book provided by section 5301.34 of the Revised Code for the recording of satisfactions of mortgages*.") (emphasis added). This is consistent with section 5301.34 referenced therein, which contains specific directions to the county recorder concerning how and where to record certain releases. *Id.* § 5302.34 ("In addition to the discharge on the records by the recorder, such certificate shall be recorded in a book kept for that purpose by the recorder.").

The same is true regarding section 5301.25. The statute dictates *where* the mortgage assignment is to be recorded: "All deeds, land contracts . . . , and instruments of writing properly executed for the conveyance . . . of lands . . . shall be recorded *in the office of the county recorder of the county in which the premises are situated.*" *Id.* § 5301.25(A) (emphasis added).

In both instances, Plaintiff would read of out of the statutes the highlighted words which make clear that they are directing creditors where to record documents if they choose to record them. That is not a permissible method of statutory construction, because every word must be given effect. *Boley v. Goodyear Tire & Rubber Co.*, 929 N.E.2d 448, 451-52 (Ohio 2010) ("Our role . . . is to evaluate a statute as a whole and give such interpretation as will give effect to every word and clause in it." (internal quotation marks omitted)); *Shump v. First Continental-Robinwood Assocs.*, 741 N.E. 2d 232, 237 (Ohio 2000) ("There is a presumption that every word

in the statute is designed to have legal effect, and every part of the statute must be regarded where practicable so as to give effect to every part of it.").

Plaintiff's theory that every mortgage and assignment of mortgage must be recorded in order to generate fees for the county recording offices is contrary to binding precedent by the Ohio Supreme Court, the plain text of the statutes, and the purpose and intent of the recording statutes. For this reason, the entire Complaint should be dismissed with prejudice.

### 3.       The history and purpose of the recording statutes demonstrates why there is no duty to record mortgages or mortgage assignments.

The purpose of the recording statutes is not, as Plaintiff contends, to require recording for the benefit of providing recording fees to the clerk, but to "protect innocent, subsequent bona fide purchasers of land who have no knowledge of any encumbrances." *Wead v. Lutz*, 831 N.E. 2d 482, 487 (Ohio Ct. App. 2005); *see also HSBC Mortg. Servs. v. McGuire*, No. 07CO44, 2008 WL 5233547, at *3 (Ohio Ct. App. Dec. 9, 2008) ("The purpose of the recording statutes is to put other lien holders on notice and to prioritize the liens."); 66 AM. JUR. 2D *Records & Recording Laws* § 40 (1998) ("Simply stated, the purpose of a recording statute is to provide protection to subsequent purchasers, lessees, and mortgagees.").

By design and purpose, recording statutes control the relationship between creditors, grantees, or mortgagees with conflicting claims. The recording statutes, however, do not affect the relationship between a grantor and grantee or mortgagor and mortgagee. As a result, recording statutes do not affect the validity of the mortgage instrument or instrument of sale. *See* 69 OHIO JUR. 3d *Mortgages* § 129 ("Because the recording statutes are not enacted for the benefit of the mortgagor, but rather for the protection of third persons who might acquire legal interest in or liens upon the property, an unrecorded mortgage is not rendered invalid by the failure to record as between the parties and their heirs and devisees."); KENTON L. KUEHNLE &

10

JACK S. LEVEY, BALDWIN'S OHIO PRACTICE REAL ESTATE LAW § 34:2 (2011) ("As only between parties to the instrument, a mortgage takes effect upon delivery to the mortgagee."); 66 AM. JUR. 2D *Records & Recording Laws* § 117. A mortgagee's or grantee's failure to record a mortgage or deed may affect its rights to the property when compared to someone with conflicting rights to the property, but does not, and cannot, affect its right to enforce the mortgage or deed against the mortgagor or grantor.

For more than 150 years, Ohio courts have consistently acknowledged that the recording statutes apply only among creditors, mortgagees, or grantees with conflicting rights, not between mortgagees and mortgagors or grantees and grantors. *See, e.g.*, *Wade v. Comstock ex rel. Comstock*, 11 Ohio St. 71, 81 (1860); *Holliger*, 2 N.E. at 845; *Wead*, 831 N.E. 2d at 487; *Gatts v. EGTG, GmbH*, 470 N.E. 2d 425, 428 (Ohio Ct. App. 1983); *Campbell v. Storer*, 368 N.E. 2d 301, 302 (Ohio Ct. App. 1975); *Haley*, 8 Ohio N.P. at 337; *Noland*, 395 B.R. at 42-43. And the Ohio Supreme Court long ago stated that, in the land-recording context, "[e]very statute must be construed according to its intent, and with reference to the mischief to be prevented, and the remedy provided." *Sidle v. Maxwell*, 4 Ohio St. 236, 240 (1854). Where the intent of the recording statutes is to provide "*notice* of the encumbrances created," *id.*, no purpose could be served by requiring recording outside of that specific context. *See id.* ("No sensible object could be accomplished in subjecting persons to the expense of the public record, with a view of notice to the parties themselves."). And there is absolutely no precedent where the statutes have been interpreted to advance any other purpose. Although the Complaint baldly alleges that the purpose of recording statutes is to provide revenue to the county recording office (*e.g.*, Am. Compl. ¶ 1-2, at 2), there is absolutely no legal or factual support for that proposition. Therefore,

the legal theory behind the Complaint is contrary to binding precedent and to the history and purpose of the recording statutes.

Consistent with the purpose of the statutes, virtually all cases interpreting recording statutes arise in the context of determining parties' rights and priorities in interests in land. *See, e.g., Wead*, 831 N.E. 2d at 487 (noting that cases requiring recording were addressing the issue of "competing creditors").  There do not appear to be any cases anywhere, including in Ohio, where a court has held that mortgagees are required to record their interest in property in order to provide recording fee revenues to the government.

There is, however, one reported case addressing the allegation (made here) that mortgages and mortgage assignments *must be* recorded and the failure to do so required the payment of recording fees.  The court in that recent case *sua sponte* ordered the plaintiff to show cause why the complaint should not be dismissed because it was "legally frivolous."  *Bates v. MERS, Inc.*, No. 3:10-cv-407, 2011 WL 1304486, at *3 (D. Nev. Mar. 30, 2011).  The court explained:

> Recordation of an interest in land simply serves to perfect one's interest in real property by putting the world at large on constructive notice of the claimed interest; but *recordation is not required* to validate one's interest.  Every law student studying for the bar exam understands this better than he cares to. . . .  *If Defendants do not wish to record assignments of loans or deeds of trust, they need not do so.*  A party may choose to avoid the filing fee and hassle of recording an assignment if it would rather bear the risk that its interest in the property will not be protected from a potential subsequent bona fide purchaser under the applicable recording statute.

