**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| STATE OF OHIO, *ex rel.* | ) | Case No. 1:11-cv-02474 |
| DAVID P. JOYCE | ) | |
| PROSECUTING ATTORNEY OF | ) | Judge James S. Gwin |
| GEAUGA COUNTY, OHIO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| MERSCORP, INC., *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**PLAINTIFF'S MEMORANDUM OF LAW**
**IN OPPOSITION TO CERTAIN DEFENDANTS' JOINT MOTION**
**TO DISMISS THE AMENDED COMPLAINT**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .................................................................................................... iii

I.    INTRODUCTION ..................................................................................................... 1

    A.    SUMMARY OF THE ARGUMENT AND STATEMENT OF THE ISSUES...... 1

        1.    Whether Plaintiff Has Standing and the Authority to Bring this Action .... 1

        2.    Whether Ohio Recording Statutes Are Mandatory .................................... 1

        3.    Whether the Amended Complaint Adequately States a Claim for Unjust Enrichment ............................................................................................... 2

        4.    Whether the Amended Complaint Adequately States a Claim for Civil Conspiracy ................................................................................................ 2

    B.    PROCEDURAL HISTORY.................................................................................. 2

    C.    STATEMENT OF FACTS ................................................................................... 3

        1.    The Rise in Demand for Mortgage-Backed Securities .............................. 3

        2.    Defendants' Failure to Record Mortgage Assignments............................. 4

II.    ARGUMENT ............................................................................................................ 4

    A.    LEGAL STANDARD.......................................................................................... 4

    B.    PLAINTIFF HAS STANDING TO BRING THIS ACTION ............................... 5

        1.    Plaintiff Has the Authority to Bring this Action ........................................ 6

    C.    OHIO'S RECORDING STATUTES ARE MANDATORY................................. 8

        1.    Ohio's Recording Statutes are Mandatory Pursuant to Ohio's Principles of Statutory Construction.......................................................... 8

        2.    Ohio's Recording Statutes are Mandatory on their Face ........................... 8

        3.    Ohio Courts Have Held that Ohio Recording Statutes are Mandatory..... 10

        4.    The Ohio Legislative Intent Behind Ohio's Recording Statutes Supports Mandatory Recording ............................................................... 12

D.    PLAINTIFF HAS ADEQUATELY PLED THAT DEFENDANTS
      FAILED TO RECORD MORTGAGE ASSIGNMENTS .................................... 15

E.    UNJUST ENRICHMENT IS ADEQUATELY PLED........................................ 16

F.    CIVIL CONSPIRACY IS ADEQUATELY PLED.............................................. 18

III.  CONCLUSION............................................................................................................. 20

## TABLE OF AUTHORITIES

**CASES**

*Adam v. Auditor of State of Ohio*,
2002 WL 31947784 (N.D. Ohio Oct. 23, 2002) ....................................................................5

*Ashcroft v. Iqbal*,
129 S. Ct. 1937 (2009) .........................................................................................................5

*Bank of New York v. Dobbs*,
2009 WL 2894601 (Ohio Ct. App. Sept. 8, 2009) ...............................................................16

*Bates v.MERS, Inc.*,
2011 WL 1304486 (D. Nev. Mar. 30, 2011) ........................................................................14

*Bd. of Cnty. Comm'rs of Allen Cnty. v. Andrews*,
363 N.E.2d 746 (Ohio Ct. App. 1976) .................................................................................6

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .............................................................................................................5

*In re Caddarette*,
362 B.R. 829 (Bankr. N.D. Ohio 2006) ............................................................................8, 12

*Christie v. GMS Mgmt. Co, Inc.*,
726 N.E.2d 497 (Ohio 2000) ..............................................................................................14

*City of Lakewood v. Papadelis*,
511 N.E.2d 1138 (Ohio 1987) ..............................................................................................9

*Coe v. Erb*,
59 Ohio St. 259, 52 N.E. 640 (Ohio 1898) .....................................................................12, 13

*Directv, Inc. v. Treesh*,
487 F.3d 471 (6th Cir. 2007) ...............................................................................................5

*Dow v. Union Nat'l Bank*,
100 N.E. 328 (Ohio 1912) ..............................................................................................11, 12

*Gosden v. Louis*,
687 N.E.2d 481 (Ohio Ct. App. 1996) ...............................................................................19

*Great American Life Ins. Co. v. Thompson*,
2005 WL 1865389 (S.D. Ohio Aug. 4, 2005) .....................................................................19

*Haley v. Currin*,
8 Ohio N.P. 337 (Ohio Super. Ct. 1901) ...........................................................................12

*Javitch v. Capwill*,
   2011 WL 1002744 (N.D. Ohio Mar. 15, 2011) ...........................................................18, 19

*Johnson v. Microsoft Corp.*,
   834 N.E. 2d 791 (Ohio 2005)............................................................................................17

*Kardules v. City of Columbus*,
   95 F.3d 1335 (6th Cir. 1996) ......................................................................................... 5-6

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992)............................................................................................................6

*Matrixx Initiatives, Inc. v. Siracusano*,
   131 S. Ct. 1309 (2011) .......................................................................................................5

*Meyer v. Chieffo*,
   950 N.E.2d 1027 (Ohio Ct. App. 2011)............................................................................17

*Michigan First Credit Union v. Cumis Ins. Soc'y, Inc.*,
   641 F.3d 240 (6th Cir. 2011) ..............................................................................................8

*Mid-Am. Nat'l Bank & Trust Co. v. Comte/Rogers*,
   1996 WL 549249 (Ohio Ct. App. Sept. 30, 1996)............................................................11

*Noland v. Wells Fargo Bank, N.A. ("In re Williams")*,
   395 B.R. 33 (Bankr. S.D. Ohio 2008)...........................................................10, 11, 12, 13

*In re Ochmanek*,
   266 B.R. 114 (Bankr. N.D. Ohio 2000) ...................................................................... 10-11

*Ohio Dep't of Liquor Control v. Sons of Italy Lodge 0917*,
   605 N.E.2d 368 (Ohio 1992)...............................................................................................9

*Ohio ex rel. Shetzer v. Harshaw Chem. Co.*,
   1975 WL 174545 (Ohio Ct. App. Dec. 18, 1975)...........................................................7, 8

