**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

STATE OF OHIO, ex rel.
DAVID P. JOYCE
PROSECUTING ATTORNEY OF GEAUGA
COUNTY, OHIO,                                           Case No. 1:11-cv-02474

        Plaintiff,
                                                       Hon. James S. Gwin

    v.

MERSCORP, INC. et al.,

        Defendants.

---

**DEFENDANTS' JOINT OPPOSITION TO**
**PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**

# TABLE OF CONTENTS

**Page**

STATEMENT OF THE ISSUES & SUMARY OF THE ARGUMENT ..................................... vi

INTRODUCTION .................................................................................................................. 1

BACKGROUND ................................................................................................................... 3

FACTS ABOUT RECORDING IN OHIO .......................................................................... 5

ARGUMENT ........................................................................................................................ 6

I.  THE MOTION SHOULD BE DENIED, FOR TWO THRESHOLD REASONS ............. 6

    A.  Under Ohio Law, Plaintiff Cannot Represent Other Ohio Counties. ..................... 6

    B.  The Motion Must Be Denied Because It Is Based On Mere Allegations. ............... 6

II.  THE COURT SHOULD DENY THE MOTION BECAUSE RULE 23(a)
    PREREQUISITES ARE NOT SATISFIED. ...................................................................... 7

    A.  Numerosity Is Not Met Because Joinder Is Not Impracticable. ............................ 7

    B.  Adequacy Concerns Exist. ...................................................................................... 8

III.  THE MOTION SHOULD BE DENIED BECAUSE CLASS-WIDE
    INJUNCTIVE AND DECLARATORY RELIEF IS NOT APPROPRIATE ................... 10

    A.  The Individualized Nature Of The Remedies Bars Certification Of The
        Case Under Rule 23(b)(2). .................................................................................... 10

    B.  Putative Class Members' Interests Are Not Homogeneous. .................................. 14

        1.  The Requested Injunction Could Cloud, Not Improve, Ohio Land
            Title. ........................................................................................................ 14

        2.  The Requested Injunction Will Require Pointless Assignments,
            Creating Burden With No Benefit. .......................................................... 16

        3.  The Requested Injunction Will Strain Many Counties' Resources. ......... 17

        4.  Plaintiff's Remedy Would Create Significant Additional Work –
            Potentially Without Equally Compensating Revenue. ............................ 18

    C.  The Injunctive Class Should Be Denied, In The Court's Discretion. .................... 19

IV.     A RULE 23(b)(3) CLASS CANNOT BE CERTIFIED. ....................................................19

     A.     Plaintiff Fails To Demonstrate That Common Questions Predominate. ...............19

            1.     Plaintiff's Claims Will Cause Individual Issues To Predominate. ........... 20

            2.     Defenses And Damages Issues Require Non-Common Evidence............ 22

     B.     Plaintiff Fails To Show That A Class Action Is A Superior Method Of Adjudicating The Controversy.................................................................................23

V.     A RULE 23(b)(1)(A) CLASS CANNOT BE CERTIFIED...............................................24

CONCLUSION...................................................................................................................................25

## TABLE OF AUTHORITIES

**CASES:**                                                                                                    **PAGE**

*Alkire v. Irving*, 330 F.3d 802 (6th Cir. 2003) ............................................................7

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997) ...............................................25

*Ansari v. New York Univ.*, 179 F.R.D. 112 (S.D.N.Y. 1998) ......................................24

*Avritt v. Reliastar Life Ins. Co.*, 2009 WL 455808 (D. Minn. Feb 23, 2009)................23

*Bacon v. Honda of Am. Mfg., Inc.*, 205 F.R.D. 466 (S.D. Ohio 2001) .........................13

*Bearden v. Honeywell Int'l, Inc.*, 2010 WL 1223936 (M.D. Tenn. Mar. 24, 2010).....22

*Beattie v. CenturyTel, Inc.*, 511 F.3d 554 (6th Cir. 2007) ...............................................9

*Becnel v. KPMG LLP*, 229 F.R.D. 592 (W.D. Ark. 2005) .............................................8

*Bolin v. Sears Roebuck & Co.*, 231 F.3d 970 (5th Cir. 2000).......................................19

*Brooks v. Lincoln Nat'l Life Ins. Co.*, 2008 U.S. Dist. LEXIS 121483
  (E.D. Tex. Feb. 12, 2008) ........................................................................................7

*Butler v. Sterling, Inc.*, 2000 U.S. App. LEXIS 6419 (6th Cir. Mar. 31, 2000) .............7

*Chesner v. Stewart Title Guar. Co.*, 2008 WL 553773 (N.D. Ohio Jan. 23, 2008).......22

*Cline v. Am. Aggregates Corp.*, 582 N.E.2d 1 (Ohio Ct. App. 1989)...........................23

*Coleman v. GMAC*, 296 F.3d 443 (6th Cir. 2000).......................................7, 13, 14, 19

*Corley v. Entergy Corp.*, 220 F.R.D. 478 (E.D. Tex. 2004) ........................................20

*Cox v. Am. Synthetic Rubber Co.*, 2008 WL 5381909 (W.D. Ky. Dec 18, 2008) ..........7

*Eldridge v. Cardif Life Ins. Co.*, 266 F.R.D. 173 (N.D. Ohio 2010) .......................7, 20

*Estate of Felts v. Genworth Life Ins. Co.*, 250 F.R.D. 512 (W.D. Wash. 2008)...........24

*Gawry v. Countrywide Home Loans, Inc.*, 640 F. Supp. 2d 942 (N.D. Ohio 2009)...............14, 23

*Gooch v. Life Investors Ins. Co. of Am.*, 672 F.3d 402 (6th Cir. 2012) .........................7

*Hum v. Dericks*, 162 F.R.D. 628 (D. Haw. 1995)..........................................................8

*In re American Med. Sys., Inc.*, 75 F.3d 1069 (6th Cir. 1996)....................................7, 9

*In re Medtronic, Inc.*, 1998 U.S. Dist. LEXIS 23720 (S.D. Ohio Feb. 10, 1998) ........................24

*In re OnStar Contract Litig.*, 2011 U.S. Dist. LEXIS 145846 (E.D. Mich. Dec. 19, 2011)..........23

*In re Polyurethane Foam Antitrust Litig.*, 799 F. Supp. 2d 777 (N.D. Ohio 2011).......................22

*Jackson v. Motel 6 Multipurpose, Inc.*, 130 F.3d 999 (11th Cir. 1997)........................................20

*Jaynes v. United States*, 69 Fed. Cl. 450 (Fed. Cl. 2006) ................................................................8

*John Morrell & Co. v. Local Union 304A of United Food & Comm. Workers*,
      913 F.2d 544 (8th Cir. 1990) ....................................................................................................23

*Johnston v. HBO Film Mgmt., Inc.*, 265 F.3d 178 (3rd Cir. 2001)................................................20

*Langbecker v. Elec. Data Sys. Corp.*, 476 F.3d 299 (5th Cir. 2007) ............................................19

*Levels v. Akzo Nobel Salt, Inc.*, 178 F.R.D. 171 (N.D. Ohio 1998)................................................8

*Liberty Lincoln Mercury v. Ford Mktg. Corp.*, 149 F.R.D. 65 (D.N.J. 1993) ................................8

*Mays v. TVA*, 274 F.R.D. 614 (E.D. Tenn. 2011) ...........................................................................8

*Meyer v. Chieffo*, 950 N.E.2d 1027 (Ohio Ct. App. 2011) ............................................................21

*Mortg. Elec. Registration Sys. v. Brosnan*, 2009 U.S. Dist. LEXIS 87596
      (N.D. Cal. Sept. 4, 2009) ...........................................................................................................11

*O'Shea v. Littleton*, 414 U.S. 488 (1974) .......................................................................................9

*Olden v. LaFarge Corp.*, 383 F.3d 495 (6th Cir. 2004)................................................................10

*Palmer v. Stassinos*, 2006 U.S. Dist. LEXIS 68977 (N.D. Cal. Sept. 14, 2006).........................24

*Pfaff v. Whole Foods Mkt. Grp., Inc.*, 2010 U.S. Dist. LEXIS 104784
      (N.D. Ohio Sept. 29, 2010) (Gwin, J.)......................................................................................24

*Pipefitters Local 636 Ins. Fund v. Blue Cross Blue Shield*, 654 F.3d 618
      (6th Cir. 2011)..................................................................................................................7, 24, 25

*Randleman v. Fidelity Nat'l Title Ins. Co.*, 646 F.3d 347 (6th Cir. 2011) ....................................20

*Reap v. Cont'l Cas. Co.*, 199 F.R.D. 536 (D.N.J. 2001)...............................................................24

*Rodney v. Northwest Airlines, Inc.*, 146 F. App'x 783 (6th Cir. 2005) ........................................22

*Romberio v. Unumprovident Corp.*, 385 F. App'x 423 (6th Cir. 2009) ...................................14

*Ronson v. Talesnick*, 33 F. Supp. 2d 347 (D.N.J. 1999) .................................................23

*Scott v. First Am. Title Ins. Co.*, 276 F.R.D. 471 (E.D. Ky. 2011) .................................22

*Spectrum Fin. Cos. v. Marconsult, Inc.*, 608 F.2d 377 (9th Cir. 1979) ..........................8

*Sprague v. General Motors*, 133 F.3d 388 (6th Cir. 1998)..........................................7

*State ex rel. Cline v. Wright*, 23 Ohio C.C. (ns) 188 (Ohio Cir. Ct. 1912) .....................6

*State ex rel. Corrigan v. Seminatore*, 66 Ohio St. 2d 459, 423 N.E.2d 105 (1981) ......................6

*State ex rel. Hamilton Cnty. Bd. of Comm'rs v. Hamilton Cnty. Court of Common Pleas*,
    126 Ohio St. 3d 111, 931 N.E.2d 98 (2010) ...........................................6

*State ex rel. Thompson v. New York Cent. R.R. Co.*, 89 Ohio App. 145, 100 N.E.2d 879
    (Ohio Ct. App. 1950) (per curiam) ...................................................6

*State v. Barnett*, 124 Ohio App. 3d 746, 707 N.E.2d 564 (Ohio Ct. App. 1998) ...........................6

*State v. Billingsley*, 2011 WL 1225695 (Ohio Ct. App. Mar. 31, 2011) ........................................6

*Steering Comm. v. Exxon Mobil Corp.*, 461 F.3d 598 (5th Cir. 2006) ..........................................20

*Stout v. J.D. Byrider*, 228 F.3d 709 (6th Cir. 2000)..........................................7

*Taylor v. CSX Transp., Inc.*, 264 F.R.D. 281 (N.D. Ohio 2007) ................................................25

