# **Exhibit 16**



**Attorney General**
**Betty D. Montgomery**

# Opinion 98-036

## November 17, 1998

The Honorable Mark C. Fleegle
Muskingum County Prosecuting Attorney
27 North Fifth Street
P.O. Box 1187
Zanesville, Ohio 43702-1187

Dear Prosecutor Fleegle:

We have received your request for an opinion regarding the proper application of provisions of R.C. Chapter 5301 that authorize a county recorder to require separate instruments for certain kinds of transactions involving real property. Your question involves the scope of this authority in situations where a large number of mortgages, leases, or easements are assigned, released, or canceled at the same time by the holder of such interests (hereafter, multiple transactions). Specifically, you ask whether the pertinent provisions of R.C. Chapter 5301 authorize a county recorder to require that a separate instrument be filed for each mortgage, lease, or easement involved in a multiple transaction.

You relate that, in some counties where a requirement to use separate instruments is in effect, the county recorder requires a "separate instrument" for each individual mortgage, lease, or easement involved in a multiple transaction. In other counties, however, the term "separate instrument" is interpreted as requiring an instrument that is separate from marginal entries made on the preexisting records of all the various mortgages, leases, or easements involved. In these latter counties, a single instrument may list any number of mortgages, leases, or easements and still satisfy the "separate instrument" requirement.

These two interpretations result in a significant difference in the recording fees that are charged for a multiple transaction. You have described, by way of example, a situation in which the holder of ten mineral leases desires to assign them all to another entity. The provisions governing fees for services of the county recorder, including the recording of such a transaction, are prescribed in R.C. 317.32.[1] If this transaction must be recorded by ten "separate instruments," each assigning a single lease, the recording fee would be at least $140.00, and possibly more, depending on the size of the individual instruments. *See* R.C. 317.32(A). If, however, the assignment of all ten leases may be recorded by means of a single, two-page "separate instrument," the fee would be only $34.00. *See* R.C. 317.32(A), (D). In addition to the difference in fees, the interpretation of the term "separate instrument" also has an impact on the number of documents that must be processed by the county recorder's office. Because of the different consequences of the two interpretations, you have asked for an opinion regarding the meaning of the provisions of R.C. Chapter 5301 that authorize a county recorder to require the use of a "separate instrument" for various transactions.

We note initially that the powers and duties of a county recorder are limited to those prescribed by statute, or necessarily implied therefrom. *State ex rel. Preston v. Shaver*, 172 Ohio St. 111, 114, 173 N.E.2d 758, 760 (1961); *accord* 1997 Op. Att'y Gen. No. 97-055 at 2-335; 1988 Op. Att'y Gen. No. 88-077 at 2-374; 1940 Op. Att'y Gen. No. 2857, vol. II, p. 911, at 913. *See generally* Ohio Const. art. X, 1 ("[t]he general assembly shall provide by general law for the organization and government of counties"). The general powers and duties of a county recorder are set out in R.C. Chapter 317. Powers and duties

GCR-000452

specifically related to the recording of written instruments for the conveyance or encumbrance of real property are set out in R.C. Chapter 5301. Your question requires examination of the particular provisions of R.C. Chapter 5301 that authorize a county recorder to require a "separate instrument" for the execution and recording of certain transactions.

Grants of authority to require a "separate instrument" are provided in several statutes in R.C. Chapter 5301. R.C. 5301.28 authorizes the county recorder to require that "all satisfactions of mortgages be made by separate instrument." Pursuant to R.C. 5301.32, the recorder may require that "all assignments and partial releases of mortgages be by separate instruments,"[2] and, pursuant to R.C. 5301.35, that "all waivers of priority of mortgages be made by separate instrument." The county recorder also may require that "all cancellations, partial releases, and assignments" of leases and land contracts "be by deed or other separate instrument." R.C. 5301.33 (leases); R.C. 5301.331 (land contracts).[3] This authority may be exercised only in a county in which "the county recorder has determined to use the microfilm process as provided by [R.C. 9.01]."[4] See R.C. 5301.28; R.C. 5301.32-.331; R.C. 5301.35. Each statute further provides that the "original instrument bearing the proper endorsement may be used" as a separate instrument. Id. There is, however, no statutory definition of the term "separate instrument," for purposes of these statutes.[5]