*Id.* (emphasis added).  At a hearing, the *Bates* court noted, "[W]hen I buy a house from you with a deed, I have no obligation even to record that deed.  It's to my detriment if I don't, we all know that, but I have no obligation to record the deed."  Mar. 8, 2011 Mot. Hr'g Tr. at 4, *Bates v.*

*MERS, Inc.*, No. 3:10-cv-407 (D. Nev.), attached hereto as Ex. A.  Repeatedly calling the case "frivolous" (*see id.* at 8-9), the *Bates* court requested that the plaintiff show cause why the case should not be dismissed.  After the plaintiff's efforts failed to show why the claim was not baseless, and without the defendants filing a motion to dismiss, the court dismissed the case with prejudice on April 25, 2011.  *See* Apr. 25, 2011 Order, *Bates v. MERS, Inc.,* No. 3:10-cv-407, ECF No. 57, appeal pending, No. 11-16310 (9th Cir. filed May 24, 2011).  The Court should likewise dismiss the Complaint here.

### 4. Plaintiff fails to allege that any mortgages have been assigned that were not recorded.

In addition to his incorrect legal conclusion that all mortgages and assignments must be recorded, Plaintiff attempts to allege specific "examples of the types of assignments that are required to be, but were not, recorded."  Am. Compl. ¶ 76, at 22.  Plaintiff's first example alleges the following:

- A note was executed in favor of the Lender;

- The mortgage securing the note designated MERS as the mortgagee, solely as nominee for Lender and Lender's successors and assigns, and was recorded in Geauga County;

- Lender sold the mortgage loan to a successor, and the mortgage loan was sold four additional times;

- There is no recorded assignment of the mortgage from Lender to the first successor, or to any of the additional successors;

- MERS ultimately executed and recorded a Satisfaction of Mortgage in Geauga County.

*Id.*¶¶ 77-78, at 22-25.  This example, and each of Plaintiff's examples, does not allege an assignment of a *mortgage*; rather, Plaintiff alleges that the *loan* was sold.  Mortgages and notes which evidence loans are distinct documents, however, and the sale of a loan or a debt does not

affect or relate to the assignment of the legal title to the mortgage or a security instrument. *E.g.*

*Executors of Swartz v. Leist*, 13 Ohio St. 419, 423-25 (1862) ("The legal title to the . . .

mortgage, remained in the mortgagee as fully after the transfer of the note as before."). MERS

was the mortgagee of record in Geauga County (*id.* ¶ 77(a), at 22), and the Complaint does not

allege that the mortgagee of record, in this example MERS, assigned legal title to the mortgage.

The Complaint alleges only that MERS recorded a satisfaction of mortgage. *Id.* ¶ 77(c), at 22-

23.

The same holds true for each of Plaintiff's alleged "examples" of failure to record

assignments of mortgages. *Id.* ¶¶ 77-95, at 22-30 and ¶¶ 1-59, at 30-46. In each example the

original mortgagee recorded the mortgage, but is not alleged to have, in turn, assigned the

mortgage. *Id.* Thus, Plaintiff has failed to plead any instances where legal title to a mortgage

was assigned and the assignment was not recorded. This does not ultimately matter because

even if Plaintiff did allege that legal title to a mortgage had been assigned, there is no obligation

to record the assignment as discussed above. But it is worth noting that Plaintiff has not even

alleged an unrecorded mortgage assignment.

### 5. Defendants' use of MERS as mortgagee of record has repeatedly been approved by courts in Ohio and elsewhere.

Indeed, all that Plaintiff's "specific examples" describe is a mortgagee, often MERS,

recording legal title to a mortgage in the county records and holding legal title to the mortgage

for the benefit of lenders who possess the secured note. This practice is appropriate under the

law and has been approved by Ohio courts both generally and in the specific context of MERS.

*E.g.*, *Executors of Swartz*, 13 Ohio St. at 424 ("The legal title to the . . . mortgage, remained in

the mortgagee as fully after the transfer of the note as before. True, he may have held it as a

trustee . . . for the benefit of [the note holder]."); *Long v. Mortg. Elec. Reg. Sys., Inc.*, No. 1:10-

cv-02854, 2011 WL 304826, at *2 (N. D. Ohio Jan. 28, 2011) ("[T]he lender obtains from the borrower a promissory note and a mortgage instrument naming MERS as the mortgagee (as nominee for the lender and its successors and assigns) . . . . . [T]he mortgage instrument is then recorded in the local land records with MERS as the named mortgagee.  When the promissory note is sold . . . MERS remains the mortgagee of record . . . for the new owner of the promissory note.").  This use of MERS is common and accepted.

MERS plays a well-defined and well-accepted role in mortgage transactions.  MERS, a wholly owned subsidiary of MERSCORP, serves solely as a mortgagee of record, as the nominee for lenders and any of the lenders' successors and assigns.  When a home is purchased, the lender obtains from the borrower a promissory note, and the borrower signs a mortgage whereby the lender and the borrower designate MERS as the mortgagee, as nominee for the lender and its successors and assigns.  *Long*, 2011 WL 304826, at *2.  In the mortgage contract, the borrower assigns interest in the property to MERS, and the security instrument is then recorded in the public land records with MERS as the named mortgagee.  *Id.*  When the promissory note is sold (and possibly re-sold) MERS remains the mortgagee of record and continues to act as an agent or nominee for each new owner of the promissory note.  *Id.*  Because MERS continues to serve as the mortgagee of record for each successive owner of the promissory note, *no accompanying assignment of legal title to the mortgage is created or is necessary.  Id.*  MERS, in essence, holds the legal title to the mortgage in trust for the owner of the note who has no mortgage assignment, but who remains the beneficial or equitable owner of the mortgage.  *See Noland*, 395 B.R. at 47.  This is precisely what Plaintiff alleges in his Complaint, that either MERS or some other entity recorded and held legal title to the mortgage for the successive owners of the note secured thereby.  Am. Compl. ¶¶ 77-95 and ¶¶ 1-59, at 22-46.

The basic principle that a party like MERS may hold legal title to a mortgage without owning an interest in the underlying debt is long-established in Ohio law. *E.g.*, *Executors of Swartz*, 13 Ohio St. at 423-25. The Ohio Supreme Court held in *Swartz* that the sale of a note passes to the buyer "the equitable right to the benefit of the security," but in the absence of an assignment of the mortgage, "[t]he legal title to the . . . mortgage, remained in the mortgagee as fully after the transfer of the note as before." *Id.* at 423-24. The *Swartz* court further held that the original mortgagee held the legal title to the mortgage "as a trustee" for the buyer who now held the equitable interest in the mortgage. *Id.* at 424.