*Pappas v. Ippolito*,
   895 N.E.2d 610 (Ohio App. Ct. 2008)..............................................................................20

*Peltier v. Ohio Radio, Inc.*,
   25 Ohio App. 2d 84 (Ohio 1970) ......................................................................................12

*Pinney v. Merchants' Nat. Bank of Defiance*,
   72 N.E. 884 (Ohio 1904)...................................................................................................12

*Randleman v. Fid. Nat. Title Ins. Co.*,
   465 F. Supp. 2d 812 (N.D. Ohio 2006)..............................................................................17

*Sears v. Weimer*,
  55 N.E.2d 413 (Ohio 1944)......................................................................................................9

*Standard Oil Co. v. Moon*,
  170 N.E. 368 (Ohio Ct. App. 1930)........................................................................................13

*State ex rel. Jones v. Hamilton Cnty. Bd. of Comm'rs.*,
  705 N.E.2d 1247 (Ohio Ct. App. 1997)....................................................................................6

*State ex rel. Kolkowski v. Lake Cty. Bd. of Comm'rs*,
  2009 WL 1514993 (Ohio Ct. App. May 29, 2009)....................................................................6

*State of Ohio v. Kreischer*,
  848 N.E.2d 496 (Ohio 2006)..........................................................................................8-9, 12

*State v. Hairston*,
  804 N.E.2d 471 (Ohio 2004)....................................................................................................8

*Stewart v. Hopkins*,
  30 Ohio St. 502 (Ohio 1876)..................................................................................................12

*Symmes Twp. Bd. of Trs. v. Smyth*,
  721 N.E.2d 1057 (Ohio 2000)..................................................................................................8

*Universal Coach, Inc. v. New York City Transit Auth., Inc.*,
  629 N.E.2d 28 (Ohio Ct. App. 1993)......................................................................................20

*Wead v. Lutz*,
  831 N.E.2d 482 (Ohio Ct. App. 2005)....................................................................................11

*In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*,
  684 F. Supp. 2d 942 (N.D. Ohio. 2009)............................................................................16, 17

*Williams v. Aetna Fin. Co.*,
  700 N.E. 2d 859 (Ohio 1998)..................................................................................................19

**STATUTES**

Fed. R. Civ. P. 12(b)(6)..........................................................................................................2, 5

Fed. R. Civ. P. 15(a) ................................................................................................................20

Nev. Rev. Stat. § 106.210 ..................................................................................................14, 15

Ohio Rev. Code § 309.12................................................................................................1, 6, 7, 8

Ohio Rev. Code § 309.13............................................................................................................6

Ohio Rev. Code § 317.08........................................................................................................1, 9

Ohio Rev. Code § 317.32 ................................................................................................. 1, 3, 6, 7

Ohio Rev. Code § 325.27 ....................................................................................................... 6, 7

Ohio Rev. Code § 5301.01 ........................................................................................................... 9

Ohio Rev. Code § 5301.23 ........................................................................................................... 9

Ohio Rev. Code § 5301.25 .................................................................................................. *passim*

Ohio Rev. Code § 5301.255(A) .................................................................................................. 10

Ohio Rev. Code § 5301.31 ......................................................................................................... 11

Ohio Rev. Code § 5301.32 .................................................................................................. *passim*

Ohio Rev. Code § 5301.34 ........................................................................................................... 9

Ohio Rev. Code § 5321.16(C) ................................................................................................... 14

Ohio Rule of Civil Procedure 8(A) ........................................................................................... 20

Ohio Rule of Civil Procedure 9 ................................................................................................. 20

Ohio Rule of Civil Procedure 9(b) ............................................................................................ 20

## I.      INTRODUCTION

Plaintiff State of Ohio, *ex rel.* David P. Joyce, Prosecuting Attorney for the County of Geauga respectfully submits this memorandum of law in opposition to certain Defendants' Joint Motion to Dismiss Plaintiff's Amended Complaint.[1]

### A.      SUMMARY OF THE ARGUMENT AND STATEMENT OF THE ISSUES

### 1.      Whether Plaintiff Has Standing and the Authority to Bring this Action

Ohio law both creates a cause of action and empowers County Prosecuting Attorneys to bring actions to recover money that is illegally withheld from the county.  Ohio Rev. Code ("O.R.C.") § 309.12.  As alleged in the Amended Complaint, Ohio law also provides that land instruments – such as mortgages and mortgage assignments – shall be recorded in the county recording office where the land is situated.  O.R.C. §§ 5301.25, 5301.32.  And Ohio law also provides that for each land instrument recorded, the county recorder must collect a fee.  O.R.C. §§ 317.08, 317.32.  Plaintiff maintains that Defendants systematically failed to record mortgage assignments in order to avoid paying the attendant recording fees to the county recorder's office.  Accordingly, the Geauga County Prosecuting Attorneys has standing to bring this action.

### 2.      Whether Ohio Recording Statutes Are Mandatory

Under Ohio's plain meaning approach to statutory construction, Ohio recording statutes §§ 5301.25 and 5301.32 are mandatory because the statutory languages expressly provides that mortgages and mortgage assignments "shall" be recorded in, and recording fees paid to, the proper county recording office.  This mandatory reading is entirely consistent with Ohio jurisprudence and legislative objectives to protect the integrity of Ohio counties' public recording system.

---

[1] References to the Joint Motion to Dismiss are cited herein as "Defs' Mem. at __."

### 3. Whether the Amended Complaint Adequately States a Claim for Unjust Enrichment

Plaintiff states a claim for unjust enrichment in sufficiently pleading that Defendants knowingly retained a direct economic benefit conferred by Plaintiff when they received priority of their liens from county public land records, while avoiding costs inherent in this benefit by purposely failing to record all mortgage assignment and pay recording fees to Plaintiff's detriment.

### 4. Whether the Amended Complaint Adequately States a Claim for Civil Conspiracy

Plaintiff states a claim for civil conspiracy by alleging that Defendants conspired, often as MERS shareholders, investors and/or members, to create and use MERS as a tool by which they would circumvent Ohio's mandatory recording statutes, to avoid recording and paying county recording fees for each mortgage assignment. By failing to disclose MERS's role in Defendants' commission of these unlawful acts, Plaintiff was deprived of illegally withheld county recording fees.