*Thorn v. Jefferson-Pilot Life Ins. Co.*, 445 F.3d 311 (4th Cir. 2006) .....................................22, 23

*Trevizo v. Adams*, 455 F.3d 1155 (10th Cir. 2006)..........................................8

*Turnage v. Norfolk S. Corp.*, 307 F. App'x 918 (6th Cir. 2009) ..............................................8

*Universal Calvary Church v. City of New York*, 177 F.R.D. 181 (S.D.N.Y. 1998) .....................8

*Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256 (11th Cir. 2009) .....................................................20

*Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011) ..............................................7, 9, 10, 22

*Wetzel v. Liberty Mut. Ins. Co.*, 508 F.2d 239 (3d Cir. 1975)..........................................14

*Whittington v. United States*, 240 F.R.D. 344 (S.D. Tex. 2006)....................................................20

*Wooden v. Bd. of Regents of the Univ. Sys. of Georgia*, 247 F.3d 1262 (11th Cir. 2001)..............9

*Zeidman v. McDermott*, 651 F.2d 1030 (5th Cir. 1981) .............................................................8-9

*Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180 (9th Cir. 2001) .........................................24

## STATUTES:

Ohio Rev. Code § 305.14.........................................................................................................6

Ohio Rev. Code § 309.09(A)....................................................................................................6

Ohio Rev. Code §§ 317.01 *et seq.* .........................................................................................5

Ohio Rev. Code § 317.13(A) ...................................................................................................5

Ohio Rev. Code § 317.32.......................................................................................................5, 9

Ohio Rev. Code § 317.36.........................................................................................................9

Ohio Rev. Code § 5309.23......................................................................................................12

Ohio Rev. Code § 5309.24......................................................................................................12

## RULES:

Fed. R. Civ. P. 23...............................................................................................................7, 9

Fed. R. Civ. P. 23(a) ......................................................................................................1, 7, 10

Fed. R. Civ. P. 23(a)(1).......................................................................................................1, 8

Fed. R. Civ. P. 23(a)(4).........................................................................................................9

Fed. R. Civ. P. 23(b) ............................................................................................................1

Fed. R. Civ. P. 23(b)(1).........................................................................................................9

Fed. R. Civ. P. 23(b)(1)(A) ................................................................................................3, 25

Fed. R. Civ. P. 23(b)(2)................................................................................................... *passim*

Fed. R. Civ. P. 23(b)(3)........................................................................................... *passim*

Fed. R. Civ. P. 23(b)(3)(A) ............................................................................................23

Fed. R. Civ. P. 23(b)(3)(B) ............................................................................................24

Fed. R. Civ. P. 23(b)(3)(D) ............................................................................................24

## **OTHER AUTHORITIES:**

4 Restatement of Torts (Second) § 920 (1979) ...............................................................23

## STATEMENT OF THE ISSUES & SUMMARY OF THE ARGUMENT

**1)  May a county prosecutor for one Ohio county represent the interests of other independent counties under Ohio law?**

Under Ohio law, Plaintiff does not have the power or authority to maintain a lawsuit on behalf of any Ohio county other than his own.  Ohio courts have consistently held that the state's counties are independent political entities and cannot be represented by an outside county or county prosecutor.

**2)  Can a class certification motion that relies on the allegation of a complaint, rather than evidence, meet the stringent requirements for certification under Rule 23?**

The movant seeking to certify a class bears the burden of proving that class certification is proper under Rule 23 of the Federal Rules of Civil Procedure.  By relying on his pleadings, and not submitting proof in support of those allegations, Plaintiff has failed to meet that burden.

**3)  May the court certify a class when joinder of all putative members of the class is not impracticable?**

Putative class members are easily identifiable, can be easily served, and have the capacity to protect their own interests.  Courts deny certification in these circumstances.

**4)  Can this class be certified under Rule 23(b)(2) where putative class members are seeking individualized monetary relief, and where they lack homogeneous interests with respect to the declaratory and injunctive relief requested?**

The complaint in this lawsuit seeks monetary relief in connection with its requests for declaratory and injunctive relief, and certification is inappropriate under Rule 23(b)(2) because any putative class member's entitlement to monetary relief is individualized.  The class should also be denied because Plaintiff  fails to demonstrate that putative class members' interests are homogenous.  Plaintiff's requested declaratory and injunctive relief if granted could also cause multiple, negative impacts on putative class members which would vary across the different counties.

5) **Do individualized issues predominate under 23(b)(3) where: (a) the trial will, as to liability, involve different facts and documents for each mortgage recorded in county land records ; (b) defendants' affirmative defenses are not susceptible of common proof; and (c) damages issues cannot be tried using common evidence?**

No class can be certified under Rule 23(b)(3) because individual issues will proliferate over the single common legal question raised by Plaintiff.  Courts have repeatedly refused to certify unjust enrichment claims, and here the determinations of the alleged benefits asserted by Plaintiff will require separate inquiries into the unique circumstances of the alleged benefits for each Defendant, each Defendants' knowledge of those benefits, and whether retention would be just, inquiries that cannot be accomplished with common proof across the class.  Moreover, Defendants intend to prove defenses against each putative class member, including the bar of laches and statute of limitations, which again vary with facts peculiar to each.  Finally, calculation of damages cannot be tried for the class as a whole; rather, individual inquires will be needed with respect to mitigation of damages under Ohio law, which can be resolved only with evidence about the knowledge of each county involved.

6) **Is a class action the superior method of adjudication under Rule 23(b)(3) where each class member seeks significant damages and a classwide trial will create extensive management problems?**

The court should also deny class certification under Rule 23(b)(3) because a class action is not the superior method of adjudication.  Here, significant damage amounts are at stake for each county, giving each putative class member a strong interest in controlling its own action, and individualized factual questions for each loan make this case unmanageable.

7) **Will Defendants be subjected to incompatible standards of conduct for purposes of Rule 23(b)(1)(A) if the class is not certified?**

No class can be certified under Rule 23(b)(1)(A), because the provision is not implicated where, as here, separate lawsuits by individual counties could produce differing results, as Defendants would face no incompatible standards of conduct in those circumstances.

## INTRODUCTION

For multiple reasons, the Court should deny Plaintiff's motion to certify an 88-county class action. "Motion For Class Certification" (Apr. 23, 2012) ("Motion").

Most fundamentally, the Motion fails on two preliminary measures.  First, a class action of Ohio counties is legally impermissible, because Ohio law precludes the prosecuting attorney of one county from maintaining an action on behalf of another and does not permit a private lawyer to represent a county without compliance with a statutory selection process.   Discovery graphically illustrated why this is the law.  Plaintiff made a full-court press to convince other Ohio counties to join this case; not one of them did, several expressed significant reservations, and one county, Brown County, responded by filing a competing lawsuit.  Second, the Motion is utterly unsupported, because its arguments are based solely on the allegations of the Complaint and so does not meet Supreme Court or Sixth Circuit requirements.

Apart from these insurmountable hurdles, there are multiple other reasons militating against certification.  Among others, the Rule 23(a) threshold tests are not met because the joinder of eighty-eight counties, each of which already have their own lawyer and are fully capable of protecting their own interests, is not impracticable.  Fed. R. Civ. P. 23(a)(1).

Nor may a class be certified under any of the Rule 23(b) subparts Plaintiff tries to invoke. Rule 23(b)(2) permits certain injunctive and declaratory relief classes, but, as the Supreme Court recently made clear, a class may not be certified under this subpart when individualized remedies are sought.  That is the case here, because Plaintiff's demand that all past and all future mortgages and assignments be recorded, and associated recording fees paid, will require numerous specific factual inquiries as to whether, how, and how frequently loans were assigned and documents recorded.  A class under Rule 23(b)(2) also must have homogenous interests

among its members, since the counties cannot opt out of such a class.  But the Ohio counties'

interests cannot possibly be the same, because of the havoc, administrative burdens, and policy

considerations implicated by the relief Plaintiff seeks. The broad obligation to create and record

thousands or millions of assignments and mortgages will, as explained below –

- create "gaps" in the chain of title by mandating recordings as to only the 29 defendants here, and not the thousands of other lenders;

- cloud titles because of errors and delays caused by the flood of mortgages and assignments that Plaintiff seeks to compel;

- require the recording of useless mortgages and mortgage assignments as to loans that were long ago paid off, foreclosed upon, or that are otherwise irrelevant;

- strain already-depleted county resources to cope with a huge influx of mortgages and mortgage assignments Plaintiff wants recorded; and

- force recording of written assignments when Ohio law allows other methods of transfer.

The Geauga County recorder admitted that each county will have differing views about whether

these adverse consequences are outweighed by the benefits (if any) that recording might confer.

Defendants agree.  Homogeneity is thus lacking.  And, the injunctive class ought to be denied in

the Court's discretion, as it is so plainly impractical that it ought not even be entertained.

A damages class also should be denied under Rule 23(b)(3), as non-common issues

proliferate over any common issues.  Plaintiff's unjust enrichment claim contains individualized

elements that will turn on factual determinations varying by each county, each loan, and each

document allegedly recorded by or on behalf of Defendants.  These issues must be determined

with transaction-specific evidence, and cannot be tried with common evidence for every loan

across the state.  Trial of defenses also would be individualized, including proof as to whether

the claims are barred by statutes of limitation and by laches as a result of various counties'

conduct in accepting the conduct for which they now would recover damages.  Similarly,

individualized issues are raised by Ohio's benefits rule, which requires the trier of fact to deduct

benefits conferred by the defendant's conduct on the plaintiff before awarding damages.

Rule 23(b)(3) certification separately should be denied because a class action is not the

superior method of resolving the dispute.  The size of the claims means individual counties could

litigate their own claims, as Brown County has done.  Intractable management difficulties would

inhere in any class trial, yet Plaintiff proposes no trial plan to show a class trial is possible.

Finally, Plaintiff's request for certification under Rule 23(b)(1)(A) has no merit either.

The case law holds that the possibility of courts reaching different results in suits brought by

different counties is legally insufficient to satisfy Rule 23(b)(1)(A).