In the absence of a particularized definition, the words and phrases of a statute are to be "read in context and construed according to the rules of grammar and common usage." R.C. 1.42. In addition, when the same word or phrase is used more than once in a statute or a body of statutes, in relation to the same subject and purpose, it is assumed to have the same meaning throughout. In re Lord Baltimore Press, Inc., 4 Ohio St. 2d 68, 73, 212 N.E.2d 590, 594 (1965); Rhodes v. Weldy, 46 Ohio St. 234, 20 N.E. 461 (1889) (syllabus, paragraph two).

In common legal usage, the term "instrument" is used to denote a written, legal document. See Black's Law Dictionary 801 (6th ed. 1990); Webster's Third New International Dictionary 1172 (unabridged ed. 1993). The term "separate" indicates something that is distinct, that has an existence apart from others. See Black's Law Dictionary at 1364; Webster's Third New International Dictionary at 2069. A "separate instrument" may thus generally be understood as a written, legal document that exists distinct and apart from other documents. The specific meaning of "separate instrument," however, can be understood only in relationship to the "others" from which that instrument is distinct and apart. It is possible to identify this relationship only from the context in which the term is used.

We turn, therefore, to an examination of the context in which the term "separate instrument" appears in R.C. 5301.28, R.C. 5301.32-.331, and R.C. 5301.35. These, and other closely related statutes in R.C. Chapter 5301, establish a general statutory scheme for the execution and recording of various transactions that have an effect on legal interests established in previously recorded instruments. The term "separate instrument" appears throughout these statutes, and not just in the provisions which grant authority to require the use of a "separate instrument."

This statutory scheme has long provided three mechanisms for executing transactions that affect a prior transaction that is documented by a recorded instrument. Such transactions may be executed by (1) writing upon the margin of the record of the original instrument; (2) writing upon the original instrument itself; or (3) executing an entirely new instrument. The permissible methods of recording the transaction depends upon the method of execution. See 1961 Ohio Laws 999 (Am. H.B. 31, eff. Aug. 11, 1961) (enacting R.C. 5301.331 and amending R.C. 317.08, R.C. 5301.01, and R.C. 5301.25, relative to the acknowledgment, recording, cancellation, release, and assignment of land contracts); 1943-1944 Ohio Laws 405 (Am. S.B. 147, approved June 3, 1943) (enacting G.C. 8546-5 - now R.C. 5301.33 - relative to the cancellation, partial release, and assignment of leases); 1927 Ohio Laws 6-8 (H.B. 41, 42, and 43,

GCR-000453

approved Feb. 28, 1927) (amending G.C. 8546 and enacting G.C. 8546-3, G.C. 8546-4, and G.C. 8547-1 - now R.C. 5301.28, R.C. 5301.31, R.C. 5301.32, and R.C. 5301.35, respectively - relative to the assignment, partial release, satisfaction, and waiver of priority of mortgages); *see also* 1943 Op. Att'y Gen. No. 5805, p. 58, at 60-61 (describing this statutory scheme with respect to mortgages). Pursuant to the first method of executing these transactions, the holder of the affected property interest writes and signs an entry in the margin of the record of the original instrument. For purposes of recordation, the county recorder attests the signature of the holder of the interest. The newer transaction is thus both executed and recorded by making an entry directly on the record of the prior transaction. *See* R.C. 5301.28; R.C. 5301.31; R.C. 5301.35 (governing transactions affecting mortgages); *see also* R.C. 5301.33-.331 (governing transactions affecting leases and land contracts). Pursuant to the second method of execution, the holder of the property interest writes and signs an entry in the margin of the original instrument itself. The entry may then be recorded in one of two ways. The county recorder may copy the entry onto the margin of the record of the original instrument, or the county recorder may record the entire endorsed original as a "separate instrument." *See* R.C. 5301.28 (mortgages); R.C. 5301.31 (same); R.C. 5301.32 (same); R.C. 5301.35 (same); *see also* R.C. 5301.33-.331 (leases and land contracts). Pursuant to the third method, the appropriate transaction is set out in a completely new instrument, which is signed by the holder of the interest, and acknowledged and witnessed as provided in R.C. 5301.01. This new "separate instrument" is then recorded by the county recorder. *See* R.C. 5301.28 (mortgages); R.C. 5301.32 (same); R.C. 5301.35 (same); R.C. 5301.33-.331 (leases and land contracts).