It is therefore no surprise that courts in Ohio, the Ninth, Tenth and Eleventh Circuits, and courts throughout the country, have consistently and repeatedly affirmed this principle in the specific context of MERS—holding that MERS can serve as the mortgagee or beneficiary as nominee for the lender and lender's successors and assigns without possessing a beneficial interest in the note. *E.g.*, *Long*, 2011 WL 304826, at *2 ("In Ohio, it is well settled that MERS, acting as mortgagee and nominee for the lender, may transfer the lender's interest in the mortgage."); *Deutsche Bank Nat'l Trust Co. v. Traxler*, No. 09CA009739, 2010 WL 3294292, at *5-6 (Ohio Ct. App. 2010) (approving of MERS serving as mortgagee as nominee for lender and holding the legal interest in the mortgage); *Noland*, 395 B.R. at 47 ("[W]here the notes are legally transferred, the mortgagee and all claiming under him, will hold the mortgaged property in trust for the holder of the notes.").[5]

---

[5] *See also, e.g., Countrywide Home Loans Servicing v. Shifflet*, No. 9-09-31, 2010 WL 1175235, at *4 (Ohio Ct. App. Mar. 29, 2010) (upholding MERS' assignment); *Commonwealth Property Advocates, LLC v. Mortg. Elec. Regis. Syss, Inc.*, Nos. 10-4182, 10-4193, 10-4215, 2011 WL 6739431 at * 1, 6 (10th Cir. Dec. 23, 2011) (explaining the MERS system and affirming that MERS may act "as nominee for Lender and Lender's successors and assigns" and that "someone other than the beneficial owner of the debt [may] act on behalf of that owner to enforce rights granted in the security instrument"); *Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034 (9th Cir.) (explaining the MERS system and affirming dismissal of a complaint alleging that MERS was a "sham" beneficiary);*Trent v. MERS, Inc.*, 288 F. App'x 571, 572 (11th Cir. 2008) ("Under the mortgage contracts, Mortgage Systems [MERS]. . . is the mortgagee."); *Allen v. Chase Home Fin., LLC*, No. 4:11–cv–223, 2011 WL 2683192, at

In *Noland*, a note and mortgage were owned by a securitization trust that never recorded an assignment of the mortgage.  395 B.R. at 47.  The Ohio bankruptcy court explained that where a mortgage is properly recorded in favor of MERS, as agent for a lender and its successors and assigns, *neither assignment of the mortgage nor recording of the assignment is necessary for a subsequent owner of the note to retain the benefit of the initial recorded mortgage.  Id.*  The *Noland* court held that "MERS holds the legal interest in the Mortgage, as agent for the Note holder, whomever it may be, who, under Ohio law, because security follows the debt, holds the equitable title thereto."  *Id.*  Indeed, for more than a century and long before MERS was created, it was, and remains, a widely accepted rule of law that a mortgagee designated on a mortgage may be a person other than the owner of the debt secured thereby.[6]

---

*3 (E.D. Tex. June 10, 2011) ("MERS is a mortgagee under the Texas Property Code."); *Kiah v. Aurora Loan Servs.*, No. 10-40161-FDS, 2011 WL 841282 at * 4 (D. Mass. Mar. 4, 2011), *aff'd*, No. 11-1010 (1st Cir. Dec. 14, 2012) ("In any case, and as plaintiff also acknowledges, MERS had the power to act as the agent of any valid note holder under the terms of the mortgage documents.  The plain language of the mortgage states that MERS was acting as nominee for [the lender] and its 'successors and assigns.'"); *Vawter v. Quality Loan Servicing*, 707 F. Supp. 2d 1115 (W.D. Wash 2010) (no facts to support allegation that MERS was not beneficiary under Washington law); *Bridge v. Aames Capital Corp.*, No. 1:09 CV 2947, 2010 WL 3834059, at *3-4 (N.D. Ohio Sept. 29, 2010); *Gemini Servs. v. MERS (In re Gemini Servs.)*, 350 B.R. 74, 81, 83-84 (Bankr. S.D. Ohio 2006) (holding that a mortgage was valid against a bona fide purchaser, *without an assignment of the mortgage*, where the party owned the equitable interest in the mortgage through "transfer of the note," and where "[t]he legal interest in the mortgage was assigned . . . to MERS and was recorded . . . ."); *RMS Residential Props., LLC v. Miller*, No. 18746, 2011 WL 6033011, at *6 (Conn. Dec. 13, 2011) ("A mortgage may be held for the security of the real creditor, whether his is the party named as [the] mortgagee or some other party, for the provisions of a mortgage are not necessarily personal to the mortgagee named.  The real party in interest may be an assignee of the mortgagee or [someone] subrogated to his rights under the mortgage, or even a third person not answering either of these descriptions. . . . So, it has been held that where a mortgage is given to the cashier of a bank in his individual name, for the purpose of securing a debt due from the mortgagor to the bank, the mortgage is a good and valid security in the favor of the bank . . . and a mortgage given to the administrator of an estate enures to the estate of which he is the representative.'' (citations omitted)); *MERS, Inc. v. Revoredo*, 955 So. 2d 33, 34 (Fla. 3d DCA 2007) ("The problem arises from the difficulty of attempting to shoehorn a modern innovative instrument of commerce into nomenclature and legal categories which stem essentially from the medieval English land law. . . .  Because, however, it is apparent—and we so hold—that no substantive rights, obligations or defenses are affected by the use of the MERS device, there is no reason why mere form should overcome the salutary substance of permitting the use of this commercially effective means of business.").

[6]  *See, e.g.*, *Residential Funding Co. v. Saurman*, No. 143178, 2011 WL 5588929, at *1 (Mich. Nov. 16, 2011) ("It has never been necessary that the mortgage should be given directly to the beneficiaries. The security is always made in trust to secure obligations, and the trust and the beneficial interest need not be in the same hands . . . . The choice of a mortgagee is a matter of convenience."**);** *Jackson v. MERS, Inc.*, 770 N.W.2d 487, 500-01 (Minn. 2009) ("Our case law establishes that a party can hold legal title to the security instrument without holding an interest in the promissory note."); *First Nat'l Bank v. Nat'l Grain Corp.*, 131 A. 404, 406-07 (Conn. 1925) ("A mortgage may

17

Therefore, not only is Plaintiff's entire Complaint based upon a legal theory of mandatory recording of mortgages and mortgage assignments that is contrary to over a century of Ohio law, but Plaintiff has failed to allege that mortgage assignments were created but not recorded. Instead, Plaintiff alleges that mortgagees held and recorded legal title to mortgages for the benefit of the owner of the debt secured thereby, a legal principle that has been the law in Ohio for more than a hundred years. *Executors of Swartz*, 13 Ohio St. at 423-25. This provides no legal basis for Plaintiff's claims, and Plaintiff's Complaint should be dismissed.

### D. THE COURT SHOULD DISMISS THE COMPLAINT BECAUSE PLAINTIFF SEEKS TO RECOVER MONEY DAMAGES FOR SERVICES IT NEVER PERFORMED.