### B. PROCEDURAL HISTORY

On October 13, 2011, Plaintiff filed a putative class action complaint (the "Original Complaint") in the Geauga County Court of Common Pleas against nineteen Defendants (plus an unknown number of Doe Corporation Defendants), asserting violations of Ohio law for failure to comply with Ohio's mandatory recording statutes and seeking injunctive and declaratory relief, and asserting a claim for unjust enrichment. ECF No. 1-1. On November 14, 2011, Defendants jointly removed the action to this Court. ECF No. 1. On December 12, 2011, seventeen of the Defendants joined in a motion to dismiss the Original Complaint for failure to state a claim under Rule 12(b)(6). ECF No. 64. On January 17, 2012, Plaintiff filed the Amended Complaint, correcting misnomers of certain named Defendants and identifying thirteen previously-unknown

Doe Corporation Defendants.  ECF No. 112. [2]  The Amended Complaint, like the original, seeks

declaratory and injunctive relief and alleges that, by making mortgage assignments and yet

purposely failing to record them in county recording offices, all defendants violated Ohio law

and were unjustly enriched.  *Id*.  In addition, the Amended Complaint asserts a claim for civil

conspiracy against all Defendants.  On January 25, 2012, twenty named Defendants filed the

Joint Motion to Dismiss the Amended Complaint.  ECF Nos. 117, 118.

###     C.     STATEMENT OF FACTS

For nearly 200 years, Ohio's recording statutes have ensured that accurate chains of title

and reliable public land records are maintained.  ¶ 46 at 14.   Accurate public land records are

vital to settling land disputes and enabling prospective purchasers of land to accurately

investigate land ownership interests.  *Id*.  Because of the importance of maintaining accurate land

records, Ohio law mandates that certain instruments relating to the encumbrance of land be

recorded in the county recorder's office in the county in which the land is located.  For example,

O.R.C. §§ 5301.25 and 5301.32 provide that all mortgages and mortgage assignments must be

recorded. ¶ 43 at 13.  County recorders are required by statute to charge and collect fees for each

land instrument recorded.  ¶¶ 2, 44 at 13 (*citing* O.R.C. § 317.32).

###     1.     The Rise in Demand for Mortgage-Backed Securities

Prior to the 1990's, most mortgages were originated by depository institutions, such as

commercial banks, which made mortgage loans to homeowners and held them until they were

repaid.  By the 1990s, however, the housing market had shifted to capital markets-based funding

and mortgage-backed securitizations became increasingly popular investments.  Mortgage

originators began to sell more of their mortgage loans to large financial institutions that pooled

---

[2] References to the Amended Complaint (ECF No. 112) are cited as "¶ __".

bundles of mortgages into trusts to be issued to investors as mortgage-backed securities ("MBS").  ¶ 48 at 14.

Defendants profited during the housing boom by purchasing mortgages from loan originators and securitizing the mortgage loans for sale to investors.  ¶ 54 at 17.  Through securitization, Defendants generated lucrative fees for themselves, while at the same time moving the mortgage loans – and their inherent risk of default – off their books.  *Id*.

### 2. Defendants' Failure to Record Mortgage Assignments

The securitization process involves multiple sales of mortgage loans – from loan originator to sponsor, from sponsor to depositor, from depositor to trustee – which are governed by contracts between the securitizing parties.  ¶ 51 at 15-17.  These contracts explicitly state that the mortgage loans – including the mortgage and the note – are sold, transferred, assigned, or otherwise conveyed from one party to the next.  ¶ 49 at 14.  Rather than endure the expense and inconvenience of recording each of these assignments in the county recorder's office, Defendants record only one instrument (the original mortgage or an assignment).  ¶ 58 at 18.  By recording this initial instrument, Defendants take advantage of the benefit of priority conferred by Ohio county recorders as set forth in Ohio's recording statutes.  ¶ 71 at 49.  Recording this initial instrument also allows Defendants to represent to MBS investors that the underlying mortgage loans are first lien mortgages, which make the MBS appear safer and more attractive to investors.  ¶¶ 58 at 18.  For each mortgage loan relating to Ohio real property that was eventually sold to an MBS trust, Defendants failed to record multiple assignments and failed to pay the attendant recording fees.  ¶ 53 at 17.

## II. ARGUMENT

### A. LEGAL STANDARD

In ruling on a motion to dismiss under Rule 12(b)(6), "the Court must construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of plaintiff, but the Court need not accept as true legal conclusions or unwarranted factual inferences." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007) (citation omitted).  "A court properly grants a motion to dismiss under Rule 12(b)(6) only if it appears that the plaintiff can prove no set of facts that would entitle him to relief." *Adam v. Auditor of State of Ohio*, 2002 WL 31947784, at *2 (N.D. Ohio Oct. 23, 2002).

To withstand a motion to dismiss under Rule 12(b)(6), plaintiffs "need only allege 'enough facts to state a claim to relief that is plausible on its face.'" *Matrixx Initiatives, Inc. v. Siracusano*, 131 S. Ct. 1309, 1322 n.12 (2011) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  The question is whether "allegations suffice to 'raise a reasonable expectation that discovery will reveal evidence'" and thereby "'allo[w] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* at 1323 (*quoting Twombly*, 550 U.S. at 556 and *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009)).  A complaint may survive a motion to dismiss for failure to state a claim, however, even if it is "improbable" that a plaintiff would be able to prove those facts and even if the possibility of recovery is extremely "remote and unlikely." *Twombly*, 550 U.S. at 556 (citation omitted).

### B.    PLAINTIFF HAS STANDING TO BRING THIS ACTION

The Geauga County Prosecuting Attorney has standing to bring this action.  To have standing:  (1) a plaintiff must have suffered an "injury in fact" – an invasion of a legally-protected interest which is (a) concrete and particularized, and (b) "actual or imminent, not conjectural or hypothetical;" (2) there must be a causal connection between the injury and the conduct complained of – the injury has to be "fairly . . . trace[able] to the challenged action of the defendant;" and (3) it must be "likely," as opposed to merely "speculative," that the injury

will be "redressed by a favorable decision."  *Kardules v. City of Columbus*, 95 F.3d 1335, 1346

(6th Cir. 1996) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)) (internal

citations omitted).