## BACKGROUND

Plaintiff contends that Ohio law mandates recording of mortgages and mortgage

assignments.  Amended Class Action Complaint ("FAC") ¶ 1.  Defendants' pending Motion to

Dismiss demonstrates that Ohio statutes and a century of Ohio cases reject this theory.  Taking

the contrary view, Plaintiff seeks broad relief centered on injunctive and declaratory orders to

impose recordation requirements for those documents on every paid-off loan, current loan, and

future loan.  Specifically, Plaintiff wants this Court to mandate that "Defendants [be] required to

record *every* mortgage and mortgage assignment on real property located in Ohio that was not

recorded in the proper county recording office" and "cease the practice of non-recording of

mortgages and mortgage assignments." FAC ¶¶ 69, 70 & pg. 50-51. Of course, Plaintiff also

requests that Defendants be ordered to "pay the attendant statutory recording fees" for all of

those documents.  Apart from the injunction, Plaintiff seeks an award of damages for unjust

enrichment.  Defendants have been unjustly enriched, he contends, because they have enjoyed

protected status as first lien holders and have been able to tout that status to those who purchased

interests in the loans themselves, and Plaintiff wants those benefits disgorged and paid to Geauga

County and the other counties.  *Id.* ¶ 71; *see also* Plaintiff's Opposition to Certain Defendants'

Joint Motion to Dismiss, at 2, 16-18 ("Pls' Dism. Opp.")(Dkt. 158).

This case is unusual in many respects, not the least of which is that it seeks a class action

of the eighty-eight counties in Ohio.  Although each county is an independent political body,

nowhere in the FAC does Plaintiff allege that he sought to obtain the consent of other Ohio

counties before he filed this case.  In fact, discovery revealed that after a competing suit was

filed by Brown County, Plaintiff made a full-court press to convince individual counties to join.

Exhibit 1 at 2 (David Joyce memorandum); Deposition of Sharon Gingerich, attached as Exhibit

2 ("Gingerich Dep."), at 164-203 (discussing efforts with state association, Attorney General,

and individual recorders).  None did.  Instead, Plaintiff received generally unfavorable reactions

from the other counties and their political officials:

- An Ohio Recorders' Association lobbyist told Mercer County that "the determination to add a respective county to the suit is and *should be determined by the County elected officials*."  Exhibit 3 (emphasis added).

- The Champaign County prosecutor "questions whether this [case] *should be an Attorney General Issue* rather than a class action suit."  Exhibit 4 (emphasis added). The Hamilton County recorder "believes *the Attorney General should take the lead*" on the lawsuit.  Exhibit 5 (emphasis added).  The Erie County recorder, was asked to contact the Ohio Attorney General.  *Id.*  The Ohio Attorney General has not joined the case.

- The Ohio Recorders' Association distanced itself from the case.  It wanted to make sure the Prosecuting Attorney's Association "understood that [this] suit *was not being driven by the Recorder's Association*."  Exhibit 6 (emphasis added). The ORA still has not endorsed the lawsuit.  Gingerich Dep. at 167.

- Some participants in an ORA meeting recognized that recorders "need to work together with *other entities*" to resolve MERS issues.  Exhibit 7.

- The Allen County prosecuting attorney "*doesn't believe the ruling will be in our favor*."  Exhibit 8 (emphasis added).  Butler County's prosecuting attorney stated: "we would have to file a motion to intervene before we would have a right to file anything in the case.  I do not think that we would be inclined toward doing that *based on the allegations of the Complaint*."  Exhibit 9 (emphasis added).

None of this is surprising, as each county is its own political entity, with elected officials and

prosecutors making its own judgments about how to administer laws entrusted to its care.

## FACTS ABOUT RECORDING IN OHIO

The Ohio General Assembly has authorized the state's counties to maintain recording systems for their respective jurisdictions.  Ohio Rev. Code §§ 317.01 *et seq.*  A county's recording office is run by the county recorder, an elected position.  *Id.* § 317.01.  County recorders must record documents "that are required or authorized by the Revised Code to be recorded and that are presented to the recorder for that purpose."  *Id*. § 317.13(A).  A county recorder can collect fees, whose amount is set by statute, from persons seeking to record an instrument "upon the presentation of the instruments for record."  *Id.* § 317.32.

Each recording office has its own budget, employees, policies and procedures.  Each county has a prosecuting attorney to whom it turns for advice about legal issues, and is responsible to its citizens alone.  Gingerich Dep. at 58-59, 332.  Geauga Recorder Gingerich testified that it was a "strength" of Ohio law that each county operates independently of each other, and that she "place[d] the interests of the citizens of Geauga County above any other interest."  *Id.* at 19, 416.[1]  Not surprisingly, Ohio recorders can and often do disagree about the method, manner, and duty to record various instruments under Ohio law.  *Id.* at 59-62.

This case concerns mortgages that name MERS as a mortgagee, which Plaintiff generally contends is an artifice to avoid state law requirements on recording mortgage assignments.  FAC ¶¶ 65-72. When a loan is sold and the mortgage stands in the name of MERS, the mortgage is usually not physically assigned because MERS is the nominee for the original noteholder and for all subsequent holders of the note by assignment.  Motion to Dismiss (Dkt. 117-1), at 15.

---

[1]	The recorder admitted at deposition that she does not represent the citizens of any other county in Ohio and that she has no power to direct how county recorders in the other 87 counties in Ohio should be handling the recording of documents; and stated that she does not want this lawsuit to infringe on other counties' independent right to control their operations.  Gingerich Dep. at 321, 322, 416-18.

Indeed, the MERS® System has many substantial advantages and was designed, in part, to create a way to avoid errors and delays in county recorder offices. *Infra* n.13. Plaintiff's suggestion notwithstanding, it is not the case that all loans are sold, or sold the same number of times, or sold only between and among the twenty-nine Defendants sued here.[2] The suit, therefore, implicates assignment and recording practices that vary on a loan-by-loan basis.

## ARGUMENT

I.      **THE <u>MOTION</u> SHOULD BE DENIED, FOR TWO THRESHOLD REASONS.**

A.      **<u>Under Ohio Law, Plaintiff Cannot Represent Other Ohio Counties</u>.**

The Court should deny the <u>Motion</u> because, under Ohio law, Plaintiff may not maintain a lawsuit to determine the rights and interests of all 88 Ohio counties. As Defendants showed in their Motion to Strike Class Action Allegations filed this date, Ohio courts forbid individual counties and their prosecutors from representing other Ohio counties.[3] And, while an Ohio county may employ outside counsel, it cannot do so without going through an elaborate statutorily-mandated process.[4] A class action of counties would violate Ohio law by granting Geauga County power to represent others using lawyers that have not been duly appointed.

B.      **<u>The Motion Must Be Denied Because It Is Based On Mere Allegations</u>.**

The Court also should deny class certification because, other than a lawyer's affidavit

---

[2]      Declaration of Patrick McCallister, attached hereto as Exhibit 10.

[3]      *State v. Billingsley*, 2011 WL 1225695, at *3 (Ohio Ct. App. Mar. 31, 2011) ("[A] county prosecutor's authority is generally limited to the county he serves, as they are elected by local residents and work on behalf of those constituents"); *State v. Barnett*, 124 Ohio App. 3d 746, 754-55, 707 N.E.2d 564, 570 (Ohio Ct. App. 1998) (actions of one county prosecutor cannot bind prosecutors in other counties); *State ex rel. Thompson v. New York Cent. R.R. Co.*, 89 Ohio App. 145, 149, 100 N.E.2d 879, 881 (Ohio Ct. App. 1950) (per curiam) (prosecutor can sue only for "money due the county"); *State ex rel. Cline v. Wright*, 23 Ohio C.C. (ns) 188, 189 (Ohio Cir. Ct. 1912) (prosecuting attorney lacked authority to sue for funds of municipality, which were not "funds of the county" or "funds for the use of the county"); 1962 Ohio Op. Atty. Gen. 2580 (1962) (Ohio law does not authorize prosecuting attorney to recover funds on behalf of other governmental entities) (Exhibit 11).

[4]      Ohio Rev. Code §§ 305.14, 309.09(A); *State ex rel. Corrigan v. Seminatore*, 66 Ohio St. 2d 459, 463, 423 N.E.2d 105, 109 (1981); *State ex rel. Hamilton Cnty. Bd. of Comm'rs v. Hamilton Cnty. Court of Common Pleas*, 126 Ohio St. 3d 111, 118, 931 N.E.2d 98, 106 (2010).

about counsels' qualifications, Plaintiff rests his <u>Motion</u> entirely on the allegations of his complaint. The movant bears the full burden of showing class certification is proper. *Alkire v. Irving*, 330 F.3d 802, 820 (6th Cir. 2003).[5] Plaintiff asserts his showing is enough, because judges should accept allegations in a complaint as true and err in favor of certification. <u>Motion</u> at 6. That is incorrect. As the Supreme Court warned, "Rule 23 does not set forth a mere pleading standard": a plaintiff "must affirmatively demonstrate his compliance with the Rule-- that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551-52 & n.6 (2011) (emphasis in original). Applying *Dukes*, the Sixth Circuit recently squarely rejected the approach urged on by Plaintiff. *Gooch v. Life Investors Ins. Co. of Am.*, 672 F.3d 402, 417 (6th Cir. 2012) ("[T]he district court took plaintiff's allegations 'as true' and resolved doubts 'in the plaintiff's favor' … This standard is clearly wrong"). A lawsuit "is not maintainable as a class action by virtue of its designation as such in the pleadings." *In re American Med. Sys., Inc.*, 75 F.3d 1069, 1079 (6th Cir. 1996). The Court should deny class certification because of this failure of proof.[6]

## II. THE COURT SHOULD DENY THE MOTION BECAUSE RULE 23(A) PREREQUISITES ARE NOT SATISFIED.

### A. <u>Numerosity Is Not Met Because Joinder Is Not Impracticable</u>.

The Court should deny the <u>Motion</u> because this is not a case where "the class is so

---

[5] The Sixth Circuit requires strict adherence to Rule requirements, denying certification when they are not met. *See, e.g., Pipefitters Local 636 Ins. Fund v. Blue Cross Blue Shield*, 654 F.3d 618 (6th Cir. 2011); *Sprague v. General Motors*, 133 F.3d 388 (6th Cir. 1998); *Alkire v. Irving*, 330 F.3d 802 (6th Cir. 2003); *In re American Med. Sys.*, 75 F.3d at 1078-86; *Stout v. J.D. Byrider*, 228 F.3d 709 (6th Cir. 2000); *Coleman v. GMAC*, 296 F.3d 443 (6th Cir. 2000); *Butler v. Sterling, Inc.*, 2000 U.S. App. LEXIS 6419 (6th Cir. Mar. 31, 2000).