Thus, for purposes of recording a transaction that affects legal rights or obligations documented in a previously recorded instrument, the term "separate instrument" is used in contradistinction to an entry made directly on the preexisting record. A separate instrument may be created by writing on the original instrument itself or by creating an entirely new instrument. What matters is that a transaction executed by such a "separate instrument" is recorded by making a new recording of this "separate instrument," rather than by writing upon the preexisting record of the original instrument. Thus, a "separate instrument," in the context of this statutory scheme, means an instrument that exists distinct and apart from a marginal entry on the record of the original instrument. The term has no bearing upon the number of transactions that may executed by means of the "separate instrument." It refers only to the physical separateness of the instrument from the preexisting record of the original transaction.

The specific provisions that authorize a county recorder to require the use of a separate instrument were enacted in 1973, long after the above described provisions governing the methods of execution and recordation. *See* 1973 Ohio Laws, Part I, 1014 (Am. Sub. S.B. 341, eff. Dec. 17, 1973) (amending, *inter alia*, R.C. 5301.28, R.C. 5301.31-.331, and R.C. 5301.35 for the purpose of allowing county recorders using the microfilm process "to permit that all actions affecting recorded mortgages, leases, land contracts, and other instruments pertaining to real estate may be by separate written instrument"). In the absence of any indication to the contrary, there is a presumption that the General Assembly intended the term "separate instrument" to have the same meaning throughout each statute. *See Brennaman v. R.M.I. Co.*, 70 Ohio St. 3d 460, 464, 639 N.E.2d 425, 429 (1994) (recognizing "the assumption that the General Assembly is aware of the meaning previously ascribed to words when enacting new legislation"); *see also Rhodes v. Weldy* (syllabus, paragraph two); *accord In re Lord Baltimore Press, Inc.*, 4 Ohio St. 2d at 73, 212 N.E.2d at 594. The presumption, therefore, is that the term "separate instrument," as it appears in Am. Sub. S.B. 341, was also used in contradistinction to marginal entries on preexisting records. This presumption is supported by several factors.

First, in addition to authorizing a county recorder to require separate instruments for various transactions, Am. Sub. S.B. 341 amended R.C. 5301.36 to provide that a county recorder who exercised this authority would no longer be required to maintain space in the margins of the original records of mortgages for entries of satisfaction. *See* 1973 Ohio Laws, Part I, at 1021. Second, the authority to

GCR-000454 006

require the use of separate instruments is limited to county recorders using the microfilm process. Before this statutory grant of authority, "separate instruments" could be required only in situations where "the county recorder in making photostatic or photographic records leaves no margin suitable for the entering or recording of assignments, cancellations, or further transactions relating to the instruments so recorded, or whenever such margin is completely filled with … transactions." R.C. 5301.37. In other situations, the method of execution and recordation was chosen by the parties to the transaction, not by the county recorder. *See, e.g.,* 1966 Op. Att'y Gen. No. 66-013 (discussing the fee to be charged to a person seeking to record by "separate instrument," and in addition, to have the county recorder enter a reference on the margin of the record of a previously recorded instrument). Use of the microfilm process, however, makes marginal entries on the original record impracticable, if not impossible. Thus, the apparent purpose of Am. Sub. S.B. 341 was to grant county recorders using the microfilm process the authority to refuse to make marginal entries, and to require the recording of a separate instrument instead.