This lawsuit has an additional, fatal defect under Ohio law. Plaintiff is an Ohio county suing to recover recording fees. But it is a fundamental precept of Ohio law that counties can only recover fees for services they actually performed. *See* Ohio Rev. Code § 317.32 (recording fee is due only "upon the presentation of the instruments for record."). Plaintiff expressly alleges the opposite—that Plaintiff is entitled to recording fees for mortgage assignments that were never created or presented for recording.[7] In these circumstances, Ohio law—like the law of

---

be held for the security of the real creditor, whether he is the party named as mortgagee or some other party, for the provisions of a mortgage are not necessarily personal to the mortgagee named. The real party in interest may be an assignee of the mortgagee or someone subrogated to his rights under the mortgage, or even a third person not answering either of these descriptions."); *Commercial Germania Trust & Sav. Bank v. White*, 81 So. 753, 754 (La. 1919) ("a mortgagor may make a mortgage in favor of a nominal, or straw, mortgagee"); *Govane Bldg. Co. v. Sun Mortg.*, 144 A. 486, 488 (Md. 1929) ("Nor is it material that the debt was due to the mortgagee as agent only, if he in good faith represented the indebtedness to a real creditor, and was duly authorized to take the mortgage in his own name."); *Boruchoff v. Ayvasian*, 323 Mass. 1, 10 (1948) ("[W]here a mortgage and the obligation secured thereby are held by different persons, the mortgage is regarded as an incident to the obligation, and, therefore, held in trust for the benefit of the owner of the obligation."); *Adams v. Niemann*, 8 N.W. 719, 720 (Mich. 1881) ("A mortgage to a third person would be as valid as a mortgage to a creditor. The choice of a mortgagee is a matter of convenience."); *Lawrenceville Cement Co. v. Parker*, 15 N.Y.S. 577, 578 (Sup. Ct. 1891) (holding that bank official could hold mortgage, as mortgagee, for bank, which held the underlying promissory note); *Ogden State Bank v. Barker*, 40 P. 769, 769 (Utah 1895) ("The mere fact that the mortgagee was not the real owner of the notes, but was simply a trustee or agent for the owner, does not affect the validity of the mortgage.").

[7] Am. Compl. ¶¶ 1, at 2 ("This is a class action . . . arising out of Defendants' failure to record all mortgage assignments . . . and pay the attendant recording fees. . ."); ¶¶ 4-6, at 2-3 ("Defendants . . . purposely fail[ed] to record all mortgage assignments . . . purposely avoiding the payment of attendant county recording fees."); ¶ 69, at

other jurisdictions—bars Plaintiff from recovering recording fees for assignments that were never presented for recording, and as to which Plaintiff did not render any services.  *Vance v. Bank of Columbus*, 2-Ohio-214, 1825 WL 38, at *1 (Ohio 1825) (sheriff entitled to poundage only where sheriff rendered a service; poundage "is given as a compensation for services really performed.  When this is not done compensation cannot be claimed."); *see also Webster Cnty. v. Vaughn*, 365 S.W.2d 109, 110 (Ky. App. 1962) (county prosecutor could not recover costs because he "did not take any part whatsoever in the prosecution of any of the cases . . . or perform any services in connection therewith"); *Maverick Cnty. Water Control & Improvement Dist. v. State*, 456 S.W.2d 204, 207 (Tex. App. 1970) (county agency could not assess a fee against the state for services that were "neither received nor requested").

### E.  THE COURT SHOULD DISMISS THE COMPLAINT BECAUSE THE STATUTES PLAINTIFF INVOKES DO NOT AUTHORIZE THIS SUIT.

The Complaint is also defective, and should be dismissed, because the statutes Plaintiff invokes do not create a private cause of action.  The Ohio Supreme Court has admonished that "a 'statutory policy' may not be implemented by the Ohio courts in a private civil action absent a clear implication that such a remedy was intended by the Ohio General Assembly."  *Nielsen v. Ford Motor Co.*, 681 N.E. 2d 470, 474 (Ohio Ct. App. 1996); *see also Patterson v. Rite Aid Corp.*, 752 F. Supp. 2d 811, 816 (N.D. Ohio 2010) (same).  That legislative intent authorizing a private action under the statutes Plaintiff invokes is clearly lacking, and so the Court should dismiss the Complaint.

---

48, ("Plaintiff requests a judgment declaring that Defendants are required to record every mortgage and mortgage assignment . . . [and] pay the attendant statutory recording fees to the county recording office . . ."); ¶ 77, at 50 ("Ohio counties have been denied recording fees for every assignment of a mortgage loan that Defendants were required to, but failed to, record in county recording offices.").

1.      **The Recording Statutes Contain No Express Right Of Action For A County To Sue For An Alleged Violation.**

The clearest indication of a legislative intent to allow suit occurs when a statute sought to be enforced contains an express provision allowing an aggrieved party to file suit.  *Cmtys. for Equity v. Mich. High Sch. Athletic Ass'n,* 459 F. 3d 676, 690 (6th Cir. 2006) ("The provision of an express, private means of redress in the statute itself is ordinarily an indication" of Congressional intent."); *Cannon v. Univ. of Chicago*, 441 U.S. 677, 690 n.13 (1979) ("[T]he right- or duty-creating language of the statute has generally been the most accurate indicator of the propriety of implication of a cause of action.").  No such provision exists here.

Plaintiff alleges that Defendants' failure to record mortgages and assignments of mortgages violated Ohio Rev. Code §§ 5301.25 and, 5301.32.  Am. Compl. ¶ 43, at 13, ¶ 69, at 48.  But neither statute contains an express right of action allowing a lawsuit for damages for alleged failure to record mortgage assignments.[8]  Captioned "Recording in county where real estate situated - survey form," section 5301.25 contains three separate subsections.  Subsection (A) sets forth the proper county recorder's office where an instrument should be recorded; subsection (B) concerns surveys of land; and subsection (C) governs recording of tax certificates. *Id*.  None authorizes a lawsuit if a person believes a violation has occurred.  The same is true of section 5301.32.  Captioned "Assignment or partial release by separate instrument," it concerns releases of liens after a loan is paid off as well as assignments, but it also does not confer any private right of action.

The clear expression of legislative intent needed to allow Plaintiff—or anyone else—to sue with respect to an alleged failure to record assignments of mortgages is entirely lacking here.

---

[8]  Defendants attach these provisions for the convenience of the Court as Ex. B.

### 2.    No Basis Exists To Imply A Right Of Action.

Ohio courts rarely will imply a private cause of action when a statute does not expressly create one.  *See, e.g., Police & Firemen's Disability & Pension Fund v. Akron*, 778 N.E. 2d 68, 75 (Ohio. Ct. App. 2002) ("[I]f the legislature intended to create a statutory cause of action . . . the legislature would have included such a provision within that chapter.").  That reluctance is multiplied here, because federal courts are wary of implying causes of action under state law in light of federalism concerns.[9]  Even without those concerns, no basis exists here to imply a private right of action to sue for damages for alleged violation of sections 5301.25, 5301.32.

An Ohio court may find an implied right of action only by answering three questions in the affirmative:  "(1) Was plaintiff a member of the class for whose especial benefit the statute was enacted? (2) Is there any indication of legislative intent either to create or deny such a remedy? and (3) Is inferring a remedy consistent with the underlying purposes of the legislative scheme?"  *McClain v. Nw. Cmty. Corr. Ctr.*, 440 F. 3d 320, 328 (6th Cir. 2006)).[10]  None of these requirements is met in this case.