Here, Geauga County has suffered actual harm in that its land records have been clouded

and the county has been deprived of recording fees for thousands of mortgage assignments that

should have been recorded pursuant to O.R.C. §§ 5301.25, 5301.32.  The harm suffered by

Geauga County is directly traceable to Defendants' failure to record as mandated by Ohio law

and will be redressed by a favorable decision ordering Defendants to record all past and future

mortgage assignments, as such relief will ensure that the county's land records are accurate and

reliable.[3]

## 1.      Plaintiff Has the Authority to Bring this Action

In Ohio, the County Prosecuting Attorneys have authority to bring actions upon being

satisfied "that money is due the county."  O.R.C. § 309.12.  Illegally withholding public funds

from the county treasurer is an "express trigger[] for a civil action under R.C. 309.12."  *State ex*

*rel. Kolkowski v. Lake Cty. Bd. of Comm'rs*, 2009 WL 1514993, at *2 (Ohio Ct. App. May 29,

2009); *see also Bd. of Cnty. Comm'rs of Allen Cnty. v. Andrews*, 363 N.E.2d 746 (Ohio Ct. App.

1976) (finding that O.R.C. § 309.12 "grant[s] the prosecutor a cause of action").  Further, O.R.C.

§ 309.12 authorizes Plaintiff to file a civil action seeking equitable relief in the nature of an

injunction.  *See State ex rel. Jones v. Hamilton Cnty. Bd. of Comm'rs.*, 705 N.E.2d 1247, 1250

(Ohio Ct. App. 1997) (taxpayer actions pursuant to O.R.C. §§ 309.12, 309.13 governed by

equitable principles that apply to injunction actions generally).

---

[3] Pursuant to O.R.C. § 317.32, Ohio county recorders are required to collect fees for recording documents.
Had Defendants complied with Ohio's recording statutes, the attendant fees would have been allocated
for "sole use of the treasury of the county."  *See* O.R.C. § 325.27.

Defendants' challenges to Plaintiff's standing are without merit. First, Defendants' assertion that Ohio recording statutes themselves do not create a cause of action is beside the point. Defs' Mem. at 19-20. As set forth above, Plaintiff's causes of action arise from O.R.C. § 309.12, not Ohio recording statutes.

Second, Defendants' characterization of O.R.C. § 309.12's "money due the county" requirement is not supported by the law. Defs' Mem. at 24. Defendants rely on *Ohio ex rel. Shetzer v. Harshaw Chem. Co.*, 1975 WL 174545 at *3 (Ohio Ct. App. Dec. 18, 1975) for the proposition that Plaintiff must allege a "fixed and settled obligation that a certain sum of money is actually due the County." Defs' Mem. at 24. However *Shetzer* involved an action brought by a taxpayer, after unsuccessfully petitioning the county prosecuting attorney to bring the action, against a chemical company for damage to a bridge caused by the defendant's chemicals. *Id.* at *1. The taxpayer claimed, pursuant to O.R.C. § 309.12, that the defendant was liable for the amount of money expended by the county to repair and remove the old bridge, and to build a replacement bridge. *Id.* The appellate court affirmed the trial court's ruling that a cause of action under O.R.C. § 309.12 did not lie because "the potential of a money judgment in a tort action based on negligence does not constitute money due the county." *Id.* at *3.

Here, there is no dispute that Defendants have a statutory obligation to pay a fee to the Geauga County Recorder's Office for each mortgage assignment recorded. *See* O.R.C. §§ 317.32, 325.27. Plaintiff's recovery does not depend upon "the potential money judgment in a tort action based on negligence." Rather, the only contingency standing between Plaintiff and money that is due the county is an injunction compelling Defendants to comply with their statutory duties and record each missing and future mortgage assignment. Thus, the relief sought

7

in this action is "more tangible and definite" than the prospective tort judgment contemplated in *Shetzer* and Plaintiff is authorized to bring this action.  O.R.C. § 309.12.

Similarly, Defendants repeatedly mischaracterize Plaintiff's allegations as seeking recording fees for mortgage assignments that were not recorded.  Defs' Mem. at 1; 18-19.  However, this is clearly not what is alleged.  Rather than seeking fees for assignments that were not recorded, Plaintiff is seeking an injunction compelling Defendants to record all future and past mortgage assignments in compliance with Ohio's recording statutes.

### C.  OHIO'S RECORDING STATUTES ARE MANDATORY

### 1.  Ohio's Recording Statutes are Mandatory Pursuant to Ohio's Principles of Statutory Construction

A federal court deciding a diversity case under state law must apply the substantive law of the forum state.  *Michigan First Credit Union v. Cumis Ins. Soc'y, Inc*., 641 F.3d 240, 251-52 (6th Cir. 2011).  When interpreting a statute, Ohio courts "interpret the statutory phrase according to the common and technical usage of the words therein" and, *if necessary*, "determine the intent of the legislature by considering the object sought to be attained, laws upon the same or similar subjects, and the consequences of the interpretations proposed by the parties." *Symmes Twp. Bd. of Trs. v. Smyth*, 721 N.E.2d 1057, 1062 (Ohio 2000) (emphasis added).  As shown below, applying these principles of statutory construction to O.R.C. §§ 5301.25 and 5301.32, it is clear that the statutes are mandatory.

### 2.  Ohio's Recording Statutes are Mandatory on their Face

When construing a statute, Ohio law adopts a plain meaning approach.  *In re Caddarette* 362 B.R. 829 (Bankr. N.D. Ohio 2006) (citing *State v. Hairston*, 804 N.E.2d 471 (Ohio 2004)).  Thus, "where the language of a statute is plain and unambiguous and conveys a clear and definite meaning there is no occasion for resorting to rules of statutory interpretation." *State of Ohio v.*

*Kreischer*, 848 N.E.2d 496 (Ohio 2006).  "An unambiguous statute is to be applied, not

interpreted."  *Sears v. Weimer*, 55 N.E.2d 413, 415 (Ohio 1944) (citation omitted).

The plain and unambiguous language of §§ 5301.25 and 5301.32 make it clear that the

recording of mortgages and mortgage assignments is mandatory under Ohio law.  Ohio's

recording statutes provide in relevant part:

> All deeds, land contracts referred to in division (A)(2)(b) of section 317.08 of the
> Revised Code, and instruments of writing properly executed for the conveyance
> or encumbrance of lands, tenements, or hereditaments, other than as provided in
> division (C) of this section and section 5301.23 of the Revised Code, ***shall be
> recorded*** in the office of the county recorder of the county in which the premises
> are situated…(emphasis added).