[6] *Eldridge v. Cardif Life Ins. Co.*, 266 F.R.D. 173, 178 (N.D. Ohio 2010) ("general knowledge and common sense" impermissible); *Cox v. Am. Synthetic Rubber Co.*, 2008 WL 5381909, at *6 (W.D. Ky. Dec 18, 2008) (plaintiffs "have not shown any evidence" case could be tried classwide); *Brooks v. Lincoln Nat'l Life Ins. Co.*, 2008 U.S. Dist. LEXIS 121483, at *51 (E.D. Tex. Feb. 12, 2008) ("Plaintiff cannot meet his burden simply by reciting unsupported allegations that the case satisfies" Rule 23).

numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1).  Plaintiff

claims that Rule 23(a)(1) is met because there are 88 Ohio counties (<u>Motion</u> at 7), but numbers

are not the sole touchstone of numerosity.  Rather, "the real issue is whether the plaintiff seeking

class certification has demonstrated impracticability of joinder." *Turnage v. Norfolk S. Corp.*,

307 F. App'x 918, 921 (6th Cir. 2009).  Joinder is impracticable when it is "extremely difficult

or inconvenient to join all the members of the class." *Levels v. Akzo Nobel Salt, Inc.*, 178 F.R.D.

171, 175 (N.D. Ohio 1998) (Gwin, J.).  "Where class members may be easily identified, joinder

is also more practicable." *Levels*, 178 F.R.D. at 175.

Joinder is not impractical here for two reasons.  First, each of the 88 Ohio counties is

identifiable, represented by a prosecuting attorney, can be served without difficulty, and can

appear in this district if it desires to do so.[7]  In these circumstances courts hold that Rule 23(a)(1)

is not met, and deny certification.[8]  Separately, Rule 23(a)(1) is not met because the putative

class members can protect their own interests.  Any county that wishes can file suit on its behalf,

as Brown County did.  And the alleged size of the potential claims here (*infra* Section IV(B)(2))

gives each county a sufficient incentive to sue (if it believed it was wronged).[9]

### B.     <u>Adequacy Concerns Exist.</u>

Plaintiff has not shown he will "fairly and adequately protect the interests of the class."

---

[7]     *Turnage v. Norfolk*, 307 F. App'x at 921 (courts should consider "ease of identifying members and determining addresses, ease of service on members if joined, and geographical dispersion").

[8]     *Trevizo v. Adams*, 455 F.3d 1155, 1162 (10th Cir. 2006) (names and addresses of 84 putative class members known); *Spectrum Fin. Cos. v. Marconsult, Inc.*, 608 F.2d 377, 382 (9th Cir. 1979) (plaintiff could contact 92 class members); *Mays v. TVA*, 274 F.R.D. 614, 620-22 (E.D. Tenn. 2011) (class members easily identifiable); *Jaynes v. United States*, 69 Fed. Cl. 450, 454-55 (Fed. Cl. 2006) (most of 254 class members lived in same state and identifiable); *Becnel v. KPMG LLP*, 229 F.R.D. 592, 596 (W.D. Ark. 2005) (joinder of 250 easily-ascertainable class members not impracticable); *Universal Calvary Church v. City of New York*, 177 F.R.D. 181, 182-83 (S.D.N.Y. 1998) (joinder of 217 class members not impracticable); *Hum v. Dericks*, 162 F.R.D. 628, 634 (D. Haw. 1995) (200 class members identifiable); *Liberty Lincoln Mercury v. Ford Mktg. Corp.*, 149 F.R.D. 65, 74 (D.N.J. 1993) (123 class members identifiable, subject to service, and located in same state).

[9]     *Liberty Lincoln Mercury*, 149 F.R.D. at 74 ("Practicability of joinder depends on . . . whether [putative] class would be able to pursue remedies on an individual basis."); *Zeidman v. McDermott*, 651 F.2d 1030, 1038 (5th Cir. 1981) (size of claims relevant to numerosity).

Fed. R. Civ. P. 23(a)(4).  Adequacy is "essential to due process, because a final judgment in a class action is binding on all class members."  *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1083 (6th Cir. 1996).  Here, Plaintiff is not an adequate representative because he lacks standing to represent the class claims in large measure.  *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974).  As reflect in Defendants' Motion to Dismiss, Geauga County cannot recover recording fees under Ohio law for non-recorded instruments, since it never performed the associated public service.  It also lacks standing because the Ohio recording statutes are intended to protect individual property owners and creditors, not counties.  Lacking standing to assert a claim that the class seeks to recover upon is automatically disqualifying under the Rule.  *Wooden v. Bd. of Regents of the Univ. Sys. of Georgia*, 247 F.3d 1262, 1287 (11th Cir. 2001).

Adequacy also is lacking because Plaintiff's hiring of outside counsel is antagonistic to interests of the other Ohio counties.  *Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 563-64 (6th Cir. 2007).  Ohio law provides a prosecuting attorney to represent the County in all matters, and mandates that all recording fees collected for recording documents be paid into that county's treasury.  Ohio Rev. Code §§ 317.32, 317.36.  However, Plaintiff retained outside counsel to litigate this case, and agreed to pay 25% of all recording fees recovered to that counsel.  Exhibit 12.  Thus, if Plaintiff prevails on the merits, and subject to the Court's review under Rule 23, some of the money that otherwise would go to each county will have to go to pay the private lawyer that Plaintiff decided to hire.  Geauga's choice to use private counsel conflicts with the interests of those willing to sue on their own, and thus adequacy is in question.[10]

---

[10]     Adequacy concerns also arise because Plaintiff told other Ohio prosecuting attorneys that they would have the right to "opt out" of a certified class.  Exhibit 1.   That is incorrect, because Plaintiff seeks certification under Rules 23(b)(1) and (b)(2), mandatory classes from which class members cannot opt out.  *Dukes*, 131 S. Ct. at 2558.

## III.   THE MOTION SHOULD BE DENIED BECAUSE CLASS-WIDE INJUNCTIVE AND DECLARATORY RELIEF IS NOT APPROPRIATE.

Rule 23(b)(2) allows for certification only if the defendant acted "on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."  Plaintiff's short argument is first to claim the standard does not need to be met, and then to allege the suit meets it because Defendants 'failed to record' mortgages and assignments and so the relief it seeks "will affect all Class Members equally." Motion at 12.  The former point need not detain the Court,[11] and the latter is simply wrong as well.  A proper Rule 23(b)(2) analysis shows no injunctive class is appropriate here.

### A.   The Individualized Nature Of The Remedies Bars Certification Of The Case Under Rule 23(b)(2).

The Court should first deny certification because Rule 23(b)(2) "does not authorize class certification when each class member would be entitled to an individualized award of monetary damages." *Dukes*, 131 S. Ct. at 2557.  This is because "[t]he key to the (b)(2) class is the indivisible nature of the injunctive or declaratory remedy warranted." *Id.*  In *Dukes*, the Supreme Court held that a class of female employees could not be certified under Rule 23(b)(2) because a court would need to consider facts about each class member to calculate back pay. *Id.*  That determination required individualized inquiries, directly contrary to Rule 23(b)(2)'s goal of providing uniform, collective relief. *Id.* at 2559.  In such a situation, there is a "need for plaintiffs with individual monetary claims to decide for themselves whether to tie their fates to the class representatives' or go it alone," which a Rule 23(b)(2) class would not allow. *Id.*

---

[11]      Plaintiff cites *Olden v. LaFarge Corp.*, 383 F.3d 495, 511 (6th Cir. 2004), for the proposition that certification is appropriate under Rule 23(b)(2) whenever Rule 23(a) tests are met and an injunction sought, regardless of whether money damages may be a predominant form of relief. Motion at 12.  Whatever the vitality of that authority after Sixth Circuit cases like *American Medical Systems*, the Supreme Court in *Dukes* made clear that a class may not be certified without adjudicating all aspects of the Rule and, in particular, there cannot be a class under Rule 23(b)(2) if requested declaratory and injunctive relief would result in individual monetary awards. *Dukes*, 131 S. Ct. at 2558-59.

This principle is dispositive here as well.  Plaintiff requests a declaration and injunction requiring Defendants to record all mortgages and assignments of mortgages secured by Ohio real property, and to pay Plaintiff and putative class members recording fees.  Any determination of the remedy Plaintiff and each county could obtain if a declaration and injunction were entered would mandate a host of highly individualized factual inquires, not common to the class as a whole – complexities Plaintiff nowhere grapples with, or even acknowledges.

<u>**Individualized Remedies As To Assignments**</u>

Plaintiff's injunction compelling recordation and payment of recording fees would not produce a unified award to all Ohio counties.  To the contrary, the implementation of any remedy and resulting award of recording fees would be individualized, precluding class treatment.  This is because the path loans can and do take through the secondary sale market and securitization market, and assignment practices for those loans, is highly variable.

It is not the case that all loans are "securitized" and assigned in any pattern that would enable the Court to order and implement an injunctive or declaratory remedy that would avoid individualized examination, remedies, and awards. Many loans secured by mortgages recorded in Ohio are never securitized, or never transferred, and many mortgages for those loans are not assigned but others are.  Declaration of Patrick McCallister ¶¶ 3-4 (Exhibit 10) ("McCallister Decl.").  Some will not ever have been assigned.  *Id.*  And whether a loan or mortgage was transferred, and how many times, has nothing to do with what occurred for any other loan.  *Id.* ¶ 8. Compounding the problem is that there are potentially millions of mortgages at issue.[12]  Thus, to determine remedies for just one loan, the trier of fact would need to (1) first identify each mortgage recorded in that county; (2) then determine the original lender for the associated loan;

---

[12]        There are approximately 60 million MERS mortgages nationwide.  *Mortg. Elec. Registration Sys. v. Brosnan*, 2009 U.S. Dist. LEXIS 87596, at *3 (N.D. Cal. Sept. 4, 2009).

(3) next, determine whether, after the mortgage had been recorded, the original lender sold the loan to a second company or assigned the mortgage or did both; (4) then ascertain whether the second lender sold the loan or assigned the mortgage or both to a third company; and finally (5) review the records of each county recorder to determine what mortgage assignments were recorded as to that loan.  This five-step process would need to be repeated, to the time of trial, to capture all possible assignments Plaintiff believes should have been recorded.  These transaction-specific inquiries must be resolved with loan-specific documents and information, and could not be resolved across the class.  McCallister Decl. ¶¶ 7-8.  And, the bulk of these inquiries for determining remedy and associated fees will involve off-record transactions – such as loan sales between and among banks, entities, and others who are not parties to this lawsuit (and so not bound by any remedy, but certainly in possession of facts necessary to implement a remedy).[13]

Plaintiff does not contest these problems.  As the Geauga Recorder conceded, the trier of fact would need to review "the specific files as to each mortgage" to assess whether the original loan had even be transferred.  Gingerich Dep. at 49.  Plaintiff's complaint provides examples of what it contends are unrecorded mortgage assignments – while showing that each transaction involves separate and distinct loans made on different dates, with different lenders, and allegedly assigned at different times.  FAC ¶¶ 77-95 & 1-59. Even the class brief recognizes that  Plaintiff cannot show the remedy will be indivisible; it retreats to generalizing that for securitized loans "both the mortgage and note [are] *typically* assigned *at least* three or four times."  Motion at 4.