The language, legislative history, and general context of R.C. 5301.28, R.C. 5301.32-.331, and R.C. 5301.35 thus indicate that, throughout these statutes, the term "separate instrument" is used consistently to mean an instrument that exists and is recorded distinct and apart from the record of a previously recorded instrument. Accordingly, pursuant to the specific provisions of R.C. 5301.28, R.C. 5301.32-.331, and R.C. 5301.35 that authorize a county recorder to require that certain transactions be "by separate instrument," a county recorder may require that all satisfactions, assignments, partial releases, and waivers of priority of mortgages, and all cancellations, assignments, and partial releases of leases and land contracts be recorded by separate instrument, rather than by marginal entry on the record of any instrument documenting the original transaction. A county recorder has no authority under these specific provisions, however, to limit the number of satisfactions, cancellations, assignments, partial releases, or waivers of priority that may be executed and recorded by means of a single instrument.

We return now to the issue raised in note 3, *supra,* concerning transactions affecting easements and certain types of mineral leases. Easements are not expressly included in the provisions of R.C. 5301.28, R.C. 5301.32-.331, and R.C. 5301.35. Leases are governed generally by the provisions of R.C. 5301.33. However, certain types of mineral leases, specifically natural gas and oil leases, are subject to special statutory provisions. *See, e.g.,* R.C. 5301.09 (recording requirements); R.C. 5301.332 (forfeiture and cancellation). Accordingly, a question arises as to whether a county recorder's authority to require the use of separate instruments extends to transactions affecting easements or natural gas and oil leases.

We look first at assignments, partial releases, or cancellations of easements. An easement is an interest in land that is created by express grant, implication, prescription, or estoppel. *See Campbell v. Great Miami Aerie No. 2309, Fraternal Order of Eagles,* 15 Ohio St. 3d 79, 80, 472 N.E.2d 711, 713 (1984) ("[t]his court has previously recognized that an easement may be created by specific grant, prescription, or implication"); *Kamenar R.R. Salvage, Inc. v. Ohio Edison Co.,* 79 Ohio App. 3d 685, 689, 607 N.E.2d 1108, 1111 (Union County 1992) ("[a]n easement can be created by grant, implication, prescription, or estoppel"); 1988 Op. Att'y Gen. No. 88-054, at 2-249 n.3. Easements by implication, prescription, and estoppel are easements that are recognized by the courts in situations where there is no express grant.[6] Since these easements are not created by written instruments, it follows that there is no preexisting record upon which the county recorder could make a marginal notation. If, at a future time, parties wish to record a transaction that affects the rights or obligations attendant to an easement created by implication, prescription, or estoppel, the parties would, of necessity, have to execute and record a separate instrument. Thus, the authority of the county recorder to require use of a separate instrument is not at issue under such circumstance.

When an easement is created by express grant, however, "it is necessary that a grant be included in the

GCR-000455

language of a deed, lease, or the like." *Kamenar R.R. Salvage, Inc.*, 79 Ohio App. 3d at 689, 607 N.E.2d at 1111; s*ee also* R.C. 1335.04 (providing that no interest in land "shall be assigned or granted except by deed, or note in writing"). *See, e.g., Jolliff v. Hardin Cable Television Co.*, 26 Ohio St. 2d 103, 269 N.E.2d 588 (1971) (easement granted by lease); *Junction R.R. Co. v. Ruggles*, 7 Ohio St. 1 (1857) (easement granted by deed); *James Fin. Corp. v. Country Club Villages of America, Inc.*, No. 7569, 1975 Ohio App. LEXIS 8026 (Ct. App. Summit County Apr. 2, 1975) (easements granted by mortgages); *Irish Bldg & Loan Co. v. Wright*, 8 Ohio Op. 234, 23 Ohio Law Abs. 530 (C.P. Hamilton County 1937) (same). In addition, instruments containing an express grant of an easement must be recorded. *See* R.C. 5301.25. It follows that the recording of a transaction that affects an easement created by express grant will be governed by the statutes applicable to the type of instrument in which the express grant appears. Thus, a county recorder has statutory authority to require "separate instruments" for transactions affecting easements that have been granted by mortgages, leases, or land contracts. *See* R.C. 5301.28; R.C. 5301.32-.331; R.C. 5301.35. There is, however, no statutory authority to require "separate instruments" with respect to transactions that affect easements created by written instruments other than mortgages, leases, or land contracts.