First, and most critically, Plaintiff has failed to plead any facts alleging that it is a member of a class for whose especial benefit the statutes were enacted.  *See McClain*, 440 F. 3d at 328.  Nor could Plaintiff, because the General Assembly did not enact Ohio's land recording system to create a revenue source for Ohio counties.  Rather, Ohio courts have recognized that the system was passed instead to benefit two distinct groups:

---

[9] *Watson v. City of New York*, 92 F.3d 31, 36 (2d Cir. 1996); *Trustees of Boston Univ. v. ASM Comm'ns, Inc.*, 33 F. Supp. 2d 66, 75 (D. Mass. 1998); *Dennis v. Husqvarna Forest & Garden Co.*, No. 94–309–M, 1994 WL 759187, at *7 (D.N.H. Dec. 27, 1994).

[10] *See also Nielsen*, 681 N.E.2d at 474; *Elwert v. Pilot Life Ins. Co.*, 602 N.E.2d 1219, 1228 (Ohio Ct. App. 1991).

- the creditor who makes a loan, as it may record the security instrument in the land records and give the world notice of its secured claim;[11] and

- later lienholders or purchasers, who can make decisions whether to extend credit or acquire property informed about the existence of prior liens which will have seniority by virtue of having been recorded first.[12]

Because the recording statutes were not passed to benefit counties, the first element is not met, which alone precludes any implication of a private cause of action.

Plaintiff also has not alleged—and could not allege—the second requirement for implying a private right of action: a legislative intent to create a private right of action for an Ohio county. The General Assembly plainly knows how to create express remedies when it wishes to do so. Although the recording statutes Plaintiff invokes here do not create a private remedy, section 5301.36 *does* provide a private right of action to borrowers whose mortgages are not released within ninety days of satisfaction. This demonstrates the absence of any intent to create other unexpressed private rights of action, such as the one claimed by Plaintiff here. *Strack*, 515 N.E. 2d at 1008 ("This court will not substitute its judgment for that of the legislature, which could have easily expressly provided for such a remedy"). Indeed, an Ohio court of appeals just recently refused to imply a cause of action where, as here, the General

---

[11] *Sidle*, 4 Ohio St. at 240 ("The manifest object of the statute requiring the recording of mortgages, is notice of the incumbrances created; and of course, this notice has reference to persons other than those who are parties to the instrument."); *PNC Mortg. v. Innis*, 2011 WL 5146044, at *4 (Ohio Ct. App. Oct. 31, 2011) ("[T]he purpose of recordation practices is to place third parties on notice that the mortgage exists and to establish lien priority."); *Chase Home Fin., LLC v. Banker*, 913 N.E.2d 1016, 1021 (Ohio Ct. App. 2009) ("The purpose of recordation is to give notice to third persons.").

[12] *Pinney v. Merchants' Nat'l Bank*, 72 N.E. 884, 888 (Ohio 1904) (The purpose of recording releases and assignments "is to secure a record which will apprise all interested of the real condition of the title with respect to incumbrances."); *GMAC Mortg. Corp. v. McElroy*, 2005 WL 1364580, at *3 (Ohio Ct. App. June 6, 2005) ("The purpose of the recording statutes is to put other lien holders on notice and to prioritize the liens."); *Nat'l City Bank v. Fruchtman*, 782 N.E.2d 695, 698 (Ohio Com. Pl. 2002) ("The purpose of [the statute, §5301.23,] is to protect third parties who might later acquire various interests in the property.").

Assembly chose to grant an express remedy in favor of certain groups, but did not create any private remedy in favor of the plaintiff who filed suit. *Grey v. Walgreen Co.*, No. 96846, 2011 WL 5999029, at *3 ¶ 14 (Ohio Ct. App. Dec. 1, 2011) (statute specifically granted remedy to self-insured employees to sue about overcharges in prescription drugs, but did not create any cause of action for individual workers' compensation claimants).

Finally, Plaintiff cannot meet the final requirement: demonstrating that the remedy it seeks is consistent with the statutory scheme. As explained above, the General Assembly passed recording statutes to allow creditors to give notice of their secured interest in property, and to give subsequent purchasers and lenders notice of recorded liens. Allowing Plaintiff to recover money damages for mortgages and mortgage assignments that were never recorded with the county is wholly unrelated to this purpose and would in no way further the identified legislative interests.

In sum, the General Assembly comprehensively regulated the subject of recording interests affecting real estate, and it provided no indication that the statutes were passed to create a revenue stream for counties, and particularly not for unrecorded mortgages and mortgage assignments. In these circumstances, no basis exists to infer a private cause of action in favor of Plaintiff. *Patterson*, 752 F. Supp. 2d at 816-17 (refusing to imply private right of action without clear legislative intent).

### 3.    Other Statutes Cited By Plaintiff Do Not Authorize This Lawsuit.

Recognizing the recording statutes do not authorize the filing of this lawsuit, Plaintiff alleges he filed suit "[p]ursuant to §§ 305.14, 309.12" of the Ohio Revised Code. Am. Compl. ¶ 10, at 3. Neither authorizes a cause of action.

Section 305.14, entitled "Employment of Legal Counsel," provides a mechanism whereby a court may authorize a board of county commissioners to retain counsel in a lawsuit in

which the county's interests are at stake.  It does not, of course, create a right of action to sue for damages for violations of statutes where the legislature has not enacted one.  *In re Guardianship of Spangler*, 933 N.E. 2d 1067, 1073 (Ohio 2010) (Section 305.14 allows board to hire counsel, but "does not allow the board to initiate any legal action it chooses").

Section 309.12 does not assist Plaintiff either.  It provides that the prosecuting attorney of a county may file a lawsuit in various circumstances, including if "money is due the county."  To bring a claim based on this theory, however, the plaintiff must establish a "fixed and settled obligation that a certain sum of money is actually due the County."  *Ohio ex rel. Shetzer v. Harshaw Chem. Co.*, No. 34281, 1975 WL 174545, at *3 (Ohio Ct. App. Dec. 18, 1975) (emphasis added).

Here, Plaintiff's prayer for relief does not seek recovery of any "certain sum of money" that is due to it from Defendants:  to the contrary, it only vaguely requests "an award of damages as set forth above."  Am. Compl. at 51.  Indeed, as noted above, no money is "due" to Plaintiff under Ohio law because recording fees are only due when documents are recorded, and no assignments were recorded.   Plaintiff accordingly cannot sue under section 309.12 because no "certain sum of money" is involved.  *Sheltzer*, 1975 WL 17545, at * 3 (dismissing lawsuit because right to payment insufficiently "tangible and definite").