O.R.C. § 5301.25.

> A mortgage may be assigned or partially released by a separate instrument of
> assignment or partial release, acknowledged as provided by section 5301.01 of the
> Revised Code.  The separate instrument of assignment or partial release ***shall be
> recorded*** in the book provided by section 5301.34 of the Revised Code for the
> recording of satisfactions of mortgages…(emphasis added).

O.R.C. § 5301.32.

Ohio courts have consistently held that, by employing the word "shall," the language of a

statute plainly and unambiguously directs that the statute is mandatory.  *Ohio Dep't of Liquor

Control v. Sons of Italy Lodge 0917*, 605 N.E.2d 368, 370 (Ohio 1992) ("It is axiomatic that

when it is used in a statute, the word 'shall' denotes that compliance with the commands of that

statute is *mandatory*.") (emphasis in original); *see also City of Lakewood v. Papadelis*, 511

N.E.2d 1138, 1140 (Ohio 1987) ("The word 'shall' has been consistently interpreted to make

mandatory the provision in which it is contained absent a clear and unequivocal intent that it

receive a construction other than its ordinary meaning.") (citation omitted).

Accordingly, as both O.R.C. §§ 5301.25 and 5301.32 explicitly state that mortgages and

mortgage assignments "shall be recorded," the statutes are mandatory on their face.  Indeed,

when the Ohio legislature desires to make recording provisions permissive, it has done so explicitly.  *See* O.R.C. § 5301.255(A) ("A memorandum of trust that satisfies both of the following *may be presented for recordation* in the office of the county recorder of any county in which real property that is subject to the trust is located. . . .") (emphasis added).

In the absence of a clear and unequivocal intent that "shall" was not intended to make recording mandatory in this context, Defendants attempt to avoid the statutory recording requirements by arguing that "the phrase 'shall be recorded' directs *where* the assignment shall be recorded.  Defs' Mem. at 9.  This assertion is unpersuasive at best.  O.R.C. § 5301.32 plainly provides that mortgage assignments shall be recorded *and* directs where recording shall take place.

Further, Defendants' entire argument relies on the premise that what the Ohio recording statutes *mean to say* is that, *if* a recording is made, it must be made in the prescribed location.  However, that is not what each recording statute *actually* says.  Moreover, Defendants' argument is belied by the fact that the Ohio legislature has, in other statutes, done exactly what Defendants argue the legislature meant to do here, i.e., making recording optional.  *See* O.R.C. § 5301.255(A) ("A memorandum of trust that satisfies both of the following *may be presented for recordation in the office of the county recorder . . .*") (emphasis added).

### 3. Ohio Courts Have Held that Ohio Recording Statutes are Mandatory

Ohio courts have consistently read the plain language of Ohio's recording statutes to require the recording of mortgages and mortgage assignments.  *See Noland v. Wells Fargo Bank, N.A. ("In re Williams")*, 395 B.R. 33, 41 (Bankr. S.D. Ohio 2008) (recording statutes "require some form of filing assignments" with county recorder); *see also In re Ochmanek*, 266 B.R. 114, 120 (Bankr. N.D. Ohio 2000) ("O.R.C. § 5301.25 does not actually eliminate an entity's duty to record a conveyance or encumbrance of an interest in real property.  In fact, just the exact

opposite is true as O.R.C. § 5301.25 specifically provides that 'the conveyance or encumbrance of lands, tenements, or hereditaments . . . *shall* be recorded[.]'") (emphasis in original); *Wead v. Lutz*, 831 N.E.2d 482, 486 (Ohio Ct. App. 2005) (O.R.C. § 5301.25 "detail[s] the recording requirement"); *Mid-Am. Nat'l Bank & Trust Co. v. Comte/Rogers*, 1996 WL 549249, at *2 (Ohio Ct. App. Sept. 30, 1996) ("O.R.C § 5301.32 permits the partial release or assignment of a mortgage by a separate instrument but requires that the instrument be recorded.").

For example, in *Noland*, a case relied upon by Defendants, the court analyzed O.R.C. §§ 5301.25, 5301.31, and 5301.32 and concluded that "the Ohio statutes governing assignments of mortgages *require some form of filing of those assignments with county recorders' offices*, i.e. recording of those assignments." *Id*. at 41 (emphasis added). Further, the court added that its "conclusion that mortgage assignments are to be recorded in Ohio is supported by the decisions of the Ohio state courts." *Id*. Although the court ultimately held that the failure to record did not void the mortgage, the court's analysis addressed only the *consequence* of the failure to record in that case, not the *requirement* of recording *per se*. *Id*. at 42.

Defendants obfuscate this distinction throughout their brief, and the cases they rely on are inapposite as they all address not whether recording is mandatory, but rather the consequences of failing to record. For example, Defendants argue that there is "no stand-alone obligation to record mortgages or mortgage assignments," because "the sole consequence of an unrecorded document is that it is fraudulent as to subsequent bona fide purchasers." Defs' Mem. at 8 (*citing Dow v. Union Nat'l Bank*, 100 N.E. 328, 329 (Ohio 1912)). However, like *Noland*, *Dow* addressed the consequences of an unrecorded mortgage as between the parties to the mortgage contract and subsequent bona fide purchasers. *Id*. at 329. To the extent *Dow* addressed the

11

"stand-alone" requirement to record mortgages, the court found that recording was mandatory: "[o]ur recording act itself makes the requirement that deeds shall be recorded." *Id*. at 329.[4]

### 4. The Ohio Legislative Intent Behind Ohio's Recording Statutes Supports Mandatory Recording

When the plain meaning of a statute is clear, such as here, there is no need to resort to rules of statutory construction. *See Kreischner*, 848 N.E.2d at 498.  However, a review of the legislative purposes behind O.R.C. §§ 5301.25 and 5301.32 further illustrate that Ohio recording statutes are mandatory because such an interpretation is consistent with the legislative objective behind the statutes – to ensure that reliable public records of land title exist.  *See In re Caddarette*, 362 B.R. at 834 (citing *Peltier v. Ohio Radio, Inc.*, 25 Ohio App.2d 84, 88 (Ohio 1970) ("a statute should be interpreted to give a reasonable result consistent with legislative purpose and intent and not to defeat that intention or to render it a nullity.").