---

[13]    The task of providing a remedy will be further complicated because some properties are so-called Torrens registered properties.  In counties where this land registration system is in effect, the state court issues a decree that conclusively establishes title to land as of the date of its decree.  Ohio Rev. Code § 5309.23.  The contents of such a decree must include all encumbrances (including mortgages) on the registered property.  *Id.* § 5309.24.  Once a state court has issued such a decree conclusively establishing title, it would be inappropriate for this Court (or any court) to issue an order that would undermine the registered title – such as by requiring assignments of mortgages that predate the registration decree.  To avoid interfering with state court judgments, this Court would need to examine each land registration decree and the history of every registered title, carefully tailoring any injunction.

In these respects, this case is like *Dukes*, where the Supreme Court held that no Rule 23(b)(2) class was permissible because, even if the plaintiff employees won that case, the resolution of the remedy required an individualized determination of the facts relevant to that person's experience with the employer.  There cannot be an injunction or declaration that will resolve – fully, finally and directly – the controversy Plaintiff seeks to place before the Court.

### Individualized Remedies As To Mortgages

Plaintiff's request for injunctive relief regarding "non-recordation of all mortgages" (Motion at 5) is more individualized, because whether a county would be entitled to a remedy on that issue requires indentifying what properties are subject to unrecorded mortgages.  But determining if an unrecorded mortgage existed would require contacting owners of every parcel of property in Ohio to determine if the property had been subject to a mortgage, and then comparing the result of those inquiries with county land records to determine if that mortgage was recorded.  A Rule 23(b)(2) class cannot be certified as to allegedly unrecorded mortgages.

*          *          *

*Dukes* teaches that "[t]he key to the (b)(2) class is the indivisible nature of the injunctive or declaratory remedy warranted."  Plaintiff has not shown that the remedy sought is indivisible and, in fact, the record and his concessions show that a remedy can only be administered and damages paid only on a loan-by-loan and property-by-property basis. [14]  For this reason alone, Plaintiff fails to sustain his burden of showing a class should be certified under Rule 23(b)(2). [15]

---

[14]     Plaintiff makes the odd comment that the claims are based on whether recording is required "under Ohio law, *or in equity*."  Motion at 9 (emphasis added).  The latter is not a theory that has previously been articulated and so is irrelevant.  Moreover, if equity were the basis for this suit, it would further undermine any hope of certification for the facts and circumstances must always be considered in weighing the equities.

[15]     *Coleman v. GMAC*, 296 F.3d 443, 447 (6th Cir. 2002) ("the injunctive relief requested in this case does not predominate over the monetary damages due to the highly individualized determinations that would be required to determine those damages."); *Bacon v. Honda of Am. Mfg., Inc.*, 205 F.R.D. 466, 485-486 (S.D. Ohio 2001) (Rule 23(b)(2) certification denied; "[w]hether each class member is entitled to recover compensatory and punitive damages is a question which will mandate an inquiry into the circumstances of that class member.").

### B.     Putative Class Members' Interests Are Not Homogeneous.

Independently, the Court should deny a Rule 23(b)(2) class because Plaintiff fails to demonstrate class members' interests are homogenous.  Because class members cannot opt out of a (b)(2) class, their interests must be cohesive and homogenous.  *Romberio v. Unumprovident Corp.*, 385 F. App'x 423, 432 (6th Cir. 2009); *Coleman v. GMAC*, 296 F.3d 443, 447 (6th Cir. 2002).  Cohesion is lacking if there are "conflicting interests between the members of the class," *Wetzel v. Liberty Mut. Ins. Co.*, 508 F.2d 239, 256 (3d Cir. 1975), or if "individualized determinations" are needed to resolve claims.  *Romberio*, 385 F. App'x at 432.[16]

The class members' interests are not aligned here.  As already highlighted, Ohio recording offices are separate entities, with individual policies and budgets, and different views of the law.  Many counties have shown that they choose not to go down the path Geauga County is taking. One has even sued on its own. There is no reason to conclude the counties' varying interest in making land recording decisions and political judgments are homogeneous.

And it is plain that the unusual, sweeping relief requested by Plaintiff undermines any claim of homogeneity.  Plaintiff seeks an injunction that would mandate that Defendants "record every mortgage and mortgage assignment on real property located in Ohio," but also permanently compel Defendants (though not others) to record every such document in the future. FAC ¶ 70 & pp. 50-51.  If awarded and implemented as Plaintiff envisions, this broad relief will have profound consequences, in ways that surely will create divisions among the 88 county recorders' offices as to whether the remedy is desirable, or disastrous, or something in between:

#### 1.     *The Requested Injunction Could Cloud, Not Improve, Ohio Land Title.*

Plaintiff filed suit purportedly to protect land records by preventing "gaps" and broken

---

[16]     *See also Gawry v. Countrywide Home Loans, Inc.*, 640 F. Supp. 2d 942, 959-63 (N.D. Ohio 2009), *aff'd*, 395 F. App'x 152 (6th Cir. 2010) ("where individualized assessments are required, the requisite homogeneity needed to protect the interests of absent class members is lacking.").

chains of title.  FAC ¶ 75.  But many counties likely would find Plaintiff's proposed cure – a huge wave of mortgage assignments to be recorded – worse than the alleged problem. Any order requiring assignments to be recorded would create problems for many counties by imposing an incomplete, and harmful, "fix" to their land records.  Plaintiff named just 29 Defendants in this lawsuit – but there are very few transactions in which Defendants are the only assignees and assignors.  *Thousands* of lenders make loans, file security instruments, and later sell the loans, yet an injunction would *not* apply to them.  So, the result will not be that "the 'gapped' chains of title" will be "repaired" (Motion at 1), but rather that there will be thousands or even millions of titles that will be hopelessly muddled.  So, for example, assume that a loan was made by a named Defendant, the note thereafter was transferred multiple times, and the mortgage currently stands in the name of MERS.  If the Defendant is ordered to create and record a mortgage assignment to mirror its initial note assignment, but the assignee (who is not a party to this case) is not required to create and record a subsequent mortgage assignment, then the county land records would, using Plaintiff's nomenclature, now have "gaps."[17]  This is only one of dozens of scenarios that could result in confused land titles – and is surely something that at least some counties other than Geauga County will be quite concerned about.[18]

Indeed, the volume of assignments, and resulting burdens, that Plaintiff's injunction

---

[17]     Plaintiff's complaint in fact provides numerous instances in which neither assignor nor assignee is a defendant.  *See* FAC ¶¶ 78(c)(ii-iv), 78(d)(ii-iv), 85(a)(i-ii), 89(a)(ii), 93(a)(ii).

[18]     All of this stands in stark contrast to the many benefits that MERS provides by being the mortgagee of record.  As the mortgagee for lenders and their respective successors and assigns, MERS remains the mortgagee of record for each successive owner of the promissory note or loan.  *See* Defendants' Motion To Dismiss at 14-18. Thus, MERS significantly reduces the congestion that recording mortgage assignments causes and that often results in delays and missing assignments.  Indeed, this was precisely the situation in the 1990s, when such congestion, delays, and errors "threatened the integrity of the lending process."  Allen Jones, *Setting the Record Straight on MERS*, Mortgage Banking, May 2011 (Exhibit 13); Howard Schneider, *MERS Aids Electronic Mortgage Market*, Mortgage Banking (Jan. 1, 1997) (Exhibit 14) (before MERS, land records contained incorrect ownership information); R.K. Arnold, *Yes,There Is Life on MERS*, 11 Prob. & Prop. 33, 33-34 (1997) (before MERS, recording error rates as high as 33%) (Exhibit 15).  The burden that these assignments put on recorders resulted in errors – which are likely to return if Plaintiff obtains the state-wide injunction it seeks.

would create will present challenges that different recorders are likely to welcome, or seek to

avoid, to differing degrees.  Just the backward-looking injunction could easily require millions of

new filings.  The efforts needed to index and store those assignments will take months – perhaps

years – to undertake, delaying recording of documents unrelated to this case.  Ms. Gingerich

agreed that "it would be bad for the public interest if the recording of documents" is delayed.

Gingerich Dep. at 147.  The requested injunction will also have serious repercussions on

recorders and land records.  As Ms. Gingerich recognized, "each county would need to decide

for itself whether it wanted to have [an injunction mandating recording assignments] visited

upon them, and whether they had the capability to handle it."  *Id.* at 150.  Plaintiff fails to show

that each Ohio county would welcome any of these potential impacts of the relief he requests.

### 2.     *The Requested Injunction Will Require Pointless Assignments, Creating Burden With No Benefit.*

Plaintiff seeks an undifferentiated injunction, applying to every mortgage securing real

property in Ohio, regardless of circumstance.  Yet the circumstances matter, and show that the

relief sought may be pointless or unnecessary in many instances.  In particular, for the thousands

of loans that are paid off or extinguished, the injunction would require that a complete string of

assignments would need to be created and recorded even though the lien has been released of

record.  That exercise is not likely to be uniformly acceptable to all of the other 87 counties.

Plaintiff's no-exception injunction is bad public policy in these instances.  Gingerich

Dep. at 150-51 (not in public interest "if some lenders are required to record assignments and

others are not").  And that is a relevant consideration here, for Plaintiff must show that all 87

political instrumentalities would agree equally with Geauga County that requiring useless acts

serves their view of the public interest.  Plaintiff has not shown the Court should allow Geauga to

foist its views on other counties and deprive each of a chance to follow a different path.

### 3.     *The Requested Injunction Will Strain Many Counties' Resources.*

Counties in Ohio and across the country are experiencing severe financial stress.  County recorders have limited budgets, staff, and technology, and many would not be equipped to handle the relief Plaintiff seeks.  A massive influx of mortgage assignments to be recorded for all past loans – and the influx from an injunction mandating recording of all future assignments – would strain depleted county resources, and so many counties may not desire such an injunction.   At a minimum, Plaintiff has not shown that the counties' interests are homogeneous in this regard.

Geauga County illustrates the point.  The Recorder has only three (one part-time) employees performing recording services; Ms. Gingerich did not know what additional staff she would need to cope with the demands required to process the new assignments that would arrive if the lawsuit prevailed.   Gingerich Dep. at 298-99.   A multi-fold increase in recordings might also require recorders such as Geauga's – which does not use electronic filing (*id*. at 34) – to acquire additional physical space, computer systems, and other resources.  These additional resources would require funds – funds which many counties do not have now, or may not have in the future.  Or, if funds are available, counties may wish to devote them to other needs, such as public safety or education.  As Ms. Gingerich stated, each Ohio county needs "to do what they think is best given all the various competing needs within the county."  *Id.* at 75-76.