We turn now to an examination of the recorder's authority with respect to transactions affecting natural gas and oil leases. The assignment, partial release, and cancellation of leases generally are governed by the provisions of R.C. 5301.33. Natural gas and petroleum leases, however, are governed by the provisions of R.C. 5301.09 and R.C. 5301.332. R.C. 5301.09 requires, *inter alia*, that assignments of all natural gas and petroleum leases be "filed for record and recorded in [the] lease record." The statute further provides that, under described circumstances, assignments must contain certain specified information, such as permanent parcel numbers, special information pertinent to sectional indexes, and the mailing address of the lessor and lessee or assignee. There is no provision in R.C. 5301.09, however, that authorizes a county recorder to require a separate instrument for the assignment of a natural gas or oil lease. R.C. 5301.332 provides a mechanism for a lessor to record the forfeiture of a natural gas or oil lease in situations where the well is non-producing, and terms of the lease have been violated or the term of the lease has expired. The statute requires that an affidavit of forfeiture be recorded and that a cancellation entry be made on the record of the original lease. In counties where the county recorder uses the microfilm process, the county recorder may require that the entry of cancellation be made on the affidavit of forfeiture.[7]

In examining the above provisions, we note that nothing in R.C. 5301.09 pertains to the method for recording natural gas or oil leases. R.C. 5301.332 prescribes the method for recording the cancellation of such leases only with respect to situations involving forfeiture. Consistent with the general rule for interpreting special and general statutes, the Ohio Supreme Court has stated that natural gas and oil leases are not taken out of the operation of the general statutes governing leases, except to the extent specifically provided by the special statutes pertaining to natural gas and oil leases. *See Langmede v. Weaver*, 65 Ohio St. 17, 30-31, 60 N.E. 992, 998 (1901); *Northwestern Ohio Natural Gas Co. v. City of Tiffin*, 59 Ohio St. 420, 441, 54 N.E. 77, 82 (1899); *see also* R.C. 1.51 ("[i]f a general provision conflicts with a special or local provision, they shall be construed, if possible, so that effect is given to both. If the conflict between the provisions is irreconcilable, the special or local provision prevails"). Thus, assignments of natural gas and oil leases are subject to the provisions of R.C. 5301.33, and a county recorder who uses the microfilm process has authority to require that such assignments be by separate instrument. Pursuant to R.C. 5301.33, the county recorder has the same authority with respect to cancellations of natural gas or oil leases, provided the cancellation is for reasons other than those covered by R.C. 5301.332.

It is, therefore, my opinion, and you are hereby advised that:

GCR-000456

Pursuant to the specific provisions of R.C. 5301.28, R.C. 5301.32-.331, and R.C. 5301.35 that authorize a county recorder to require that certain transactions be "by separate instrument," a county recorder who uses the microfilm process may require that all satisfactions, assignments, partial releases of mortgages, or of any easements granted therein; all waivers of priority of mortgages; and all cancellations, assignments, and partial releases, of leases and land contracts, or of any easements granted therein, be recorded by separate instrument, and not by marginal entry made on the record of an instrument documenting the original transaction.

A county recorder has no authority, under the specific provisions of R.C. 5301.28, R.C. 5301.32-.331, and R.C. 5301.35 that authorize a county recorder to require that certain transactions be "by separate instrument," to limit the number of satisfactions, cancellations, assignments, partial releases, or waivers of priority that may be executed and recorded by means of a single instrument.

Respectfully,

**BETTY D. MONTGOMERY**
**Attorney General**

---

## ENDNOTES

[1]  The pertinent provisions of R.C. 317.32 state as follows:

> The county recorder shall charge and collect the following fees for the recorder's services:
>
> (A) For recording and indexing an instrument when the photocopy or any similar process is employed, fourteen dollars for the first two pages and four dollars for each subsequent page....
>
> ....
>
> (D) For entering any marginal reference by separate recorded instrument, two dollars for each marginal reference set out in that instrument, in addition to the recording fee set forth in division (A) of this section....