### F.  THE COMPLAINT FAILS TO STATE COGNIZABLE CLAIMS FOR RELIEF.

#### 1.  The Complaint Fails To State A Claim For Declaratory Or Injunctive Relief.

Finally, the individual Counts asserted otherwise fail on their face.  The First Count purports to state a claim for declaratory and injunctive relief.  But these are remedies, not independent causes of action.  *Gulfstream Aerospace Corp. v. Mayacamas Corp.*, 485 U.S. 271, 284 (1988) ("Actions for declaratory judgments are neither legal nor equitable, and courts have

therefore had to look to the kind of action that would have been brought had Congress not provided the declaratory judgment remedy."); *Weiner v. Klais & Co.*, 108 F. 3d 86, 92 (6th Cir. 1997) ("With regard to Count IV, in which plaintiff seeks declaratory relief, plaintiff has merely asserted a form of relief, not a cause of action."); *Chesner v. Stewart Title Guar.*, No. 06-cv-476, 2006 WL 2252542, at *10 (N.D. Ohio Aug. 4, 2006) ("Because the Court finds that injunctive relief is a remedy . . . the Court grants Defendant's Motion to Dismiss Plaintiffs' claim insofar as it purports to state a claim for injunctive relief.").  As explained, Plaintiff has no cause of action to recover fees under the recording statute, and there is no duty to record the alleged mortgage assignments.  Because Plaintiff has not and cannot otherwise state a cause of action, and these claims cannot stand alone, the Court should dismiss the First Count.

### 2.	The Complaint Fails To State a Claim For Unjust Enrichment.

The Second Count alleges that Defendants were unjustly enriched by recording mortgages and receiving the benefits granted by Ohio's recording statutes, which includes (1) the lien priority conferred by statute, and (2) being able to represent to mortgage-backed-securities investors that the mortgage loans were secured by first lien mortgages. Am. Compl. ¶¶ 71-73, at 49.  This claim fails to state a cognizable claim for relief for several reasons.

Unjust enrichment occurs when "a party retains money or benefits which in justice and equity belong to another."  *In re Whirlpool Cor. Front-Loading Washer Prods. Liability Litig.*, 684 F. Supp. 2d 942, 951 (N.D. Ohio 2009) (Gwin, J.).  A plaintiff is entitled to recover under a theory of unjust enrichment only where "(1) the plaintiff conferred a benefit on the defendant, (2) the defendant knew of the benefit, and (3) it would be unjust to permit the defendant to retain the benefit without payment."  *Meyer v. Chieffo*, 950 N.E. 2d 1027, 1039 (Ohio Ct. App. 2011).[13]

---

[13]  *See also In re Whirlpool*, 684 F. Supp. 2d at 951; *Johnson v. Microsoft Corp.*, 834 N.E.2d 791, 799 (Ohio 2005); *Warnecke v. Chaney*, 956 N.E.2d 908, 912 (Ohio Ct. App. 2011).

Unjust enrichment does not exist "to compensate the plaintiff for any loss or damage suffered by him" but rather "to compensate him for the benefit he has conferred on the defendant." *Johnson*, 834 N.E. 2d at 799. Thus, where "no economic transaction occurred" between the parties, the plaintiff "cannot establish that [the defendant] retained any benefit 'to which it is not justly entitled.'" *Id.*; *see also Commerce Benefits Grp., Inc. v. McKesson Corp.*, No. 1:07-cv-2036, 2008 WL 788560, at *11-12 (N.D. Ohio Mar. 20, 2008) (dismissing unjust enrichment claim); *Tele. Mgmt. Corp. v. Goodyear Tire & Rubber Co.*, 32 F. Supp. 2d 960, 972 (N.D. Ohio 1998) (same).

The Second Count should be dismissed because it fails to plead a cognizable claim. As an initial matter, the unjust enrichment claim fails because the alleged benefit conferred on Defendants—use of the land recording system—is not one which Geauga County conferred at all Geauga County did not pass the statutes which created the land recording system; rather, those statutes were passed by the Ohio legislature. Geauga County merely administers the land records system.

Moreover, dismissal also is required because the Complaint does not allege that Defendants were unjustly enriched as a result of any economic transaction that took place between Defendants and Plaintiff. To the contrary, Plaintiff alleges that the benefit conferred upon Defendants resulted from the "initial assignments" that are alleged to have been recorded (Am. Compl. ¶ 71, at 49), and Plaintiff does not allege that Defendants did not pay the recording fee upon recording the "initial assignments." The county recorders were paid in exchange for the only benefit that they conferred, the ministerial task of recording documents in their statutorily prescribed location. Any benefits which accompany recording, such as the priority of the lien, flow from that paid-for recording as a matter of law. They are benefits conferred by the

26

recording statutes—not by any additional action of Plaintiff. Therefore, Defendants did not

receive a benefit from Plaintiff without payment, foreclosing an unjust-enrichment claim. *See*

*Coomes v. Allstate Ins.*, No. 10-cv-905, 2011 WL 4005325, at *9 (S.D. Ohio Aug. 9, 2011)

(Bowman, Mag.) ("The law for unjust enrichment seeks to prevent a party from retaining a

benefit *without having paid for the benefit*. . . . Where there is no dispute that a party was fully

compensated for the time he was employed, that party's claim that another was unjustly enriched

by the performance of his assigned tasks must fail." (Emphasis added)).

The very premise of Plaintiff's Complaint is that Defendants did not record documents

with the county recorders which Plaintiff alleges should have been recorded, and that Defendants

did not pay recording fees which Plaintiff believes should have been paid. *E.g.*, Am. Compl. ¶¶

3-6, at 2-3. In short, Plaintiff alleges that there was *no* economic transaction or interaction of any

kind between Plaintiff and Defendants with respect to the non-recorded mortgages and mortgage

assignments. As a result, *Plaintiff has not "conferred a benefit" on Defendants*; Defendants

have not "retain[ed] [any] benefit" provided by Plaintiff; and there could be no showing that

Defendants "knew of" benefits that Plaintiff had never conferred. *Meyer*, 950 N.E. 2d at 1039.

The Second Count thus does not state a claim for unjust enrichment under Ohio law and must be

dismissed. *Johnson*, 106 Ohio St. 3d at 286, 834 N.E. 2d at 799; *Meyer*, 950 N.E. 2d at 1039;

*Commerce Benefits,* 2008 WL 788560, at *11-12; *Tele. Mgmt. Corp.*, 32 F. Supp. 2d at 972.

The Court should also dismiss the unjust enrichment claim because no "unjust" conduct

occurred. As discussed above, Ohio courts have repeatedly held that Ohio law imposes no duty

to record mortgages or mortgage assignments. Because no "unjust conduct" occurred, there is no

basis for a claim of unjust enrichment under Ohio law. *Commerce Benefits*, 2008 WL 788560, at

*11-12 (even if plaintiff conferred a benefit on defendants, there was nothing unjust about defendants' conduct).

### 3.    The Complaint Fails To State a Claim For Conspiracy.

The Third Count alleges that, by creating MERS, Defendants "conspired" to circumvent Ohio's recording statutes.  *See* Compl. ¶¶ 74-77, at 50.  Plaintiff fails to state a cause of action for civil conspiracy.