For example, in *Noland*, the court not only found the plain meaning of O.R.C. § 5301.32 to require the recording of assignments, but it also found this conclusion to be supported by Ohio state courts that had reviewed the legislative purpose behind the statute.  395 B.R. at 41. Specifically, the *Noland* court cited *Pinney v. Merchants' Nat. Bank of Defiance*, 72 N.E. 884, 887 (Ohio 1904), where the Supreme Court interpreted the predecessor to § 5301.32 and recounted the legislative purpose behind the recording requirement:

> What is the scope and purposes of this legislation?  We think it is in furtherance of the purpose expressed by this court in *Coe v. Erb*, 59 Ohio St. 259, 52 N.E. 640, where it said that the recording acts '*rest upon a recognition of the policy that there shall somewhere be found a record which will disclose the state of the title of all lands within the county*.  For conveyances, mortgages, leases, etc.,

---

[4] Defendants' remaining authority fares no better, as none of the cases relied upon by Defendants hold that Ohio's recording statutes are not mandatory, but rather all focus on the consequences of not recording.  *See e.g., Stewart v. Hopkins*, 30 Ohio St. 502, 526-27 (Ohio 1876) (issues involved whether mortgages were valid as to assignees of mortgages under the bankruptcy code even though not recorded); *Haley v. Currin*, 8 Ohio N.P. 337 (Ohio Super. Ct. 1901) (addressing the preference among the parties where assignment was not recorded).

resort is had to the office of the county recorder,' etc. . . . 'The business public, therefore, has a high interest in the maintenance of such a system as will enable every person, by the ordinary inquiry, that is an examination of the records, to ascertain the condition of titles.'

*Id.* (emphasis added); *see also Standard Oil Co. v. Moon*, 170 N.E. 368, 369 (Ohio Ct. App.

1930) (*quoting Coe*, 52 N.E. at 642).

Ignoring this long-held legislative objective, Defendants misrepresent the allegations in the Amended Complaint, falsely stating that Plaintiff contends the purpose of Ohio's recording statutes is "for the benefit of providing recording fees to the clerk." Defs' Mem. at 10, 11. Building upon this strawman, Defendants then contend that there is no legal support for Plaintiff's theory of the purpose underlying Ohio law.  *See* Defs' Mem. at 11, 12.  However, Plaintiff has *not* alleged, and the Amended Complaint *does not state*, that the purpose of Ohio's recording statutes is to provide county governments with recording fees.  To the contrary, the Amended Complaint clearly states that "Ohio recording laws ensure that county recorders' offices maintain accurate chains of title and reliable public records. . ." ¶ 46 at 14.

In addition to misrepresenting Plaintiff's allegations, as noted above, Defendants rely on cases that address the *consequences* of failing to record for the assertion that the *only* purpose of the statutes is "to protect innocent, subsequent bona fide purchasers of land." Defs' Mem. at 10-11.  However Defendants' cited-authority merely states what is already contained in the language of the statutes themselves as to the consequences of not recording – these cases do not establish that recording is not mandatory, that protecting subsequent bona fide purchasers is the *sole* purpose of Ohio's recording statutes, or that a finding that Ohio's recording statutes are mandatory would be counter to the legislature's objectives.

Further, Defendants' narrowly-defined purpose is actually encompassed by the primary objective of the statutes to maintain the integrity of the public land records.  Defendants' narrow

reading of the legislature's intent is unwarranted as the legislature can have more than one purpose supporting the enactment of a statute.  *See Christie v. GMS Mgmt. Co, Inc.*, 726 N.E.2d 497, 499 (Ohio 2000) (applying the Ohio rules of statutory construction and noting that the court's holding "is consistent with at least one of the legislative objectives underlying R.C. 5321.16(C)").  Here, a finding that §§ 5301.25 and 5301.32 require that all mortgages and mortgage assignments be recorded is entirely consistent with the Ohio legislature's objective to maintain the integrity of county land records, as well as protecting creditors' interests.

Lastly, *Bates v. MERS, Inc.*, 2011 WL 1304486, at *1, 3 (D. Nev. Mar. 30, 2011), a case cited by Defendants to show that Plaintiff's claims are "frivolous," is completely inapposite. Defs' Mem. at 12-13.  Unlike here, the court in *Bates* was not interpreting whether the relevant Nevada recording statute was mandatory, but rather, was determining whether the plaintiffs could assert claims in a *qui tam* action against the defendants for failure to record mortgage assignments in Nevada.  *Id*. at *2.  However, the Nevada recording statute at issue in *Bates* is a *permissive* statute and does not contain the same mandatory language as Ohio recording statutes. *Bates*, 2011 WL 1304486 at *3 (*citing* Nev. Rev. Stat. § 106.210) (any assignment of the beneficial interest under a deed of trust "*may*" be recorded) (emphasis added).  Not surprisingly, based on the permissive nature of Nev. Rev. Stat. § 106.210, the *Bates* court acknowledged that there is no requirement to record mortgage assignments in Nevada.  *Id*.  Therefore, the court held that the plaintiffs could not sustain a *qui tam* action based on Nevada's False Claims Act because the defendants did not have any obligation to pay recording fees.  *Id*.

Thus, the *Bates* holding has no bearing on Plaintiff's claims.  First, the *Bates* court did not interpret Ohio's recording statutes at issue in this case or the claims alleged by Plaintiff. Rather, the *Bates* court interpreted the plausibility of a *qui tam* action under Nevada's False

14

Claims Act.  Further, and more importantly, unlike Nev. Rev. Stat. § 106.210, Ohio's recording

statutes are mandatory on their face.  Accordingly, Defendants' reliance on *Bates* is misplaced.

### D.    PLAINTIFF HAS ADEQUATELY PLED THAT DEFENDANTS FAILED TO RECORD MORTGAGE ASSIGNMENTS

The Amended Complaint sets forth detailed examples illustrating how Defendants failed

record mortgage assignments in connection with the securitization of Ohio mortgage loans.

¶¶ 77-95 at 22-30.  To securitize mortgage loans, Defendants sold the mortgage loans (the

mortgage and the note) at least three times. ¶ 53 at 17.