While Plaintiff might think that, for Geauga County, the tradeoff is worth it, there is no reason to believe every other recorder would think so.  Indeed, recording fees are set by the Ohio General Assembly, and may or may not be indicative of the cost of accepting documents for recording, never mind additional costs incurred by the injunction sought and never mind losing part of each fee to pay a private counsel for doing work the county's own attorney could do.  Whether each county's resources could accommodate, or should be devoted to accommodating, a sea change in how land recording is done is a decision that each county should make on its own.

Rule 23(b)(2) forbids opt outs and would deprive the counties of that opportunity.

### 4.    *Plaintiff's Remedy Would Create Significant Additional Work – Potentially Without Equally Compensating Revenue.*

The lack of homogeneity is further underscored by alternative methods of recordation under Ohio law.  Plaintiff appears to be believe that if it prevails in this lawsuit a separate written "assignment of mortgage" document would need to be recorded for each prior or future instance where the mortgage is assigned.  That is wrong; the Ohio Revised Code allows a creditor to record an *unlimited* number of mortgage assignments by tendering a single instrument listing all the assignments that the recorder must then reflect on the county records.  Ohio Atty. Gen. Op. 98-036 at 6 (Exhibit 16).  Plaintiff's remedy would thus would force recorders' offices to incur the burden of indexing thousands of mortgage assignment transactions – but only earn just a single recording fee for doing so.  This result is plainly is not in the interests of any other Ohio county.

As a second alternative to filing a written "assignment of mortgage" for each transaction, Ohio law allows assignments by handwritten notations on the recorded mortgage itself or by margin notation.  *Id.* at 2; Gingerich Dep. at 35-38.   Some counties may prefer these methods if assignments are required to be recorded (especially for loans paid off, or extinguished); and Ms. Gingerich testified that "each county makes their own policy" and "each county should be allowed to decide" how documents are recorded.  *Id.* at 155.  Certification of a mandatory Rule 23(b)(2) class would eliminate counties' ability to choose.[19]

*              *              *

Because a Rule 23(b)(2) class is mandatory, Ohio counties face a flood of assignments

---

[19]    Some counties may also not desire the requested injunction because it could increase borrowing costs, due to the increased expenses incurred by lenders in preparing and recording  assignments.  Ms. Gingerich testified that she would not want "another county increasing the interest rates of Geauga County through its actions."  Gingerich Dep. at 147.   However, Plaintiff's litigation choices would impose just that effect on every Ohio county.

that could cause adverse effects on land records they maintain.  Each county should be allowed

to decide for itself whether its resources and policy goals align with Plaintiff's, and should not be

forced to suffer the consequences of this case without that opportunity – especially where they

were asked to but declined to join the suit.  Plaintiff's Rule 23(b)(2) request should be denied.[20]

### C.     The Injunctive Class Should Be Denied, In The Court's Discretion.

The Court also should deny certification of an injunctive class in its discretion for the

related reason that the relief Plaintiff seeks is so plainly impractical.  Plaintiff has made no

showing (nor could it) that the 29 Defendants constitute all persons and entities necessary to

create and record all of the thousands of intervening mortgage assignments which are the alleged

object of the injunctive relief.  Plaintiff also has not explained why the relief will not, instead,

create confusion and gaps in title.  Because declaratory relief cannot be the sole object of a Rule

23(b)(2) class, *Bolin v. Sears Roebuck & Co.*, 231 F.3d 970, 978-79 & n.49 (5th Cir. 2000), and

it would not bind absentees in any event, the request to certify a Rule 23(b)(2) class is not

feasible.  Without more, this Court should decline Plaintiff's invitation to certify here.

## IV.    A RULE 23(B)(3) CLASS CANNOT BE CERTIFIED.

Plaintiff also fails to carry his twin burdens under Rule 23(b)(3) of showing that "the

questions of law or fact common to class members predominate over any questions affecting

only individual members," and that "a class action is superior to other available methods for

fairly and efficiently adjudicating the controversy."

### A.     Plaintiff Fails To Demonstrate That Common Questions Predominate.

To prove predominance Plaintiff must demonstrate that issues subject to generalized

---

[20]     *See, e.g.*, *Langbecker v. Elec. Data Sys. Corp.*, 476 F.3d 299, 306 (5th Cir. 2007) (Rule 23(b)(2)
certification inappropriate where class members "have nothing to gain from an injunction"); *Coleman*, 296 F.3d at
447-48 ("The very nature of a (b)(2) class is that it is homogeneous without any conflicting interests between the
members of the class.") (quoting *Wetzel v. Liberty Mut. Ins. Co.*, 508 F.2d 239, 256 (3d Cir. 1975)).

proof and applicable to the class as a whole predominate over those issues that are subject to

only individualized proof.  *Randleman v. Fidelity Nat'l Title Ins. Co.*, 646 F.3d 347, 352-53 (6th

Cir. 2011).  Plaintiff claims this requirement is met because the "failure to record is the central

legal tenet in this case."  <u>Motion</u> at 14.  Whether Ohio law mandates recording is a key issue –

but that does not mean predominance exists.  Virtually every case presents a "common" legal

issue, and courts routinely deny certification when other individualized questions exist, whose

resolution would predominate over the common one.[21]  That is precisely the case here.

### 1. *Plaintiff's Claims Will Cause Individual Issues To Predominate*.

First, Plaintiff has not shown how he would prove his claims, and has failed to satisfy his

burden under Rule 23(b)(3).  Plaintiff only discusses the legal theories, and does not provide "the

claims, defenses, relevant facts, and applicable substantive law" needed for the Court to

determine certification.[22]  In fact, individual issues predominate over any common legal issue.

Plaintiff's sole substantive count is for unjust enrichment – but common questions "will

***rarely, if ever***, predominate an unjust enrichment claim, the resolution of which turns on

individualized facts."  *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1275 (11th Cir. 2009)

(emphasis added).  That is true here as well.  Unjust enrichment requires proof that (1) plaintiff

conferred a benefit on defendant; (2) defendant knew of the benefit; and (3) it would be unjust to

permit the defendant to retain the benefit without payment.  *Meyer v. Chieffo*, 950 N.E.2d 1027,

---

[21] *Randleman v. Fidelity Nat'l Title Ins. Co.*, 646 F.3d 347, 350, 354 (6th Cir. 2011) (common question about insurance rates did not predominate over individual questions); *Steering Comm. v. Exxon Mobil Corp.*, 461 F.3d 598, 602 (5th Cir. 2006) (individual claims predominated even though claims arose from single incident); *Johnston v. HBO Film Mgmt., Inc.*, 265 F.3d 178, 184, 186, 190 (3rd Cir. 2001) (individual issues predominated despite common misrepresentation); *Jackson v. Motel 6 Multipurpose, Inc.*, 130 F.3d 999, (11th Cir. 1997) (individual evidence predominated despite common question regarding hotel policy); *Whittington v. United States*, 240 F.R.D. 344, 352-54 (S.D. Tex. 2006) (IRS common course of conduct did not predominate over individual issues); *Corley v. Entergy Corp.*, 220 F.R.D. 478, 482 (E.D. Tex. 2004) (common legal theory regarding statutory violation did not predominate over individual issues).

[22] *Eldridge v. Cardif Life Ins. Co.*, 266 F.R.D. 173, 175 (N.D. Ohio 2010); *see Randleman v. Fidelity Nat'l Title Ins. Co.*, 646 F.3d 347, 353 (6th Cir. 2011) ("[P]laintiff must establish that issues subject to generalized proof and applicable to the class as a whole predominate over those issues that are subject to only individualized proof.").

1039 (Ohio Ct. App. 2011).  The elements raise fact issues that vary by mortgage, loan transfer, and recording office.  There are 88 counties and 29 defendants, so thousands of evaluations are needed about what "benefits" were conferred, what was "known," and what would be "unjust."

As to the first element, Plaintiff has two theories.  He first alleges Geauga County conferred a benefit on Defendants because "MERS Members took advantage of the benefit of priority conferred by" Ohio recording statutes.  FAC ¶ 71.  *See also* Pls. Dism. Opp., at 16.[23] But stating the theory does not explain how it can be *proven* classwide; it cannot.  Each defendant recorded different mortgages, at different times, and in different numbers.  The value of having a mortgage enjoy first lien status without follow-on recording of assignments would vary depending on whether the loan was sold, whether an attempt was made to place a further lien on the property or sell it, whether the note fell into default or was paid off, and whether an attempt was made to enforce payment of the note.  Determining this "benefit" cannot be tried with common evidence.[24]

Plaintiff also alleges a benefit was conferred because recording "allowed Defendants to represent to [mortgage-backed securities] investors that the underlying mortgages were first lien mortgages, which made the MBS appear safer and more attractive to investors."  FAC ¶ 71.  Pls. Dism. Opp. at 17.  But Plaintiff fails to show any Defendant made such representations – some never securitized a single loan – and, if so, the statements and the value of the statements.[25]

---

[23]    Plaintiff states that common issues predominate because Defendants had a "scheme" to avoid recording, "with and without the use of MERS."  Motion at 13.  There is no development in any of the filings that there was any "scheme" to do anything unrelated to the MERS System (*compare* FAC ¶¶ 74-77 (conspiracy limited to MERS mortgages)), so the reference is mystifying.  Defendants reserve the right to respond further if Plaintiff is allowed to pursue this brand-new allegation, if he intends to.

[24]    Plaintiff concedes the claim can only lie when the Defendant recorded the mortgage as to a particular loan in the first place.  Motion at 17 (claim arises only out of an "economic transaction" between the parties).  This will require additional inquiries to exclude many subject loans from the class.

[25]    Plaintiff also has not anywhere alleged that the benefits supposedly conferred should be measured by the amount of recording fees, nor could it, its articulation of the benefits makes plain.

This first element requires non-common proof, precluding certification,[26] but so do the other two.  The variability of proof as to the knowledge of each Defendant is self-evident.  And whether an act is unjust, such that payment is required, will depend on the facts in particular situations.  Courts in Ohio[27] and elsewhere[28] refuse to certify unjust enrichment claims when individual fact finding is needed.  That is the case here; a Rule 23(b)(3) class should be denied.