[2]  Nothing in the language of R.C. 5301.32 indicates that use of the plural, "separate instruments," is intended as a substantive distinction. *See generally* R.C. 1.43(A) ("[t]he singular includes the plural, and the plural includes the singular"); *Wingate v. Hordge*, 60 Ohio St. 2d 55, 58, 396 N.E.2d 770, 772 (1979) (absent some indication to the contrary in the statutory language, the rule that the singular includes the plural and *vice versa* should be followed).

[3]  Your inquiry also includes transactions affecting easements and mineral leases. Easements are not expressly mentioned in any of the cited statutes, and some types of mineral leases are subject to special statutory requirements. *See, e.g.,* R.C. 5301.09 (governing natural gas and petroleum leases); R.C. 5301.332 (same). For ease of discussion, we will first discuss the meaning of "separate instrument" in

GCR-0004572006

the statutes governing mortgages, leases, and land contracts, and then consider the county recorder's authority to require use of a separate instrument for the particular transactions covered by R.C. 5301.09 and R.C. 5301.332.

[4] R.C. 9.01 provides the general authority, procedures, and standards by which various public officers, including county recorders, may maintain records by microfilm and other technologies. Your request raises no issue regarding use of the microfilm process as a precondition to the authority to require the use of separate instruments.

[5] A statutory definition of "separate instrument" does exist for purposes of R.C. 5301.46. This statute governs recording requirements in counties that maintain sectional indexes. Pursuant to R.C. 5301.46 (A), "'separate instrument' means an instrument other than the writing in which was created the interest in real property that is being assigned, released, or canceled." Application of this definition is expressly limited to R.C. 5301.46, however. Additionally, R.C. 5301.28, 5301.32-.331, and R.C. 5301.35 all expressly provide that the "original document" may be used as a "separate instrument" for purposes of those statutes.

[6] An easement may be implied by the existence of certain facts relative to the use and conveyance of a particular property. *See Ciski v. Wentworth*, 122 Ohio St. 487, 172 N.E. 276 (1930) (syllabus, paragraph one) (setting out the necessary criteria for an easement by implication). An easement by prescription is created by adverse use of the land of another for a period of twenty-one years. R.C. 2305.04; *Pavey v. Vance*, 56 Ohio St. 162, 46 N.E. 898 (1897) (syllabus, paragraph two); *Katz v. Metropolitan Sewer Dist.*, 117 Ohio App. 3d 584, 589, 690 N.E.2d 1357, 1360 (Hamilton County 1997). An easement by estoppel will be recognized when the claimant of an easement has relied to his detriment upon misrepresentations or fraud of the landowner with respect to the easement. *See Kamenar R.R. Salvage, Inc. v. Ohio Edison Co.*, 79 Ohio App. 3d 685, 690, 607 N.E.2d 1108, 1111 (Union County 1992).

[7] This latter provision was added to R.C. 5301.332 by the same legislation that enacted the various statutory provisions authorizing the requirement of a "separate instrument." *See* 1973 Ohio Laws, Part I, 1014, 1018-20 (Am. Sub. S.B. 341, eff. Dec. 17, 1973).

---

**November 17, 1998**

The Honorable Mark C. Fleegle
Muskingum County Prosecuting Attorney

**SYLLABUS: 98-036**

> Pursuant to the specific provisions of R.C. 5301.28, R.C. 5301.32-.331, and R.C. 5301.35 that authorize a county recorder to require that certain transactions be "by separate instrument," a county recorder who uses the microfilm process may require that all satisfactions, assignments, partial releases of mortgages, or of any easements granted therein; all waivers of priority of mortgages; and all cancellations, assignments, and partial releases of leases and land contracts, or of any easements granted therein, be recorded by separate instrument, and not by marginal entry made on the record of an instrument documenting the original transaction.

GCR-000458006

A county recorder has no authority, under the specific provisions of R.C. 5301.28, R.C. 5301.32-.331, and R.C. 5301.35 that authorize a county recorder to require that certain transactions be "by separate instrument," to limit the number of satisfactions, cancellations, assignments, partial releases, or waivers of priority that may be executed and recorded by means of a single instrument.

GCR-000459