A civil-conspiracy claim does not exist as an independent tort but, rather, it must arise from an underlying tort.  *Stiles v. Chrysler Motors Corp.*, 624 N.E. 2d 238, 244 (Ohio Ct. App. 1993).  Where the underlying tort fails to state a cause of action, the conspiracy claim also fails.  *See Price v. EquiFirst Corp.*, No. 08-cv-1860, 2009 WL 917950, at *8 (N.D. Ohio Apr. 1, 2009) (Gwin, J.) ("Ohio does not recognize conspiracy as an independent tort.  In this case, all of the relevant causes of actions underlying the conspiracy claim either do not exist or are time barred.  As a result, the Plaintiff's civil conspiracy claim fails and, accordingly, it is dismissed.").  Here, Plaintiff does not even attempt to allege an underlying tort, but he also fails, as shown above, to allege any claim for relief or any form of underlying wrongdoing as a result of Defendants "circumventing" Ohio's recording statutes.

It is "[a]n underlying *tort* [that] is *necessary* to give rise to a cause of action for conspiracy."  *Stiles*, 624 N.E. 2d at 244 (emphasis added); *see also Wagoner v. Leach Co.*, No. 17580, 1999 WL 961166, at *1, *21 (Ohio Ct. App. July 2, 1999) (rejecting civil-conspiracy claim based on breach of contract).  And Plaintiff's only alleged cause of action, for unjust-enrichment, is *not a tort* but a claim based on equity.  *See Saraf v. Maronda Homes, Inc. of Ohio*, No. 02AP-461, 2002 WL 31750249, at *2 (Ohio Ct. App. Dec. 10, 2002) ("The doctrine of unjust enrichment provides an equitable remedy . . . .  [W]here damages are available for breach of contract or in tort, the party cannot also invoke the equitable remedy for unjust enrichment.");

28

*RFC Capital Corp. v. EarthLink, Inc.*, No. 03AP-735, 2004 WL 2980402, at *19 (Ohio Ct. App. Dec. 23, 2004) ("[W]here damages may be available for breach of contract or tort, a plaintiff cannot also invoke the equitable remedy for unjust enrichment.").[14]  Because Plaintiff does not allege any underlying torts, much less base his civil-conspiracy claim on an underlying tort, and because there is no cause of action available under Ohio's recording statutes and no allegations that Defendants have failed to comply with the recording statutes, the civil-conspiracy claim fails.

Plaintiff, moreover, has not properly pleaded a civil-conspiracy claim.  "Conspiracy claims . . . must be pleaded with specificity," as required by Rule 9(b).  *Perry v. Se. Boll Weevil Eradication Found.*, 154 F. App'x 467, 477 (6th Cir. 2005) (citing *Jaco v. Bloechle*, 739 F. 2d 239, 245 (6th Cir. 1984); *Selzer v. Cnty. of Allegan*, 215 F. 3d 1327 (6th Cir. 2000) (table decision)).  Under Rule 9(b)'s heightened-pleading standard, the allegations must, at a minimum, state the "who, what, when, where, and how" of the conspiracy.  *Sanderson v. HCA—The Healthcare Co.*, 447 F. 3d 873, 877 (6th Cir. 2006).  This is especially true in multi-defendant cases such as this.  *Swartz v. KPMG LLP*, 476 F. 3d 756, 765 (9th Cir. 2007) ("Rule 9(b) does not allow a complaint to merely lump multiple defendants together but require[s] plaintiffs to differentiate their allegations when suing more than one defendant . . . and inform each defendant separately of the allegations surrounding his alleged participation in the fraud.").  Yet, the Complaint makes no allegations as to how, where, when, and who among the Defendants allegedly conspired.  Instead, the Complaint makes only broad, conclusory allegations of conspiracy.  *See* Am. Compl. ¶ 74, at 50 ("By creating and/or using MERS to track sales and assignments of mortgage loans among MERS Members, Defendants acted in concert with each

---

[14]  After a Westlaw research, Defendants could not find *any* case in Ohio that allowed a civil-conspiracy claim based on a theory of unjust enrichment.

other . . . ."); *id.* ¶ 76, at 50 ("By creating and/or using MERS, Defendants acted together to purposefully and unlawfully violate Ohio's statutory recording requirements.").  These allegations, lacking any factual detail, do not meet the Rule 9(b) pleading requirements to state a conspiracy claim thus fails to state a cognizable claim.

### III.  CONCLUSION

For these reasons, Defendants respectfully request that the Court grant their Motion to Dismiss the Complaint with prejudice.

Dated:  January 25, 2012                    Respectfully submitted,

*/s/ Dale H. Markowitz*                     */s/ Robert M. Brochin*
Dale H. Markowitz, Esq. (0016840)          Robert M. Brochin (admitted *pro hac vice*)
Todd C. Hicks, Esq. (0063255)              Andrew B. Boese (admitted *pro hac vice*)
THRASHER, DINSMORE & DOLAN                 MORGAN, LEWIS & BOCKIUS LLP
100 7th Avenue, Suite 150                  200 South Biscayne Boulevard, Suite 5300
Chardon, Ohio 44024-1079                   Miami, FL 33131-2339
Telephone:  (440) 285-2242                 Telephone: (305) 415-3456
Facsimile:  (440) 285-9423                 Facsimile: (305) 415-3001
Email: dmarkowitz@tddlaw.com               Email: rbrochin@morganlewis.com
     thicks@tddlaw.com                          aboese@morganlewis.com

*Co-Counsel for Defendant Home Savings*    *Attorneys for Defendants MERSCORP, Inc. and*
*& Loan Company of Youngstown*             *Mortgage Electronic Registration Systems, Inc.*

*/s/ Thomas Gacse*                         */s/ Jeremy Gilman*
Thomas Gacse, Esq. (0008715)              Jeremy Gilman (0014144)
Home Savings and Loan Company of          Kari B. Coniglio (0081463)
Youngstown                                BENESCH, FRIEDLANDER, COPLAN &
275 Federal Plaza West                    ARONOFF LLP
Youngstown, Ohio 44501-1111               200 Public Square, Suite 2300
Email:  TGacse@homesavings.com            Cleveland, OH 44114-2378
                                          Telephone:  (216) 363-4565
                                          Facsimile:  (216) 363-4588
*Co-Counsel for Defendant Home Savings*    Email: jgilman@beneschlaw.com
*& Loan Company of Youngstown*                  kconiglio@beneschlaw.com

                                          *Attorneys for Defendants MERSCORP, Inc. and*
                                          *Mortgage Electronic Registration Systems, Inc.*

*/s/ Joseph F. Yenouskas*

Thomas M. Hefferon (admitted *pro hac vice*)
Joseph F. Yenouskas (admitted *pro hac vice*)
GOODWIN PROCTER LLP
901 New York Ave., NW, Suite 900
Washington DC  20001
Telephone: (202) 346-4000
Facsimile: (202) 346-4444
Email: thefferon@goodwinprocter.com
        jyenouskas@goodwinprocter.com

Barbara Friedman Yaksic (0014338)
James S. Wertheim (0029464)
Candice L. Musiek (0085924)
MCGLINCHEY STAFFORD PLLC
25550 Chagrin Boulevard, Suite 406
Cleveland, OH  44122-4640
Telephone:  (216) 378-9905
Facsimile:  (216) 378-9910
Email:  byaksic@mcglinchey.com
        jwertheim@mcglinchey.com
        cmusiek@mcglinchey.com