Faced with these detailed allegations, Defendants incorrectly state that Plaintiff has not

alleged that Defendants assigned mortgages, but rather that Plaintiff has only alleged that

Defendants sold the loans attached to the mortgages.  *See* Defs' Mem. at 13-14.  This assertion is

completely false.  Plaintiff alleges that the assignment of mortgage loans is both a transfer of the

note and the mortgage, and does so no less than *eighteen* times in the Amended Complaint.[5]

Aside from ignoring Plaintiff's allegations, Defendants raise a purely factual issue as to

whether Defendants, through their mortgage assignments, transferred both the mortgages and the

promissory notes.  While Defendants cite to cases for the proposition that MERS *may* act as a

mortgagee and hold legal title to a mortgage for the benefit of lenders who possess the secured

note, this does not establish that Defendants did not transfer both the note and the mortgage.

Defs' Mem. at 14-18.

This is especially true here, since Plaintiff's allegations are based, in part, on the express

language contained in Defendants' own contracts regarding the securitization of Ohio loans

which indicate that Defendants transferred both the mortgage and the note.  ¶ 52 at 17 (citing a

---

[5] *See* ¶ 42 at 13; ¶ 49 at 14; ¶ 51 at 15; ¶ 78 at 22; ¶ 93 at 29; ¶ 2 at 30; ¶ 6 at 32; ¶ 10 at 33; ¶ 14 at 34; ¶ 19 at 35; ¶ 24 at 36; ¶ 32 at 39; ¶ 36 at 40; ¶ 43 at 24; ¶ 48 at 43; ¶ 58 at 45.

JPMorgan prospectus that states: "the Depositor will transfer to the trust all of its right, title and interest in and to each Mortgage Loan, the related mortgage note, mortgage, assignment of mortgage in recordable form to the Trustee…").[6]

Therefore, at the very least, the question of whether Defendants transferred both the note and the mortgage is a question of fact which cannot be properly decided on a motion to dismiss. *See In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.,* 684 F. Supp. 2d 942 (N.D. Ohio. 2009) (Gwin, J.) (question of fact not resolved on a motion to dismiss).

Thus, Defendants' reliance on the fact that MERS' system itself may have been approved by various courts is irrelevant to the allegations in the Amended Complaint and whether Defendants in fact transferred both the mortgages and the note as alleged.

### E.    UNJUST ENRICHMENT IS ADEQUATELY PLED

The Amended Complaint alleges that Defendants were unjustly enriched at Plaintiff's expense by taking advantage of the benefits conferred by the county recorder despite not having recorded all assignments.  ¶ 71 at 49.  By recording initial instruments in MERS's name, and failing to record subsequent assignments as required by Ohio's recording statutes, Defendants unjustly reaped two distinct benefits.  First, Defendants took advantage of the benefit of priority conferred as a result of recording the initial instrument as set forth in Ohio's recording statutes.[7]

---

[6] Further, as noted in *Bank of New York v. Dobbs*,  2009 WL 2894601 at *1, 4 (Ohio Ct. App. Sept. 8, 2009), §5.4 of the Restatement of Property (Mortgages) asserts that "it is nearly always sensible to keep the mortgage and the right of enforcement of the obligation it secures in the hands of the same party."  *Id.* at 4.  "Thus, the Restatement proposes that transfer of the obligation also transfers the mortgage and vice versa."  *Id.*  *Dobbs*, a case relied upon by Defendants, like the assignments alleged in the Amended Complaint, involved an assignment by MERS, acting as nominee for Countrywide HomeLoans, Inc. to the Bank of New York as Trustee for a trust issuing MBS.  *Id.* at *3.  Contrary to Defendants' representations here that MERS only transfers the note and not the mortgage, (*see* Defs' Mem. at 13), in *Dobbs*, MERS transferred *both* the mortgage and the promissory note.  *Id.* at *4.

[7] Defendants contend that by placing MERS in the land records as mortgagee, when the note is sold MERS remains the mortgagee of record and therefore retains the benefits of priority conferred by the

16

*Id.* Second, recording the initial instrument allowed Defendants to represent to MBS investors that the underlying mortgage loans were first lien mortgages, which made the MBS appear safer and more attractive to investors. *Id.*

In Ohio, a party is unjustly enriched when it "retains money or benefits which in justice and equity belong to another." *In re Whirlpool*, 684 F. Supp. 2d at 951. In order to recover under a theory of unjust enrichment, Plaintiff "must establish that (1) the plaintiff conferred a benefit on the defendant, (2) the defendant knew of the benefit, and (3) it would be unjust to permit the defendant to retain the benefit without payment." *Meyer v. Chieffo*, 950 N.E.2d 1027, 1039 (Ohio Ct. App. 2011) (citation omitted).

Plaintiff has adequately plead that: (1) Plaintiff has conferred the benefits of lien priority on Defendants; (2) Defendants knew of these benefits and touted them in MBS prospectuses; and (3) it would be unjust to allow Defendants to retain these benefits without having to record all past and future mortgage assignments. Additionally, to maintain a claim for unjust enrichment, Ohio law requires plaintiffs to allege an "economic transaction" between the parties. *Johnson v. Microsoft Corp.*, 834 N.E. 2d 791, 799 (Ohio 2005). Here, Plaintiff has pled that Defendants recorded their initial mortgage assignments in the county recorders' offices, and in exchange were given priority of their liens. Through this economic transaction, Defendants were able to place MERS on the land records, maintain priority of their liens, assign mortgages countless times, and avoid statutorily mandated recording fees. Each time Defendants assigned a mortgage without recording it, they did so to the detriment of the county. Therefore, there exists a clear "transactional nexus" between Plaintiff's loss and Defendants' improper gain. *Randleman v. Fid. Nat. Title Ins. Co.*, 465 F. Supp. 2d 812, 825 (N.D. Ohio 2006).

---

county recorder regardless of how many times the mortgage is subsequently assigned but not recorded. Defs' Mem. at 15.

Defendants assert the nonsensical argument that "Geauga County did not pass the statutes which created the land recording system," and therefore "use of the land recording system" was conferred by the Ohio legislature.  Defs' Mem. at 26.  Defendants again mischaracterize the allegations in the Amended Complaint.  Plaintiff alleges that it conferred two distinct benefits on Defendants, neither of which was "use of the recording statute."  The benefits conferred upon Defendants stem from the priority given in exchange for recording mortgages or initial assignments in MERS's name.  ¶ 71 at 49.  These benefits accrue upon completing the economic transaction of recording the documents with, and paying the statutory recording fee to, the county recorder, who then maintains the records that allow Defendants to assert priority of their liens.  Thus, it was Plaintiff Geauga County who conferred a benefit on Defendants.