### 2. *Defenses And Damages Issues Require Non-Common Evidence.*

The Court also should deny Rule 23(b)(3) certification because individualized evidence needed to resolve affirmative defenses and to award damages (if any) forecloses a class.[29]

As to defenses, Defendants intend to show that some or all the counties cannot recover due to the bar of laches and of limitations, which is not amenable to treatment by common evidence across the class.[30]   For example, in October 2001 – *ten years* before this suit – the Ross County Prosecuting Attorney stated that MERS "purports to eliminate the need for subsequent recorded assignments," and "cannot properly be listed as mortgagee of record, and the recorder may therefore refuse to record any documents named MERS as such."  Exhibit 17 at 1-2.  Predominance is lacking, because whether laches and limitations apply to any county can be

---

[26]     Defendants disagree that Plaintiff conferred any benefits on them where, as here, Plaintiff alleges that no assignments were recorded.  Indeed, Ms. Gingerich agreed that her office was "not entitled to receive a fee" if it never performed a service.  Gingerich Dep. at 33.

[27]     *In re Polyurethane Foam Antitrust Litig.*, 799 F. Supp. 2d 777, 786 (N.D. Ohio 2011) (individual fact questions made unjust enrichment claim inappropriate for certification); *Chesner v. Stewart Title Guar. Co.*, 2008 WL 553773, at *14 (N.D. Ohio Jan. 23, 2008) (claim "necessarily involves an investigation of the factual details of each transaction").

[28]     *Scott v. First Am. Title Ins. Co.*, 276 F.R.D. 471, 481-82 (E.D. Ky. 2011) (refusing to certify class;  unjust enrichment claim "turns on a series of individualized questions"); *Bearden v. Honeywell Int'l, Inc.*, 2010 WL 1223936, at *9-11 (M.D. Tenn. Mar. 24, 2010) (striking unjust enrichment class action claim).

[29]     *Dukes*, 131 S. Ct. at 2561 ("a class cannot be certified on the premise that [defendant] will not be entitled to litigate its statutory defenses to individual claims"); *Rodney v. Northwest Airlines, Inc.*, 146 F. App'x 783, 786 (6th Cir. 2005) (certification improper if "defendant has a defense . . . that will vary with each individual class member").

[30]     *Thorn v. Jefferson-Pilot Life Ins. Co.*, 445 F.3d 311, 322-27 (4th Cir. 2006) (statute of limitations defense would require "individualized inquiry into the information each class member actually possessed").

resolved only with facts about each county's knowledge of MERS and its operations.[31]

Even if an Ohio-wide trial could be had in a class format with respect to liability and defenses (and it cannot) individualized issues regarding remedies would preclude certification.

When a party seeks damages as a result of another's wrongful act, benefits obtained by the plaintiff as a result of the act must be deducted "in mitigation of damages."  4 Restatement of Torts (Second) § 920 (1979).[32]  Here, the non-filing of assignments *helped* each county.  As Ms. Gingerich testified, because assignments were not presented, documents did not need to be indexed, scanned and returned to filers, and "those costs were saved by not having those documents filed."  Gingerich Dep. at 155-56.  She agreed amounts saved "vary from county to county."  *Id*. at 156.  To assess this damages offset, the trier of fact would need to examine facts pertinent to each county, foreclosing certification.[33]

### B.    Plaintiff Fails To Show That A Class Action Is A Superior Method Of Adjudicating The Controversy.

Superiority is lacking, most critically, because Ohio counties have strong "interests in individually controlling" their own cases. Fed. R. Civ. P. 23(b)(3)(A).  As this Court noted: "[t]he most compelling rationale for finding superiority in a class action is . . . a 'negative value suit' . . . in which the costs of enforcement in an individual action would exceed the expected individual recovery."  *Pfaff v. Whole Foods Mkt. Grp., Inc.*, 2010 U.S. Dist. LEXIS 104784, at

---

[31]      *Thorn*, 445 F.3d at 322-27 (denying certification; statute of limitations defense); *In re OnStar Contract Litig.*, 2011 U.S. Dist. LEXIS 145846, at *68-69 (E.D. Mich. Dec. 19, 2011) (limitations defense precluded class); *Avritt v. Reliastar Life Ins. Co.*, 2009 WL 455808, at *6-7 (D. Minn. Feb 23, 2009)(limitations and laches require individualized evidence); *Gawry*, 640 F. Supp. 2d at 953 (denying certification; defenses varied across class).

[32]      *Cline v. Am. Aggregates Corp.*, 582 N.E.2d 1, 4 (Ohio Ct. App. 1989) ("The benefits rule is intended to place an injured party as nearly as possible in the position he would have occupied had it not been for the tortious conduct of another.  [Rule] restrict[s] an injured person's recovery to the harm he actually incurred"); *Ronson v. Talesnick*, 33 F. Supp. 2d 347, 354 (D.N.J. 1999)(same); *John Morrell & Co. v. Local Union 304A of United Food & Comm. Workers*, 913 F.2d 544, 557 (8th Cir. 1990) (same).

[33]      *Gawry*, 640 F. Supp. 2d at 957 (no class possible under Ohio's benefits rule; class members benefitted differently as a result of the challenged conduct).

*18 (N.D. Ohio Sept. 29, 2010) (Gwin, J.).  This rationale evaporates when a case seeks

substantial damages, as class members have incentive to litigate individually.  Here, at the

January 26, 2012, status conference, Plaintiff estimated its damages at *$1 million* – some Ohio

counties are *ten times larger*.  These potential awards give incentive for individual suits, as the

Sixth Circuit held in reversing certification.  *Pipefitters Local 636 Ins. Fund v. Blue Cross Blue*

*Shield*, 654 F.3d 618, 632 (6th Cir. 2011) ($280,000 potential claims).[34]

Second, other class members have filed suit (Rule 23(b)(3)(B)), as Brown County, Ohio

recently filed its own case with the same legal theory as this one.  Exhibit 18.   That another

county began litigation (after Plaintiff asked it to join) strongly militates against superiority.[35]

Finally, the "likely difficulties in managing a class action" (Fed. R. Civ. P. 23(b)(3)(D))

foreclose superiority.  *Pipefitters Local 636 Ins. Fund*, 654 F.3d at 632.[36]  Here, whether a lender

is liable will require a mini-trial as to whether the loan relating to a mortgage was ever

transferred, then as to whether it had been transferred a second time, or a third.  The process

would be repeated for each recorded mortgage in a county, for 29 defendants, and for 87

counties.  This morass would pose management difficulties of the most extreme order, and

Plaintiff offers no trial plan showing a class trial can be had in these circumstances.[37]

## V.      A RULE 23(B)(1)(A) CLASS CANNOT BE CERTIFIED.

Rule 23(b)(1)(A) applies if individual suits "would create a risk of . . . inconsistent or

---

[34]      *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1191 (9th Cir. 2001) (claims exceeded $50,000); *Estate of Felts v. Genworth Life Ins. Co.*, 250 F.R.D. 512, 526 (W.D. Wash. 2008) (claims averaged $50,000); *Ansari v. New York Univ.*, 179 F.R.D. 112, 116 (S.D.N.Y. 1998) (potential $90,000 award).

[35]      *In re Medtronic, Inc.*, 1998 U.S. Dist. LEXIS 23720, at *37-38 (S.D. Ohio Feb. 10, 1998); *Palmer v. Stassinos*, 2006 U.S. Dist. LEXIS 68977, at *12 (N.D. Cal. Sept. 14, 2006); *Reap v. Cont'l Cas. Co.*, 199 F.R.D. 536, 549 (D.N.J. 2001).

[36]      Plaintiff's reliance on *Pipefitters* is misplaced:  the Sixth Circuit *reversed* certification, finding no superiority where the district court ruled on a common legal issue and the questions remaining for trial were individualized.  654 F.3d at 631-32.  The same situation would exist here if Defendants' motion to dismiss is denied.

[37]      *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1192 (9th Cir. 2001) (no superiority if "each class member has to litigate numerous and substantial separate issues to establish his or her right to recover").

varying adjudications . . . that would establish incompatible standards of conduct for the party opposing the class."  The Rule applies if a party is obliged to treat class members alike (a utility towards customers or a government imposing a tax).  *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614 (1997).  Certification is not proper if two actions "would raise the same question of law," however.  *Taylor v. CSX Transp., Inc.*, 264 F.R.D. 281, 292-93 (N.D. Ohio 2007).  The Sixth Circuit reversed a class with a common "question of legality under state law," because the Rule is not concerned with different results but to protect defendants from "conflicting affirmative duties."  *Pipefitters*, 654 F.3d at 633.  Rule 23(b)(1)(A) applies only if a defendant could not <u>comply</u> with two inconsistent judgments.  *Taylor*, 264 F.R.D. at 292-93.

That risk does not exist.  If a class is denied, and counties sued in their respective courts, Defendants could comply with individual judgments without "conflicting affirmative duties."  Thus, a holding that recording of mortgages or assignments was required in Geauga County would not create conflicting duties if a Cuyahoga County court reached the opposite conclusion. The possibility that different courts might issue different rulings about Ohio law is not a basis for allowing certification under Rule 23(b)(1)(A).  *Pipefitters*, 654 F.3d at 633.[38]

## CONCLUSION

For these reasons, the Court should deny Plaintiff's Motion for Class Certification.

---

[38]    Differing rulings are irrelevant because "any inconsistent theories of law applied by trial courts . . . would be reviewed by appellate courts."  *Taylor*, 264 F.R.D. at 293.