*Attorneys for Defendants Bank of America,*
*CCO Mortgage Corporation, and EverBank*
*(mistakenly named as EverHome Mortgage*
*Company in the original Complaint)*

*/s/ P. Russell Perdew*

Thomas J. Cunningham (*pro hac vice*)
P. Russell Perdew (*pro hac vice*)
LOCKE LORD LLP
111 South Wacker Drive
Chicago, Illinois 60606
Telephone:  (312) 443-1712
Facsimile:  (312) 896-6712
Email:  rperdew@lockelord.com

David A. Wallace (0031356)
CARPENTER, LIPPS & LELAND LLP
280 Plaza, Suite 1300
280 North High Street
Columbus, Ohio 43215
Telephone:  (614) 365-4100
Facsimile:  (614) 365-9145
Email:  Wallace@carpenterlipps.com

*Attorneys for Defendant GMAC Mortgage,*
*LLC (f/k/a GMAC Mortgage Corporation and*
*improperly named herein as GMAC*
*Residential Funding Corporation)*

*/s/ Scott A. King*

Scott A. King (0037582)
Terry W. Posey, Jr. (0078292)
THOMPSON HINE, LLP
Austin Landing I
10500 Innovation Drive, Suite 400
Dayton, Ohio  45342-4934
Telephone:  (937) 443-6560
Facsimile:  (937) 443-6635
Email:  Scott.King@ThompsonHine.com
        Terry.Posey@ThompsonHine.com

*Attorneys for Defendant Wells Fargo Bank, N.A.*

*/s/ Todd Kartchner*

Todd Kartchner (*pro hac vice*)
FENNEMORE CRAIG P.C.
3003 North Central Avenue, Suite 2600
Phoenix, AZ  85012
Telephone:  (602) 916-5000
Facsimile:  (602) 916-5999
Email:  tkartchner@fclaw.com

*Attorneys for United Guaranty Corporation*

/s/ William D. Kloss, Jr.
William D. Kloss, Jr.  (0040854)
VORYS, SATER, SEYMOUR AND PEASE LLP
52 East Gay Street
P.O. Box 1008
Columbus, Ohio  43216-1008
Telephone:  (614) 464-6360
Facsimile:  (614) 719-4807
Email:  wdklossjr@vorys.com

Marcel C. Duhamel  (0062171)
VORYS, SATER, SEYMOUR AND PEASE LLP
2100 One Cleveland Center
1375 East Ninth Street
Cleveland, Ohio  44114-1724
Telephone:  (216) 479-6100
Facsimile:  (216) 479-6060
Email:  mcduhamel@vorys.com

*Attorneys for Defendant, Corinthian Mortgage Corporation*

/s/ Thomas V. Panoff
Lucia Nale (admitted *pro hac vice*)
Thomas V. Panoff (admitted *pro hac vice*)
MAYER BROWN LLP
71 South Wacker Drive
Chicago, Illinois 60606
Telephone:  (312) 701-8821
Facsimile:  (312) 706-8297
Email: lnale@mayerbrown.com
          tpanoff@mayerbrown.com

Amanda Martinsek (0058567)
Marquettes D. Robinson (0074268)
THACKER MARTINSEK LPA
2330 One Cleveland Center
1375 East 9th Street
Cleveland, Ohio, 44114
Telephone:  (216) 456-3840
Facsimile:  (216) 456-3852
Email: amartinsek@tmlpa.com
          mrobinson@tmlpa.com

*Attorneys for CitiMortgage, Inc., Citigroup Inc. and Citibank, N.A.*

/s/ Kip T. Bollin
Kip T. Bollin (0065275)
James F. DeFeo (0079222)
THOMPSON HINE LLP
3900 Key Center
127 Public Square
Cleveland, OH  44114-1291
Telephone: (216) 566-5500
Facsimile:  (216) 566-5800
Email: kip.bollin@thompsonhine.com
          jim.defeo@thompsonhine.com

*Attorneys for PMI Mortgage Services Co.*

/s/ Joseph A. Castrodale
Joseph A. Castrodale (0018494)
Richik Sarkar (0069993)
Matthew T. Wholey (0086550)
ULMER & BERNE LLP
Skylight Office Tower
1660 W. 2nd Street, Ste. 1100
Cleveland, Ohio 44113-1448
Telephone: (216) 583-7000
Facsimile: (216) 583-7353
Email:    jcastrodale@ulmer.com
          rsarkar@ulmer.com
          mwholey@ulmer.com

*Attorneys for Defendant HSBC Bank U.S.A., N.A.*

/s/ Michael H. Carpenter
Michael H. Carpenter (0015733)
Katheryn M. Lloyd (0075610)
CARPENTER LIPPS & LELAND LLP
280 Plaza, Suite 1300
280 North High Street
Columbus, Ohio  43215
Telephone:  (614) 365-4100
Facsimile:  (614) 365-9145
Email:  carpenter@carpenterlipps.com
           lloyd@carpenterlipps.com

*Attorneys for Defendant Nationwide
Advantage Mortgage Company*

/s/ Barbara Friedman Yaksic
Barbara Friedman Yaksic (0014338)
James S. Wertheim (0029464)
Candice L. Musiek (0085924)
MCGLINCHEY STAFFORD PLLC
25550 Chagrin Boulevard, Suite 406
Cleveland, Ohio 44122-4640
Telephone: (216) 378-9905
Facsimile:  (216) 378-9910
E-mail: byaksic@mcglinchey.com
           jwertheim@mcglinchey.com
           cmusiek@mcglinchey.com

*Counsel for CoreLogic Real Estate
Solutions, LLC and SunTrust Mortgage,
Inc. and co-counsel for Defendants Bank of
America Corporation, CCO Mortgage
Corporation, and Everhome Mortgage
Company*

s/ Anthony J. Coyne
Anthony J. Coyne (0039605)
Michael P. Quinlan (0066718)
MANSOUR, GAVIN, GERLACK & MANOS
CO., LPA
55 Public Square, Suite 2150
Cleveland, OH  44113-1994
Telephone: (216) 523-1500
Facsimile: (216) 523-1705
Email:  acoyne@mggmlpa.com
           mquinlan@mggmlpa.com

*Attorneys for Defendant MGIC Investor Services
Corporation*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 25, 2012, a copy of the foregoing *Memorandum of Law in Support of Defendants' Joint Motion to Dismiss Plaintiff's Amended Complaint* was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.  Additionally, notice of this filing was sent by regular mail to the parties listed below:

> Stanley D. Bernstein
> Christian Siebott
> Sara Goodman
> Bernstein Liebhard LLP
> 10 East 40th Street
> New York, NY 10016

> /s/ Jeremy Gilman
> *Attorneys for Defendants MERSCORP, Inc. and*
> *Mortgage Electronic Registration Systems, Inc.*

34