Defendants further misconstrue the Amended Complaint by arguing that "Plaintiff does not allege that Defendants did not pay the recording fee upon recording the 'initial assignments.'"  Defs' Mem. at 26.  However, Plaintiff's unjust enrichment claims are not based on the failure to pay a fee for assignments that were recorded.  Rather, Defendants were unjustly enriched by using that one (and often only) recording to assert lien priority despite multiple subsequent assignments that were not (but should have been) recorded.

## F.    CIVIL CONSPIRACY IS ADEQUATELY PLED

In Ohio, the elements of a civil conspiracy claim are:  (1) a malicious combination; (2) of two or more persons; (3) causing injury to person or property; and (4) the existence of an unlawful act independent from the actual conspiracy.  *Javitch v. Capwill*, 2011 WL 1002744 at *3 (N.D. Ohio Mar. 15, 2011).  The malicious combination element does not require a showing of an express agreement between defendants, but only a common understanding or design to commit an unlawful act.  *Id*.  The malice involved is "that state of mind under which a person

does a wrongful act purposely, without a reasonable or lawful excuse, to the injury of another." *Id.* (internal quotations omitted).

Plaintiff alleges that Defendants, as MERS shareholders and/or Members, created and/or used MERS for the express purpose of violating the Ohio recording statutes, causing injury to Plaintiff in the form of unpaid recording fees.  ¶¶ 64, 69, 75.  Plaintiff alleges that MERS was created and/or used by Defendants to facilitate the rapid securitization of mortgages by circumventing the county recording requirements.  ¶¶ 3, 4, 6, 69.  Therefore, Plaintiff has sufficiently plead a malicious combination of two or more persons, causing injury to Plaintiff, and the existence of an unlawful act independent from the conspiracy – i.e. violations of Ohio's recording statutes.

Indeed, Defendants do not dispute that the Amended Complaint adequately alleges the first three elements of civil conspiracy, instead arguing that the claim should be dismissed because Plaintiff does not allege an underlying tort.  Defs' Mem. at 28.  The Ohio Supreme Court has held, however, that civil conspiracy requires only "an underlying *unlawful act*." *Williams v. Aetna Fin. Co.*, 700 N.E. 2d 859, 868 (Ohio 1998) (emphasis added); *see also Gosden v. Louis*, 687 N.E.2d 481 (Ohio Ct. App. 1996).  Here, Plaintiff alleges that Defendants conspired to commit the unlawful act of violating Ohio's recording statutes.  Defendants' argument that the underlying unlawful act must be a tort is without merit.[8]

Defendants also mischaracterize Ohio's pleading requirements for civil conspiracy by asserting that "conspiracy claims…must be plead with specificity."  Defs' Mem. at 29.[9]

---

[8] To the extent an underlying "tort" is required, which it is not, a claim for civil conspiracy only requires that the underlying tort *can be stated*, "not that it actually be pleaded along with the claim for civil conspiracy."  *Great American Life Ins. Co. v. Thompson*, 2005 WL 1865389, at *11 (S.D. Ohio Aug. 4, 2005).

[9] While each of the cases relied on by Defendants address conspiracy generally, none of those decisions discuss the pleading standard for *civil conspiracy*.

Defendants are wrong.   The Ohio Rules of Civil Procedure adopt the concept of 'notice pleading,' which requires only that notice be given as to the nature of the action and does not require any great degree of specificity.   *See Pappas v. Ippolito*, 895 N.E.2d 610, 623 (Ohio App. Ct. 2008) (citing Ohio Rule of Civil Procedure 8(A)).   Except for certain special matters set forth in Ohio Civ. R. 9, parties need only set out a short and plain statement showing that they are entitled to relief.   *Id*.   "Fraud is one of the special matters set forth in Civ. R. 9 that must be stated with particularity; *civil conspiracy is not*."   *Id*. (emphasis added); *see also Universal Coach, Inc. v. New York City Transit Auth., Inc*., 629 N.E.2d 28, 33 (Ohio Ct. App. 1993) (where plaintiffs alleged fraud and civil conspiracy, "plaintiffs were not required to plead with particularity each and every element of the claim of civil conspiracy").   Therefore, Plaintiff's civil conspiracy claims are not subject to the heightened pleading requirements of Rule 9(b) and easily meet the liberal notice pleading requirements.

Lastly, Defendants PMI Mortgage Services Co., MGIC Investor Services Corporation, CoreLogic Real Estate Solutions, LLC, and United Guaranty Corporation, in their Supplement to the Joint Motion to Dismiss argue that they are not liable because they are not engaged in the origination or assignment of MERS mortgages.   (ECF No. 118)   However, each of these Defendants are MERS shareholders[10]   and as such, are conspirators in Defendants' scheme to unlawfully violate Ohio's recording statutes.

## III.     CONCLUSION

For all the foregoing reasons, Plaintiff respectfully requests that Defendants Joint Motion to Dismiss the Amended Complaint be denied.[11]

---

[10] *See* http://www.mersinc.org/about/shareholders.aspx, last visited February 21, 2012

[11] In the event that the Court finds that the Amended Complaint fails to plead a claim, Plaintiff respectfully requests leave to amend. Fed. R. Civ. P. 15(a).

Dated:  February 20, 2012           Respectfully submitted,


/s/ Christian Siebott
Stanley D. Bernstein*
Christian Siebott*
Stephanie M. Beige**
Sara P. Goodman*
BERNSTEIN LIEBHARD LLP
10 East 40th Street
New York, New York 10016
(212) 779-1414
(212) 779-3218 fax

* admitted pro hac vice
** pro hac vice admission pending

David P. Joyce
Prosecuting Attorney
Geauga County Prosecutor's Office
Courthouse Annex
231 Main Street, Ste. 3A
Chardon, Ohio 44024
(440) 279-2100

*For Plaintiff State of Ohio, ex rel. David P. Joyce,*
*Prosecuting Attorney for the County of Geauga*