Respectfully submitted,


/s/ Thomas M. Hefferon
Thomas M. Hefferon (admitted *pro hac vice*)
Joseph F. Yenouskas (admitted *pro hac vice*)
GOODWIN PROCTER LLP
901 New York Ave., NW, Suite 900
Washington DC 20001
Telephone: (202) 346-4000
Facsimile: (202) 346-4444
Email: thefferon@goodwinprocter.com
         jyenouskas@goodwinprocter.com


James S. Wertheim (0029464)
Barbara Friedman Yaksic (0014338)
Candice L. Musiek (0085924)
MCGLINCHEY STAFFORD PLLC
25550 Chagrin Boulevard, Suite 406
Cleveland, OH 44122-4640
Telephone: (216) 378-9905
Facsimile: (216) 378-9910
E-mail:  jwertheim@mcglinchey.com
         byaksic@mcglinchey.com
         cmusiek@mcglinchey.com


*Attorneys for Defendants Bank of America,
CCO Mortgage Corporation, EverBank
(mistakenly named as EverHome Mortgage
Company in the original Complaint), RBS
Citizens, N.A., and RBS Securities Inc.*

/s/ Robert M. Brochin
Robert M. Brochin (admitted *pro hac vice*)
Andrew B. Boese (admitted *pro hac vice*)
MORGAN, LEWIS & BOCKIUS LLP
200 South Biscayne Boulevard, Suite 5300
Miami, FL 33131-2339
Telephone: (305) 415-3456
Facsimile: (305) 415-3001
Email: rbrochin@morganlewis.com
         aboese@morganlewis.com


*Attorneys for Defendants MERSCORP, Inc.
and Mortgage Electronic Registration
Systems, Inc.*

s/ Jeremy Gilman
Jeremy Gilman (0014144)
Kari B. Coniglio (0081463)
BENESCH, FRIEDLANDER, COPLAN &
ARONOFF LLP
200 Public Square, Suite 2300
Cleveland, OH 44114-2378
Telephone: (216) 363-4565
Facsimile: (216) 363-4588
Email: jgilman@beneschlaw.com
         kconiglio@beneschlaw.com


*Attorneys for Defendants MERSCORP, Inc. and
Mortgage Electronic Registration Systems, Inc.*

s/ P. Russell Perdew
Thomas J. Cunningham (*pro hac vice*)
P. Russell Perdew (*pro hac vice*)
LOCKE LORD LLP
111 South Wacker Drive
Chicago, Illinois 60606
Telephone: (312) 443-1712
Facsimile: (312) 896-6712
Email: rperdew@lockelord.com


David A. Wallace (0031356)
CARPENTER, LIPPS & LELAND LLP
280 Plaza, Suite 1300
280 North High Street
Columbus, Ohio 43215
Telephone: (614) 365-4100
Facsimile: (614) 365-9145
Email: wallace@carpenterlipps.com


*Attorneys for Defendants GMAC Mortgage,*
*LLC (f/k/a GMAC Mortgage Corporation and*
*improperly named herein as GMAC Residential*
*Funding Corporation) and U.S. Bank, N.A.*


/s/ Hugh E. McKay
Hugh E. McKay (0023017)
PORTER WRIGHT MORRIS & ARTHUR
LLP
925 Euclid Avenue, Suite 1700
Cleveland, Ohio 44115
Telephone: 216-443-9000
Facsimile: 216-443-9011
Email:  hmckay@porterwright.com


*Attorneys for Defendant Deutsche Bank*
*National Trust Company*


/s/ Michael H. Carpenter
Michael H. Carpenter (0015733)
Katheryn M. Lloyd (0075610)
CARPENTER LIPPS & LELAND LLP
280 Plaza, Suite 1300
280 North High Street
Columbus, Ohio 43215
Telephone: (614) 365-4100
Facsimile: (614) 365-9145
Email: carpenter@carpenterlipps.com


*Attorneys for Defendant Nationwide*
*Advantage Mortgage Company*


/s/ Todd Kartchner
Todd Kartchner (*pro hac vice*)
FENNEMORE CRAIG P.C.
3003 North Central Avenue, Suite 2600
Phoenix, AZ 85012
Telephone: (602) 916-5000
Facsimile: (602) 916-5999
Email: tkartchner@fclaw.com


*Attorney for United Guaranty Corporation*

/s/ William D. Kloss, Jr.
William D. Kloss, Jr. (0040854)
VORYS, SATER, SEYMOUR AND PEASE LLP
52 East Gay Street
P.O. Box 1008
Columbus, Ohio 43216-1008
Telephone: (614) 464-6360
Facsimile: (614) 719-4807
Email: wdklossjr@vorys.com


Marcel C. Duhamel (0062171)
VORYS, SATER, SEYMOUR AND PEASE LLP
2100 One Cleveland Center
1375 East Ninth Street
Cleveland, Ohio 44114-1724
Telephone: (216) 479-6100
Facsimile: (216) 479-6060
Email: mcduhamel@vorys.com


*Attorneys for Defendant, Corinthian Mortgage Corporation*


/s/ Kip T. Bollin
Kip T. Bollin (0065275)
James F. DeFeo (0079222)
THOMPSON HINE LLP
3900 Key Center
127 Public Square
Cleveland, OH 44114-1291
Telephone: (216) 566-5500
Facsimile: (216) 566-5800
Email: kip.bollin@thompsonhine.com
       jim.defeo@thompsonhine.com


*Attorneys for PMI Mortgage Services Co.*


/s/ Thomas V. Panoff
Lucia Nale (admitted *pro hac vice*)
Thomas V. Panoff (admitted *pro hac vice*)
MAYER BROWN LLP
71 South Wacker Drive
Chicago, Illinois 60606
Telephone: (312) 701-8821
Facsimile: (312) 706-8297
Email: lnale@mayerbrown.com
       tpanoff@mayerbrown.com


Amanda Martinsek (0058567)
Marquettes D. Robinson (0074268)
THACKER MARTINSEK LPA
2330 One Cleveland Center
1375 East 9th Street
Cleveland, Ohio, 44114
Telephone: (216) 456-3840
Facsimile: (216) 456-3852
Email: amartinsek@tmlpa.com
       mrobinson@tmlpa.com


*Attorneys for CitiMortgage, Inc., Citigroup Inc. and Citibank, N.A.*


/s/ Joseph A. Castrodale
Joseph A. Castrodale (0018494)
Richik Sarkar (0069993)
Matthew T. Wholey (0086550)
ULMER & BERNE LLP
Skylight Office Tower
1660 W. 2nd Street, Ste. 1100
Cleveland, Ohio 44113-1448
Telephone: (216) 583-7000
Facsimile: (216) 583-7353
Email: jcastrodale@ulmer.com
       rsarkar@ulmer.commwholey@ulmer.c
       om


*Attorneys for Defendant HSBC Bank U.S.A., N.A.*

/s/ Barbara Friedman Yaksic
James S. Wertheim (0029464)
Barbara Friedman Yaksic (0014338)
Candice L. Musiek (0085924)
MCGLINCHEY STAFFORD PLLC
25550 Chagrin Boulevard, Suite 406
Cleveland, Ohio 44122-4640
Telephone: (216) 378-9905
Facsimile: (216) 378-9910
E-mail:  jwertheim@mcglinchey.com
            byaksic@mcglinchey.com
            cmusiek@mcglinchey.com

*Attorneys for CoreLogic Real Estate Solutions,
LLC and SunTrust Mortgage, Inc. and co-
counsel for Defendants Bank of America
Corporation, CCO Mortgage Corporation,
Everhome Mortgage Company, and RBS
Citizens, N.A., and RBS Securities Inc.*

/s/ Scott A. King
Scott A. King (0037582)
Terry W. Posey, Jr. (0078292)
THOMPSON HINE, LLP
Austin Landing I
10500 Innovation Drive, Suite 400
Dayton, Ohio 45342-4934
Telephone: (937) 443-6560
Facsimile: (937) 443-6635
Email: Scott.King@ThompsonHine.com
            Terry.Posey@ThompsonHine.com

*Attorneys for Defendant Wells Fargo Bank,
N.A.*

/s/ Stephen M. O'Bryan
Stephen M. O'Bryan (0009512)
W. Stuart Dornette (0002955)
Beth A. Bryan (0082076)
TAFT STETTINIUS & HOLLISTER LLP
200 Public Square, Suite 3500
Cleveland, Ohio 44114-2302
Telephone: (216) 241-2838
Facsimile: (216) 241-3707


R. Bruce Allensworth (*pro hac vice*)
Brian M. Forbes (motion for *pro hac vice* pending)
Ryan M. Tosi (*pro hac vice*)
K&L GATES LLP
State Street Financial Center
One Lincoln Street
Boston, MA 02111
Telephone: (617) 261-3100
Facsimile: (617) 261-3175
E-mail: bruce.allensworth@klgates.com
            brian.m.forbes@klgates.com
            ryan.tosi@klgates.com

*Attorneys for Defendants Goldman
Sachs Mortgage Company and GS Mortgage
Securities Corp.*

s/ Anthony J. Coyne
Anthony J. Coyne (0039605)
Michael P. Quinlan (0066718)
MANSOUR, GAVIN, GERLACK & MANOS
CO., LPA
55 Public Square, Suite 2150
Cleveland, OH 44113-1994
Telephone: (216) 523-1500
Facsimile: (216) 523-1705
Email: acoyne@mggmlpa.com
            mquinlan@mggmlpa.com


Max B. Chester
Foley & Lardner LLP
777 East Wisconsin Ave, Suite 3800
Milwaukee, WI  53201
Telephone: (414) 297-5573
Facsimile: (414) 297-4900
Email: mchester@foley.com


*Attorneys for Defendant MGIC Investor
Services Corp.*

/s/ Dale H. Markowitz
Dale H. Markowitz, Esq. (#0016840)
Todd C. Hicks, Esq. (#0063255)
THRASHER, DINSMORE & DOLAN
100 7th Avenue, Suite 150
Chardon, Ohio 44024-1079
Telephone: (440) 285-2242
Facsimile: (440) 2859423
Email: dmarkowitz@tddlaw.com
      thicks@tddlaw.com

/s/ Thomas Gacse
Thomas Gacse, Esq. (#0008715)
Home Savings and Loan Company of Youngstown
275 Federal Plaza West
Youngstown, Ohio 44501-1111
Email: TGacse@homesavings.com

*Attorneys for Defendant Home Savings and
Loan Company of Youngstown*

/s/ Brett A. Wall
Daniel R. Warren (0054595)
Brett A. Wall (0070277)
Lisa M. Ghannoum (0080950)
BAKER & HOSTETLER LLP
PNC Center
1900 East 9th Street, Suite 3200
Cleveland, Ohio 44114-3482
Telephone: 216.621.0200
Facsimile: 216.696.0740
Email: dwarren@bakerlaw.com
      bwall@bakerlaw.com
      lghannoum@bakerlaw.com

*Attorneys for Defendants Fifth Third Bank,
KeyBank National Association, and The
Huntington National Bank*

/s/ Nelson M. Reid
Nelson M. Reid  (0068434)
Daniel C. Gibson (0080129)
Bricker & Eckler LLP
100 South Third Street
Columbus, Ohio  43215
Telephone: (614) 227-2300
Facsimile: (614) 227-2390
Email: nreid@bricker.com
      dgibson@bricker.com

Mary Beth Hogan, Esq. (pro hac vice)
Dino L. LaVerghetta, Esq.
Debevoise & Plimpton, LLP
919 Third Avenue
New York, NY 10022
Telephone: (212) 909-6996
Facsimile: (212) 909-6836
Email: mbhogan@debevoise.com
      dllaverg@debevoise.com

*Attorneys for Defendant
JPMorgan Chase Bank, N.A.*

Dated:  May 7, 2012

LIBW/1823523.1

## <u>CERTIFICATE OF SERVICE</u>

I certify that on May 7, 2012, the foregoing document was filed with the Court's CM/ECF, which has generated and delivered electronic notice of filing to all counsel of record who have consented to electronic service. I further certify that I have caused to be served by U.S. Mail, postage prepaid, any counsel of record who have not consented to electronic service.

*/s/ Thomas M. Hefferon*
Thomas M. Hefferon